# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

IN RE SEPTEMBER 11TH PROPERTY DAMAGE                    Civil No.
AND BUSINESS LOSS LITIGATION                            21 MC 101 (AKH)


– – – – – – – – – – – – – – – – – – – – – – – – – – X

– – – – – – – – – – – – – – – – – – – – – – – – – – X

IN RE SEPTEMBER 11TH LITIGATION                         Civil No.
                                                        21 MC 97 (AKH)


– – – – – – – – – – – – – – – – – – – – – – – – – X
STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK   )

DESMOND T. BARRY, JR., being duly sworn, deposes and says:

1.      I am an attorney admitted to practice before this Court and a member of

the law firm of Condon & Forsyth LLP.  I serve as Aviation Defendants' Liaison Counsel

in the above-captioned actions.  I make this Affidavit in connection with the Aviation

Defendants' request to depose Harry Samit, a Special Agent with the FBI assigned to the

Minneapolis Field Office and the Joint Terrorism Task Force, in accordance with 28

C.F.R. § 16.21 *et seq.*

2.      The above-captioned lawsuits seek to impose billions of dollars in liability

against the Aviation Defendants for their alleged failure to detect and halt the terrorists

who attacked the United States on September 11.  The Aviation Defendants are being

sued by approximately six dozen personal injury and wrongful death claimants for

injuries and fatalities that resulted from the hijackings of four flights on that morning by members of al-Qaeda. Numerous property damage and business loss plaintiffs have also brought claims for billions of dollars in damages against the Aviation Defendants for the destruction of real property and business interruption caused by the terrorist attacks.

3.    Both sets of plaintiffs have brought claims for negligence, and their suits center around the same two core issues:  what the Aviation Defendants knew or should have known before September 11 regarding the terrorist threat that al-Qaeda and Usama Bin Laden posed to domestic civil aviation; and what countermeasures the Aviation Defendants could or should have taken in response to that threat.  Specifically, plaintiffs allege that the Aviation Defendants did not design or take appropriate countermeasures to guard against terrorist attacks by al-Qaeda or Usama Bin Laden in response to the available intelligence.  Plaintiffs also allege that the Aviation Defendants failed to comply with applicable federal aviation regulations and failed to institute countermeasures that went beyond those required by the regulations, to the extent that such additional measures were necessary to meet their supposed duties under common law.

4.    In light of plaintiffs' allegations, evidence regarding the intelligence available before September 11 to the FBI, the CIA, the FAA and the airlines regarding the terrorists' intent, likely means of attack, and capabilities, as well as the uses to which that intelligence was put and with whom that intelligence was shared is critical to the Aviation Defendants' defense.

5.      Together, the FBI and the CIA are the federal agencies tasked with collecting intelligence on possible terrorist attacks against the United States. Their responsibilities before September 11 included collecting intelligence regarding the threat of attacks against civil aviation by al-Qaeda or Usama Bin Laden. As part of its mandate, the FBI also decided which specific intelligence regarding the potential threat should be communicated to the FAA and, in turn, the airlines, including the Aviation Defendants. The intelligence that the FBI and the FAA communicated to the airlines was the Aviation Defendants' primary source of information regarding the threat of terrorist attacks on civil aviation. Therefore, evidence as to the specific intelligence the FBI recommended be shared with the airlines regarding possible terrorist attacks by al-Qaeda or Usama Bin Laden is vital to the Aviation Defendants' defense of the allegation that they were negligent in failing to prevent the attacks on September 11.

6.      The FBI also participated in the process of determining when new countermeasures were necessary to protect the public, because the FAA received much of its intelligence concerning the terrorist threat to domestic civil aviation from the FBI. The FBI evaluated whether its intelligence indicated that the threat of terrorist attacks had materially increased such that the information should be shared with other federal agencies, including the FAA. The FAA then directed the airlines to implement whatever new or amended security procedures it determined were appropriate to guard against the heightened threat. The intelligence the FBI communicated to the FAA was thus an

important basis of any new security protocols that the FAA required -- or elected not to require -- the airlines to follow in the months preceding September 11, 2001.

