# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – – – – X

IN RE SEPTEMBER 11TH PROPERTY DAMAGE                Civil No.
AND BUSINESS LOSS LITIGATION                        21 MC 101 (AKH)


– – – – – – – – – – – – – – – – – – – – – – – – – – X

– – – – – – – – – – – – – – – – – – – – – – – – – – X

IN RE SEPTEMBER 11TH LITIGATION                     Civil No.
                                                    21 MC 97 (AKH)


– – – – – – – – – – – – – – – – – – – – – – – – – X

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

DESMOND T. BARRY, JR., being duly sworn, deposes and says:

      1.      I am an attorney admitted to practice before this Court and a member of

the law firm of Condon & Forsyth LLP.  I serve as Aviation Defendants' Liaison Counsel

in the above-captioned actions.  I make this Affidavit in connection with the Aviation

Defendants' request to depose Michael Rolince, former FBI Section Chief, International

Terrorism Operations Section from 1998 to 2002, in accordance with 28 C.F.R. § 16.21

*et seq.*

      2.      The above-captioned lawsuits seek to impose billions of dollars in liability

against the Aviation Defendants for their alleged failure to detect and halt the terrorists

who attacked the United States on September 11.  The Aviation Defendants are being

sued by approximately six dozen personal injury and wrongful death claimants for

injuries and fatalities that resulted from the hijackings of four flights on that morning by members of al-Qaeda. Numerous property damage and business loss plaintiffs have also brought claims for billions of dollars in damages against the Aviation Defendants for the destruction of real property and business interruption caused by the terrorist attacks.

3.      Both sets of plaintiffs have brought claims for negligence, and their suits center around the same two core issues:  what the Aviation Defendants knew or should have known before September 11 regarding the terrorist threat that al-Qaeda and Usama Bin Laden posed to domestic civil aviation; and what countermeasures the Aviation Defendants could or should have taken in response to that threat.  Specifically, plaintiffs allege that the Aviation Defendants did not design or take appropriate countermeasures to guard against terrorist attacks by al-Qaeda or Usama Bin Laden in response to the available intelligence.  Plaintiffs also allege that the Aviation Defendants failed to comply with applicable federal aviation regulations and failed to institute countermeasures that went beyond those required by the regulations, to the extent that such additional measures were necessary to meet their supposed duties under common law.

4.      In light of plaintiffs' allegations, evidence regarding the intelligence available before September 11 to the FBI, the CIA, the FAA and the airlines regarding the terrorists' intent, likely means of attack, and capabilities, as well as the uses to which that intelligence was put and with whom that intelligence was shared is critical to the Aviation Defendants' defense.

5.     Together, the FBI and the CIA are the federal agencies tasked with collecting intelligence on possible terrorist attacks against the United States.   Their responsibilities before September 11 included collecting intelligence regarding the threat of attacks against civil aviation by al-Qaeda or Usama Bin Laden.  As part of its mandate, the FBI also decided which specific intelligence regarding the potential threat should be communicated to the FAA and, in turn, the airlines, including the Aviation Defendants. The intelligence that the FBI and the FAA communicated to the airlines was the Aviation Defendants' primary source of information regarding the threat of terrorist attacks on civil aviation.  Therefore, evidence as to the specific intelligence the FBI recommended be shared with the airlines regarding possible terrorist attacks by al-Qaeda or Usama Bin Laden is vital to the Aviation Defendants' defense of the allegation that they were negligent in failing to prevent the attacks on September 11.

6.     The FBI also participated in the process of determining when new countermeasures were necessary to protect the public, because the FAA received much of its intelligence concerning the terrorist threat to domestic civil aviation from the FBI. The FBI evaluated whether its intelligence indicated that the threat of terrorist attacks had materially increased such that the information should be shared with other federal agencies, including the FAA.  The FAA then directed the airlines to implement whatever new or amended security procedures it determined were appropriate to guard against the heightened threat.   The intelligence the FBI communicated to the FAA was thus an

important basis of any new security protocols that the FAA required -- or elected not to require -- the airlines to follow in the months preceding September 11, 2001.

