# Exhibit 34

# In The Matter Of:

*IN RE SEPTEMBER 11 LITIGATION*

_____

LARRY WANSLEY
*April 4, 2007*

_____

*HIGHLY CONFIDENTIAL*
*TC REPORTING in affliation with Merrill Legal Solutions*

*420 Lexington Avenue - Suite 2108*
*New York, NY 10170*
PH: 516-795-7444 / FAX: 212-692-9171

WANSLEY, LARRY - Vol. II

|  |  |  |
|---|---|---|
|  | 1 | LARRY WANSLEY - HIGHLY CONFIDENTIAL |
| 12:32:39 | 2 | The witness can answer but only to |
| 12:32:41 | 3 | the extent he does not reveal, his testimony |
| 12:32:44 | 4 | does not go to any information that has been |
| 12:32:47 | 5 | designated SSI in any security directive and |
| 12:32:50 | 6 | redacted out. |
| 12:32:52 | 7 | Q.   You can answer. |
| 12:32:53 | 8 | A.   I wasn't sure if I heard |
| 12:32:55 | 9 | everything.  Would you mind speaking a little |
| 12:32:58 | 10 | louder, ma'am, or can someone give you a mic.  I |
| 12:33:01 | 11 | am old, I can't hear too well. |
| 12:33:09 | 12 | MS. VARGAS:   It is a very long |
| 12:33:10 | 13 | room.  The witness can answer the question to |
| 12:33:22 | 14 | the extent that he testifies only to SDs in |
| 12:33:26 | 15 | their redacted form.  Not to any information |
| 12:33:28 | 16 | that is under SSI redaction.  So the universe of |
| 12:33:33 | 17 | SDs. |
| 12:33:34 | 18 | Q.   You can answer the question. |
| 12:33:35 | 19 | A.   Repeat the question, please. |
| 12:33:51 | 20 | (The pending question was read as |
| 12:33:51 | 21 | follows: |
| 12:32:08 | 22 | "Question:  Did you receive any |
| 12:32:09 | 23 | security directive prior to 9/11, 2001 |
| 12:32:13 | 24 | mentioning in any way the 9/11 hijackers?") |
| 12:33:52 | 25 | Q.   Or any of them? |

```
                1      LARRY WANSLEY - HIGHLY CONFIDENTIAL
12:33:53        2          A.     Not that I recall.
12:33:56        3          Q.     Now, let's look at the redacted
12:33:58        4      version of Exhibit 418.  I direct you to
12:34:03        5      subparagraph Roman II on the first page.  Does
12:34:08        6      that subparagraph provide instructions as to
12:34:10        7      what the aircraft operator was supposed to do
12:34:14        8      with the individuals identified in this security
12:34:22        9      directive?
12:34:22       10              MR. GREEN:   Object to the form.
12:34:23       11          A.     Subsection 2 and sub, subsections
12:34:28       12      A, B, C and D do.
12:34:31       13          Q.     What are the directives, the
12:34:34       14      redacted directives as set forth in Exhibit 418
12:34:38       15      as to what the air carriers are supposed to do
12:34:42       16      with the listed but unidentified individuals?
12:34:45       17          A.     Not transport that individual or
12:34:48       18      his or her baggage, immediately notify
12:34:52       19      appropriate law enforcement authorities and
12:34:55       20      provide them with the information in this
12:34:58       21      directive.  Immediately notify all other U.S.
12:35:03       22      aircraft operators at the airport, immediately
12:35:07       23      notify the FAA 24 hour watch at 202-267-3099.
12:35:19       24          Q.     If the CIA and the FBI had
12:35:23       25      contacted the FAA in late August, 2001 and had
```

