# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:
SEPTEMBER 11 LITIGATION

21 MC 101 (AKH)

------------------------------x

March 18, 2008
1:00 p.m.

Before:

HON. ALVIN K. HELLERSTEIN

District Judge

APPEARANCES

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
Attorneys for WTC Plaintiffs
BY: RICHARD A. WILLIAMSON
M. BRADFORD STEIN

ZELLE HOFMANN VOELBEL MASON & GETTE
Attorneys for Plaintiff PDPEC
BY: STEVEN J. BADGER
JOHN MASSOPUST
KEITH HARRIS
Attorney for Port Authority Cross Claim

CLIFFORD LAW
Attorneys for Plaintiff IRI
BY: ROBERT CLIFFORD
TIM TOMASIK
MOTLEY RICE
Attorneys for Motley Rice Plaintiffs
BY: DONALD MIGLIORY

WARDEN TRIPLETT GRIER
Attorneys for
BY: JAMES M. WARDEN

GREGORY JOSEPH
Attorneys for Plaintiff IRI
BY: DOUG PEPE

APPEARANCES (Continued)

GREENBAUM ROWE
Attorneys for Plaintiff Con Edison
BY: FRANKLIN M. SACHS

KREINDLER & KREINDLER
Attorneys for Plaintiff ONG
BY: JUSTIN GREEN

witnesses whose depositions we have requested in a Touhy request.

THE COURT: That would force me to rule on the issue that you raised in your reply papers, namely whether allegedly

negligent inattention by the government in preparation for 9/11 to avoid 9/11 is an intervening cause or could be an intervening cause in relation to the potential liability of the aviation defendants. That would be the ground of relevance, wouldn't it?

MR. BARRY: Well, it's not exactly --

THE COURT: Mr. Podesta is anxious --

You have a tough time, Mr. Barry.

MR. BARRY: Yes, well, they have their problems at that table, and I've got mine.

MR. PODESTA: Your Honor, Roger Podesta. He has always used a quick hook on us when we argued.

MR. BARRY: It's not quite so simple as intervening cause, your Honor, and I think the issue really comes down to -- and it's a legal one, but it's combined with evidence that we're going to have to develop -- and that is who was in the best position to prevent the attack on the United States of September 11, 2001.

THE COURT: Let's say arguably the government was.

MR. BARRY: We're heading in the right direction.

THE COURT: But if your clients, your liaison clients, all of them or some of them, were also negligent, were would the government's negligence be a defense?

MR. BARRY: I think there are two different areas of negligence that you have to look at. One is whether a screener

in passing through the terrorists may have missed something and whether that screener and that airline owed a duty -- and I would like to concentrate just on the property plaintiffs here -- owed a duty to the property plaintiffs to protect them from a criminal terrorist act.

THE COURT: That's a legal issue raised by the motion to dismiss the cases on the ground there is no duty.

MR. BARRY: Or a motion for summary judgment which included evidence that we obtained from the government that they were unable to prevent this attack.

THE COURT: That wouldn't say anything about duty, I don't think, Mr. Barry.

MR. BARRY: Well, I think it does, your Honor.

THE COURT: Well, anyway, this is not the right forum for me to make rulings on these issues, because I need to be informed by your briefs. And what you have told me is that now that there are two aspects to what you are thinking about making motions. One is in the Freedom of Information Act case that you have brought.

MR. BARRY: Administrative Procedures Act.

THE COURT: Yes, where the government has raised the issue of what you call the Touhy case, the case of United States v. Ragen, 340 U.S. 462, decided 1951, and later glosses on the case by the Second Circuit. That's one stated motion.

MR. BARRY: That's one motion, a motion for summary

clarification, truly one. I think we misheard Mr. Barry when he was speaking to our damage issues, and your Honor asked him about the propriety of a dispositive motion relating to --

THE COURT: He is not on that. We will come back to it. I'm more at this point interested in -- because I think it affects more people -- I'm interested in the combination of the Touhy and the 9/11 motions.

MR. BARRY: And I think it certainly has the potential of affecting how much discovery is going to have to be done or not done.

THE COURT: Right.

MR. BARRY: One follow-on to the APA motion would be if that motion were to be denied, and deposition testimony of

those witnesses from the F.B.I. that we want were not permitted, we intend to bring a motion under Federal Rule of Evidence 807 to have their prior testimony and statements once again not excluded on the basis of hearsay.