7.    The measures that the FBI recommended as appropriate responses to the intelligence it had regarding the terrorist threat are also important to the Aviation Defendants' defense. As one of the two key intelligence gathering agencies of the federal government, the FBI had far more and far more specific information regarding al-Qaeda and Usama Bin Laden's intentions to commit attacks against the United States and their likely means of attack than did the Aviation Defendants. Plaintiffs contend that the Aviation Defendants should have revised their security procedures in light of an escalating threat of terrorist attacks. However, the Aviation Defendants anticipate that the evidence will show that the federal government, armed with far more detailed information as to the activities of al-Qaeda and Usama Bin Laden, made the decision not to change the countermeasures it had in place -- nor did it recommend or require that the airlines adjust their security procedures. The measures that the FBI determined that it should take in response to the intelligence it had available to it, sheds light on whether the Aviation Defendants acted reasonably in response to the more limited intelligence that they had available to them.

8.    Mr. Samit is well qualified to testify to these material issues. As a FBI Special Agent assigned to the Joint Terrorism Task Force, beginning in August 2001, he led the initial investigation into Zacarias Moussaoui, an al-Qaeda operative who had trained as a pilot. Mr. Moussaoui has admitted that at the time he was arrested he had

been planning to carry-out a terrorist attack involving civil aviation and that he had communicated with some of the nineteen terrorists who attacked the United States on September 11. Mr. Samit is expected to testify that Mr. Moussaoui had in his possession a 3-inch folding knife, which was found at the time of his arrest, as well as several other short-bladed knives, which were discovered after September 11. The Aviation Defendants also anticipate that Mr. Samit will testify that a further search of Mr. Moussaoui's personal property on September 15, 2001 revealed flight simulator software, training materials and instructions pertaining to the piloting of commercial aircraft, and a notebook referring to physical training. By virtue of his investigation of Mr. Moussaoui, Mr. Samit has particularized knowledge of al-Qaeda's intent as of September 11 to carry out a terrorist attack against the United States, as well as the terrorists' capabilities and likely means of attack. Indeed, Mr. Samit previously testified to these issues in *U.S. v. Moussaoui,* Crim. No. 01-455A (LMB) (E.D.Va.), in a proceeding open to the public.

9.    One of the Aviation Defendants' main defenses in this action is that the fanatical terrorists who intentionally carried out the well-planned and highly coordinated attacks of September 11 are responsible for the injuries and damages caused by their attacks. The Aviation Defendants believe that because of his investigation into Mr. Moussaoui, Mr. Samit has specific knowledge of the unique skills and planning that went into al-Qaeda's plot. Accordingly, he is particularly qualified to offer evidence as to the manner in which the terrorists caused the injuries on which the plaintiffs base these actions. The Aviation Defendants expect that the deposition testimony of Mr. Samit will

establish or tend to establish the following points in support of their defense. First, with careful study of the civil aviation system, the terrorists formulated a hijacking plot that was intended to minimize the chance that they would be detected. Indeed, their plan was specifically designed to permit them to circumvent the multilayered system of aviation security that was in place before September 11. Second, the terrorists worked around the security measures that were in place – for instance, by selecting items that were permitted inside the sterile areas of airports and airplane cabins to use in the attacks, like the short-bladed knives found in Mr. Moussaoui's possession. As a result, the success of their plot was not dependent on whether the Aviation Defendants failed to fulfill their responsibilities under the aviation security system mandated by the FAA.

10.    The Aviation Defendants also anticipate that Mr. Samit's testimony will support or tend to support another of their defenses in these litigations: namely, that as private entities, they did not have the same access to intelligence information regarding the terrorist threat as the federal government. The Aviation Defendants anticipate that Mr. Samit will testify that the FBI had information before September 11, which indicated that potential terrorists who knew how to pilot commercial aircraft, such as Mr. Moussaoui, were present in the United States. The Aviation Defendants also expect that Mr. Samit will testify that the intelligence gathered during the investigation into Mr. Moussaoui before September 11 was not communicated to the FAA or the airlines. The Aviation Defendants further expect that Mr. Samit will testify regarding what, if any, recommendations the FBI made to the FAA or the airlines, before September 11, based

6

on its investigation into Mr. Moussaoui. Evidence as to all of these points is important to the determination of whether the Aviation Defendants acted negligently in failing to prevent the September 11 attacks.