7.     The measures that the FBI considered appropriate to take in response to the intelligence it had in its possession are also important to the Aviation Defendants' defense.   As one of the two key intelligence gathering agencies of the federal government, the FBI had far more and far more specific information regarding al-Qaeda and Usama Bin Laden's intentions to commit attacks against the United States and their likely means of attack than did the Aviation Defendants.   Plaintiffs contend that the Aviation Defendants should have revised their security procedures in light of an escalating threat of terrorist attacks.   However, the Aviation Defendants anticipate that the evidence will show that the federal government, armed with far more detailed information as to the activities of al-Qaeda and Usama Bin Laden, made the decision not to change the countermeasures it had in place -- nor did it recommend or require that the airlines adjust their security procedures.   The measures that the FBI determined that it should take in response to the intelligence it had available to it, sheds light on whether the Aviation Defendants acted reasonably in response to the more limited intelligence that they had available to them.

8.     Mr. Rolince is well qualified to testify to these material issues.  As Chief of the FBI's International Terrorism Operations Section at the agency's headquarters between 1998 and 2002, Mr. Rolince gathered extensive information concerning terrorists threats to the United States, including those posed by al-Qaeda, Usama Bin

Laden, and their operatives.    By his own description, his Section's "primary responsibility was to coordinate the counterterrorism investigations being conducted throughout the United States." *U.S. v. Moussaoui*, Tr. at 1465.  As a result, Mr. Rolince has specialized knowledge of the terrorists' intent, likely means of attack, and capabilities.    Moreover, because his job involved considerable coordination and communication with the National Security Council, the State Department's Office of Counterterrorism Coordination, and the CIA, Mr. Rolince is qualified to testify as to the intelligence that was available to these agencies, as well as to the FBI, before September 11. Mr. Rolince is also knowledgeable as to which portions of the intelligence regarding the threat of a terrorist attack by al-Qaeda or Usama Bin Laden the FBI recommended that the FAA share with the airlines.  He is also qualified to offer evidence as to what, if any, recommendations the FBI made to the FAA regarding the countermeasures the airlines should take in response to the available intelligence.

9.    One of the Aviation Defendants' main defenses in this action is that the fanatical terrorists who intentionally carried out the well-planned and highly coordinated attacks of September 11 are responsible for the injuries and damages caused by their attacks.    The Aviation Defendants expect that, as the former Chief of the FBI's International Terrorism Operations Section, Mr. Rolince has specific information regarding the nineteen terrorists' unique skills and their training, as well as the planning and oversight with which al-Qaeda backed the September 11 plot.  Accordingly, he is particularly qualified to offer evidence as to the manner in which the terrorists caused the

injuries on which plaintiffs base these actions. The Aviation Defendants expect that the deposition testimony of Mr. Rolince will establish or tend to establish the following points in support of this defense. First, with careful study of the civil aviation system, the terrorists formulated a hijacking plot that was intended to minimize the chance that they would be detected. Indeed, their plan was specifically designed to permit them to circumvent the multilayered system of aviation security that was in place before September 11. Second, the terrorists worked around the security measures that were in place. As a result, the success of their plot was not dependent on whether the Aviation Defendants failed to fulfill their responsibilities under the aviation security system mandated by the FAA.

10.    The Aviation Defendants also anticipate that Mr. Rolince will testify that, before September 11, the FBI and the CIA knew that Khalid al-Midhar and Nawaf al-Hazmi were al-Qaeda operatives and known threats to the United States. They also expect that Mr. Rolince will testify that the FBI knew or suspected that both men were present in the United States before September 11. The Aviation Defendants further believe that Mr. Rolince will testify that no communication was sent to the FAA requesting that the two men be placed on a "no-fly" list – even though such a list existed. The Aviation Defendants expect that Mr. Rolince's deposition testimony and other litigation discovery will help establish that if Khalid al-Midhar and Nawaf al-Hazmi had been placed on a no-fly list they would not have been permitted to board Flight 77 on September 11 and, at a minimum, its hijacking would have been prevented.