|  |  |  |
|---|---|---|
|  | 1 | LARRY WANSLEY - HIGHLY CONFIDENTIAL |
| 12:35:29 | 2 | asked the FAA to put al Mihdhar and Al Hazmi on |
| 12:35:35 | 3 | a no fly list or a watch list, could the FAA |
| 12:35:39 | 4 | have issued a security directive similar to |
| 12:35:42 | 5 | Exhibit 418 but relating specifically to al |
| 12:35:47 | 6 | Mihdhar and Al Hazmi? |
| 12:35:49 | 7 | MR. TOMASIK: Object to the form. |
| 12:35:50 | 8 | MS. HESSION: Object to the form of |
| 12:35:51 | 9 | the question. |
| 12:35:52 | 10 | Q. You can answer. |
| 12:35:52 | 11 | A. Yes. |
| 12:35:54 | 12 | Q. Would you, based on your experience |
| 12:35:55 | 13 | with the FAA and as security director for nine |
| 12:36:00 | 14 | years prior to 9/11 of American Airlines have |
| 12:36:03 | 15 | expected the FDA to issue such a directive? |
| 12:36:07 | 16 | MS. HESSION: Object to the form. |
| 12:36:08 | 17 | A. The FAA? |
| 12:36:09 | 18 | Q. Yes. |
| 12:36:11 | 19 | A. Yes. |
| 12:36:16 | 20 | Q. If American Airlines had received a |
| 12:36:19 | 21 | security directive from the FAA in late August |
| 12:36:22 | 22 | 2001 placing al Mihdhar and Al Hazmi on a no fly |
| 12:36:29 | 23 | list or a watch list, what steps could American |
| 12:36:31 | 24 | Airlines have taken to implement that directive? |
| 12:36:34 | 25 | MS. HESSION: Object to the form of |

1    LARRY WANSLEY - HIGHLY CONFIDENTIAL

12:36:34  2    the question.
12:36:38  3        A.    American Airlines would have
12:36:39  4    immediately put that information into our
12:36:42  5    systems which would have been accessible to all
12:36:46  6    agents that would be dealing with or processing
12:36:53  7    passengers.
12:36:54  8        Q.    By systems are you referring to
12:36:56  9    computer systems?
12:36:56  10       A.    Yes, sir, computer systems.
12:37:00  11       Q.    Could that directive if received in
12:37:02  12   late August have been implemented by American
12:37:04  13   Airlines and put into the system prior to
12:37:06  14   September 11th?
12:37:07  15       A.    Yes, sir.
12:37:12  16       Q.    If al Mihdhar and Al Hazmi were on
12:37:15  17   an FAA no fly list or watch list of the type
12:37:19  18   we've been discussing, what would you in your
12:37:22  19   experience have expected to happen when they
12:37:25  20   attempted to check in under their own names for
12:37:28  21   Flight 77 on the morning of 9/11, 2001?
12:37:33  22           MR. PEPE:  Object to the form.
12:37:34  23   Lacks foundation.
12:37:35  24           MR. PARSONS:  Object to the form.
12:37:36  25       A.    Their names would have been in the