THE COURT: Who are these people?

MR. BARRY: They are the same F.B.I. witnesses that we want to depose. We have also got a similar motion in respect of Khalid Sheikh Mohammed and bin al-Shibh, two of the masterminds who are detainees down at Guantanemo, and whose statements were used in the Moussaoui trial.

THE COURT: Ms. Goldman, that also affects the Touhy approach, doesn't it?

MS. GOLDMAN: I'm sorry?

THE COURT: That also affects the APA case.

MS. GOLDMAN: Well, from what I understand --

THE COURT: A lot of differences as well.

MS. GOLDMAN: Are you talking about -- I mean there has been no action with respect to Khalid Sheikh Mohammed. You are not talking about that. Those witnesses are unavailable, and they won't be made available.

MR. BARRY: Yes, but they provided testimony in statements that were used in the Moussaoui trial. Correct?

MS. GOLDMAN: Correct.

MR. BARRY: And under Rule 807 we would like to get an order that that is not hearsay so that that testimony and

statements could be used in our trial.

MS. GOLDMAN: Right, and that's --

THE COURT: What's the volume of those statements?

MR. BARRY: I don't think -- it's not enormous, your Honor.

THE COURT: And does everybody have access to those statements?

MR. BARRY: Yeah.

MS. GOLDMAN: Yes. That's not an issue for us. That's an issue between the defendants and the plaintiffs. But again if that was something you could do first, agree to use that, then we wouldn't have to go through these depositions.

MR. BARRY: We want the deposition testimony of the witnesses, your Honor. That's what we want first. If we don't get the deposition testimony of the witnesses, our fall-back is to get their statements admitted.

THE COURT: It seems to me there can't be any real

issue concerning the inaccessibility of these witnesses.

MR. BARRY: Well, the F.B.I. is accessible. It's the detainees that are not accessible.

THE COURT: I would be very surprised that the government would consent to a deposition and then cross-examination of F.B.I. agents. Ms. Goldman?

MS. GOLDMAN: Well, let's draw a line between the government witnesses who they want -- the five F.B.I. agents

and the two CIA agents -- and it's about them that they filed their APA action. And both the F.B.I. and the CIA have declined to produce them for the reasons set forth in the Touhy decision, and that's what they are now challenging. The government has no intention of producing those witnesses.

With respect to the two detainees who are not our employees, there is no Touhy decision, it's just that they will not be made available, and that's it.

MR. BARRY: On national security grounds.

MS. GOLDMAN: Correct.

THE COURT: Mr. Barry, with regard to those two witnesses, I would like you to do the same thing as I'm asking you to do with the 9/11: Identify precisely what it is you want offered into evidence, and I will rule on that. And I think it makes sense to bring those three subjects on at the same time: The APA summary judgment, the 9/11 evidentiary point and these two deposition evidentiary points.

MR. BARRY: Fine, your Honor, we will do it that way.

THE COURT: All right. And you will try to do that as promptly as you can. I'm looking forward to the filing of the motion sometime in April and a briefing schedule turned in to me next week.

MR. BARRY: A schedule, and perhaps meet with the plaintiffs and try and get some agreement in respect of the KSM, Khalid Sheikh Mohammad, and bin al-Shibh issues.

THE COURT: I would suggest to you that you proffer to them what it is you want them to do --

MR. BARRY: Exactly, so similar to the 9/11.

THE COURT: -- and they should react. But I would like to have you file your motion in April.

MR. BARRY: Very well, your Honor.

MR. CLIFFORD: Your Honor, just point of clarification. The APA summary judgment includes also being filed in MC 101 so that we can respond?

THE COURT: What's the difference where it's filed?

MR. CLIFFORD: We are not parties to the APA case.

THE COURT: You are getting notice.

MR. CLIFFORD: Let us intervene.

THE COURT: You know, we're going to start a lot of intervention pleadings and the like. Mr. Clifford, I'm going to make a ruling that's affecting all the cases.

How can he make a motion that is summary judgment in an APA case and file it in 101?

MR. CLIFFORD: Because they are known for taking two bites at the same apple.

THE COURT: I'm ruling that you are going to be treated as a party in that motion.

MR. CLIFFORD: Thank you, sir.