    11.    The topics upon which the Aviation Defendants would depose Mr. Samit include:

    a.    The communications, if any, between the FBI and any defendant before September 11, 2001, regarding the arrest of Zacarias Moussaoui, including any communications that identified Mr. Moussaoui's known associates and possible accomplices.

    b.    The communications, if any, between the FBI and the FAA before September 11, 2001, regarding the arrest of Zacarias Moussaoui, including any communications that identified Mr. Moussaoui's known associates and possible accomplices.

    c.    The training that Zacarias Moussaoui undertook with the intent of carrying out a terrorist attack on civil aviation, including any training on how to pilot a commercial aircraft and any physical conditioning.

    d.    The items found in the possession of Zacarias Moussaoui at the time of his arrest, including any items found at his residence and in his automobile and any items he is believed to have acquired with the intent of carrying out a terrorist attack on civil aviation.

    e.    The changes in aviation security that the FBI recommended, if any, in response to information that it received before September 11, 2001 regarding Zacarias Moussaoui's intention to carry out a terrorist attack on civil aviation, including to whom it made the recommendations and what those changes were.

    f.    The training undertaken by any of the nineteen terrorists who attacked the United States on September 11, 2001 to prepare

7

for the attacks, including any training on how to pilot a commercial aircraft and any physical conditioning.

g.  The information available to the FBI before September 11, 2001 regarding the likelihood of an attack by al-Qaeda and/or Usama Bin Laden, including any information regarding the anticipated form of such an attack, its likely location, and any countermeasures recommended by the FBI.

h.  The information available to the FBI before September 11, 2001, if any, indicating that a terrorist attack would likely target civil aviation, would take place within the United States, and would involve the use of hijacked aircraft as weapons against ground targets.

i.  The communications, if any, between the FBI and any defendant before September 11, 2001 regarding the possibility of an al-Qaeda attack on civil aviation.

j.  The communications, if any, between the FBI and the FAA before September 11, 2001 regarding the possibility of an al-Qaeda attack on civil aviation.

k.  The changes in aviation security that the FBI recommended, if any, in response to information that it received before September 11, 2001 regarding the threat of an al-Qaeda attack, including to whom it made the recommendations and what those changes were.

12.    The Aviation Defendants submit that Mr. Samit's testimony is clearly appropriate when all of the factors listed in 28 C.F.R. § 16.26 are taken into consideration.  Given that Mr. Samit has already testified publicly regarding the matters at issue, the FBI has already concluded that disclosure would not infringe an applicable privilege, violate a statute or regulation, reveal classified information, reveal a confidential source or informant, reveal investigative records or interfere with enforcement proceedings, or improperly reveal trade secrets.  Moreover, the significance

of the liability sought to be imposed, the national gravity of the underlying events, and the importance of the legal issues presented all militate in favor of Mr. Samit's testimony.

13.     By contrast, a refusal to permit Mr. Samit's deposition would deprive the Aviation Defendants of evidence that is important to its defense of the very serious allegations that have been made against them in this important civil litigation.   The Aviation Defendants are defending against allegations that they were responsible for gathering and assessing information regarding the threat of a terrorist attack and for designing appropriate countermeasures.   The Aviation Defendants contend that their role was limited to implementing the security measures mandated by the FAA based on threat assessments made by the FAA and the federal intelligence community, including the FBI. *See, e.g.*,   Domestic Air Transportation System Security Act, 49 U.S.C. § 44904(a) (1994) ("The Administrator of the Federal Aviation Administration and the Director of the Federal Bureau of Investigation jointly shall assess current and potential threats to the domestic air transportation system.").

DESMOND T. BARRY, JR.

Sworn to before me this
___ day of March 2007

_____
Notary Public

MARIA PAGAN
Notary Public, State of New York
No. 01PA4670337
Qualified in Queens County
Commission Expires 10/31/____

9