11.    Mr. Rolince has already testified to many of these material issues in *U.S. v. Moussaoui*, Crim. No. 01-455A (LMB) (E.D.Va.), in a proceeding open to the public, and was previously interviewed about these issues by the National Commission on Terrorist Attacks Against the United States (more familiarly known as the "9/11 Commission") and is frequently cited as an authority on these topics in the Commission's Report, which is publicly available.

12.    The topics upon which the Aviation Defendants would depose Mr. Rolince include:

    a.    The information available to the FBI before September 11, 2001 regarding the likelihood of an attack by al Qaeda and/or Usama bin Laden, including any information regarding the anticipated form of such an attack, its likely location, and any countermeasures recommended by the NSC.

    b.    The communications, if any, between the FBI and the CIA before September 11, 2001 regarding the possibility of an al-Qaeda attack on civil aviation.

    c.    The information that the FBI had before September 11, 2001 regarding any of the 19 hijackers who took part in the September 11 terrorist attacks and whether that information was shared with the FAA or any Aviation Defendant.

    d.    Whether the FBI had information before September 11, 2001 indicating that a terrorist attack would likely target civil aviation, would take place within the United States, and would involve the use of hijacked aircraft as weapons against ground targets.

    e.    Whether the FBI recommended any changes in aviation security in response to information that it received before September 11, 2001 regarding the threat of an al-Qaeda attack and, if so, what those changes were.

f.   The communications, if any, between the FBI and the FAA before September 11, 2001 regarding the possibility of an al-Qaeda attack on civil aviation.

g.   The communications, if any, between the FBI and any Aviation Defendant before September 11, 2001 regarding the possibility of an al- Qaeda attack on civil aviation.

h.   The communications, if any, between the FBI and the FAA before September 11, 2001 regarding the memo produced by the FBI's Phoenix field office regarding the presence of young Arab males in flight school.

i.   The communications, if any, between the FBI and any Aviation Defendant before September 11, 2001 regarding the memo produced by the Phoenix field office regarding the presence of young Arab males in flight school.

j.   The communications, if any, between the FBI and the FAA before September 11, 2001 regarding the arrest of Zacarias Moussaoui.

k.   The communications, if any, between the FBI and any Aviation Defendant before September 11, 2001 regarding the arrest of Zacarias Moussaoui.

l.   The FBI's role in designating individuals for a "no fly" list, the criteria for designating an individual as "no fly," the scope of any such list that existed on September 11, 2001 and whether and how such a list or any terrorist watch-list was communicated to the FAA and/or any Aviation Defendant.

13.   The Aviation Defendants submit that Mr. Rolince's testimony is clearly appropriate when all of the factors listed in 28 C.F.R. § 16.26 are taken into consideration. Given that Mr. Rolince has already testified publicly regarding the matters at issue, the FBI has already concluded that disclosure would not infringe an applicable privilege, violate a statute or regulation, reveal classified information, reveal a confidential source or informant, reveal investigative records or interfere with

enforcement proceedings, or improperly reveal trade secrets.  Moreover, the significance of the liability sought to be imposed, the national gravity of the underlying events, and the importance of the legal issues presented all militate in favor of Mr. Rolince's testimony.

14.    By contrast, a refusal to permit Mr. Rolince's deposition would deprive the Aviation Defendants of evidence that is important to its defense of the very serious allegations that have been made against them in this important civil litigation.  The Aviation Defendants are defending against allegations that they were responsible for gathering and assessing information regarding the threat of a terrorist attack and for designing appropriate countermeasures.  The Aviation Defendants contend that their role was limited to implementing the security measures mandated by the FAA based on threat assessments made by the FAA and the federal intelligence community, including the FBI. *See, e.g.*, Domestic Air Transportation System Security Act, 49 U.S.C. § 44904(a) (1994) ("The Administrator of the Federal Aviation Administration and the Director of the Federal Bureau of Investigation jointly shall assess current and potential threats to the domestic air transportation system.").

_____
DESMOND T. BARRY, JR.

Sworn to before me this
___ day of March 2007

_____
Notary Public

MARIA PAGAN
Notary Public, State of New York
No. 01PA4670337
Qualified in Queens County
Commission Expires 10/31/___

9