LARRY WANSLEY - HIGHLY CONFIDENTIAL

12:37:37  2   system. It would have come to the immediate
12:37:40  3   attention of the agent processing them. Law
12:37:43  4   enforcement would have been notified and they
12:37:46  5   would have contacted the individuals.
12:37:54  6        Q.   If the security directive had
12:37:56  7   instructed the ticket agent to notify a law
12:37:59  8   enforcement officer, would you have expected the
12:38:01  9   ticket agents to do so?
12:38:03  10            MR. PARSONS:  Object to the form.
12:38:04  11            MS. HESSION:  Object to the form of
12:38:05  12   the question.
12:38:05  13       A.   Absolutely.
12:38:06  14       Q.   Based on your experience, sir, your
12:38:08  15   long experience as an FBI agent, as an airline
12:38:13  16   security director and as a State Police man,
12:38:16  17   would you have expected law enforcement at
12:38:18  18   Dulles to have detained al Mihdhar and Al Hazmi
12:38:21  19   for questioning upon learning that they were the
12:38:24  20   subject of an FAA security directive and were
12:38:28  21   wanted for questioning by the FBI and CIA as
12:38:31  22   suspected terrorists?
12:38:32  23            MS. HESSION:  Object to the form of
12:38:33  24   the question.
12:38:35  25            MR. PEPE:  Roger, we are getting a

```
                 1          LARRY WANSLEY - HIGHLY CONFIDENTIAL
12:38:37         2      bit far afield here.
12:38:40         3                  MR. PODESTA:  Perhaps for you,
12:38:41         4      Doug, since you are not a plaintiff in Flight
12:38:43         5      77.
12:38:44         6          Q.      You may go on.  You may answer, Mr.
12:38:46         7      Wansley.
12:39:15         8                  (The pending question was read as
12:39:15         9      follows:
12:38:06        10                  "Question:  Based on your
12:38:07        11      experience, sir, your long experience as an FBI
12:38:10        12      agent, as an airline security director and as a
12:38:15        13      State Police man, would you have expected law
12:38:17        14      enforcement at Dulles to have detained al
12:38:20        15      Mihdhar and Al Hazmi for questioning upon
12:38:23        16      learning that they were the subject of an FAA
12:38:26        17      security directive and were wanted for
12:38:28        18      questioning by the FBI and CIA as suspected
12:38:31        19      terrorists?")
12:39:16        20                  MS. SMITH:  Object to the form of
12:39:17        21      the question.
12:39:18        22          A.      In my opinion law enforcement there
12:39:20        23      would have been all over the situation, by that
12:39:22        24      I mean they would have immediately responded and
12:39:25        25      taken custody of them.
```

1  LARRY WANSLEY - HIGHLY CONFIDENTIAL
12:39:26  2      Q.    Would you have expected Dulles law
12:39:28  3  enforcement, based on your experience as an FBI
12:39:31  4  agent, an airline security director and State
12:39:35  5  policeman to detain al Mihdhar and Al Hazmi for
12:39:38  6  questioning at least until the FBI and CIA could
12:39:42  7  be contacted?
12:39:45  8           MS. HESSION:  Object to the form of
12:39:45  9  the question.
12:39:45  10     A.    Absolutely.
12:39:46  11     Q.    According to the Kean Commission
12:39:51  12 report Nawaf al Hazmi presented himself at the
12:39:54  13 ticket counter with his brother and traveling
12:39:56  14 companion, Salem Al Hazmi.  In these
12:40:01  15 circumstances would you have expected the law
12:40:05  16 enforcement officer to detain Salem Al Hazmi for
12:40:09  17 questioning as well?
12:40:10  18     A.    Absolutely.
12:40:11  19           MS. HESSION:  Object to the form of
12:40:11  20 the question.
12:40:11  21     Q.    Would that have been basic good law
12:40:13  22 enforcement practice?
12:40:14  23     A.    That would have been fundamental
12:40:16  24 basic and wise law enforcement practice.
12:40:19  25           MR. TOMASIK:  Objection, move to

Page 425

```
                    1        LARRY WANSLEY - HIGHLY CONFIDENTIAL
12:40:20            2    strike.
12:40:20            3            Q.   Would you have expected the law
12:40:22            4    enforcement officer to detain Salem Al Hazmi at
12:40:26            5    least until it could be determined he was not a
12:40:28            6    suspected terrorist, unlike his brother?
12:40:31            7            A.   Yes.
12:40:32            8                 MS. HESSION:  Object to the form of
12:40:32            9    the question.
12:40:33           10                 MS. SMITH:   Object to the form.
12:40:34           11            Q.   The Kean Commission report notes al
12:40:38           12    Mihdhar checked in at the American Airlines
12:40:40           13    ticket counter with his traveling companion
12:40:44           14    Majed Moqued.  In these circumstances, based on
12:40:46           15    your experience that we recounted, would you
12:40:49           16    have expected the law enforcement officer at
12:40:51           17    Dulles to detain Moqued for questioning?
12:40:56           18                 MS. HESSION:  Object to the form of
12:40:57           19    the question.
12:40:57           20            A.   Yes, that's true, I would.
12:40:58           21            Q.   At least until it could be
12:41:00           22    determined whether or not he was also a
12:41:01           23    suspected terrorist?
12:41:03           24                 MS. HESSION:  Object to the form of
12:41:04           25    the question.
```