THE COURT: You are going to get notice. You don't have to ask me for permission to file briefs. You can file

oppositions. Mr. Barry is going to talk about the briefing schedule with you as well as with others, and I'm going to ask all of the people in opposition to try to file as much a common brief as you can.

MR. CLIFFORD: We will.

THE COURT: And the same with the parties filing the motion. It is not going to help anybody if I have to read multiple briefs. I would like to read one brief on each side.

Let's talk about the valuation issues.

MR. BARRY: Your Honor, if I can just -- I think Mr. Ellis wants to say something to clarify something that may have been said.

MR. ELLIS: Just real quickly, your Honor. We are not claiming the government is negligent. Quite frankly, what we are picking up on is language that you put in your duty decision.

THE COURT: You will quote me.

MR. ELLIS: Right. It's who is in the best position, your Honor, to prevent this kind of attack. We are not claiming the government is negligent.

THE COURT: And I have made the observation previously that no matter whether the government is in a better position or not as good a position, I don't believe it affects your duty not to act negligently if you have a duty. And the duty is not going to be informed by what the government did or didn't do.

MR. ELLIS: Respectfully, your Honor --

THE COURT: Let's not argue. My views don't count now. I have not been briefed.

Mr. Barry, when is a good time to bring on this overall motion of duty? After this spate of motions?

MR. BARRY: I think, your Honor, we have to make these motions, see what evidence we've got as a result of these motions, and then we will consider the appropriate time to --

THE COURT: I agree. So we will postpone that motion. I will know it's coming at some point.

Let's talk about the issues of setting values. Let's do it first with the subrogated plaintiffs.

Now, we know -- and there are three categories: Subrogated plaintiffs that have been paid all that they're going to be paid; parties that have not been paid or not been paid in full, one category; and the World Trade Center parties.

Let's take the subrogated plaintiffs that insurance companies have paid in full all that they're going to pay, they're subrogated and they are suing. You have two categories of arguments, and I think one is the amount that's been paid, and the second is whether there is a value in terms of market value that is less.

We all know that we can take out insurance for more than market. We can insure replacement value. There may be other insurable interests. You have raised in your papers the

need to have a better definition of what the trial will look like, and we need some meetings on that.

The large problem about setting a discovery closure date is that it would be better done after I ruled in the APA case.

Assuming the protocols I have recommended work to some satisfaction, I think those cases could be set up for motion practice by the early summer. If there is more discovery to be done under the APA case, or a combination of the APA case and the 9/11 issues and the terrorist deposition issues, we're reasonably into 2009. If there is not much more discovery, I think we can think of the end of this year as a realistic date to end discovery, both fact and expert. But certainly a fact -- and then I need to have a meeting to develop the experts, and I don't know what you want to do with that.

I think the first step in this is to have submission of the motions that we talked about, Mr. Barry, and there is another big motion following, a motion on duty and other smaller motions with regard to various aspects of property that will take up a lot of energy for the remaining months of this year.

Subject to enlargement, according to my rulings in the cases that Mr. Barry is going to be putting up for motions in April, I would like to fix December 31, 2008 as the fact closure date.

I would think our next meeting would be the time that I hear the motions, the APA motion, the 9/11 motion and the terrorist motion. And I would propose at that time, depending on my rulings, to see if that December 31, 2008 date could be accommodating to the further fact issues, or adjust that date, and possibly also to fix another date where I could hear proposals on other motions and on experts.

I'm not going to set a trial date today. Mr. Harris?

MR. HARRIS: Yes, Judge just a point of clarification. In fact we are talking about liability and damages or just liability?

THE COURT: We are talking about liability and readiness for damages. My thinking is to start with the liability trials, with a notion that the damages issues will have been sufficiently explored in discovery to identify some

of the cases that go into trial of damages, probably with different juries.

But it's hard to do that, Mr. Harris. It's hard to know what to do until I get a better size of how long it takes to do a liability trial, what kinds of issues I can think about, how exhausted we will all be. It's going to be some of the same people. But my idea is once we start trying things, I'm not going to be doing much else but trying these cases, and I will have to work with my other colleagues to get cooperation in helping in these cases and helping with my other responsibilities.

So those are my proposals. I'm reminded that I missed one thing and that is the issue that I have to put up for argument with regard to the confidentiality that is to be given to various of the discoveries that we've done. Who wants to