# EXHIBIT 2



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street, Third Floor*
*New York, New York 10007*

March 14, 2008

<u>By Electronic Mail</u>
The Honorable Alvin K. Hellerstein
United States District Judge
United States Courthouse
Southern District of New York
500 Pearl Street
New York, New York  10007

      Re:  In Re September 11 Litigation
           <u>21 MC 97, 101 (AKH)</u>

Dear Judge Hellerstein:

     The Government submits this letter in response to the Court's Agenda for the status conference on March 18, 2008, in the property damage and unsettled wrongful death and personal injury cases.  In particular, we address those sections of Points I, II, and VII of the Agenda that pertain to the Government.

**I & II.  TSA's SSI Review of Documents and Depositions**

     In March 2007, TSA reported to the Court that with limited exceptions, it was current with its SSI review of documents produced by the parties.  In the past year, TSA has received a large number of additional documents to review, including third and fourth wave documents from United, American, the security companies, and other aviation defendants.  Following the Court's October 9, 2007 Order Regulating Discovery involving Boeing, moreover, TSA has received from Boeing more than 145,000 pages of documents for SSI review.

     Generally, TSA reviews documents for SSI in the order they were received.  On a number of occasions, however, TSA has agreed to prioritize documents that were produced later in time.  For example, TSA prioritized review of 3,675 pages of documents requested by the plaintiffs in advance of the deposition of FAA

Rule 30(b)(6) witness Robert Cammaroto. Although very few of these documents were actually used during the deposition, at plaintiffs' request, TSA reviewed the materials in advance of the deposition on February 11-12, 2008. In addition, at the request of attorneys for the World Trade Center defendants/cross-claim plaintiffs, TSA has reviewed 28,886 pages of Boeing documents, which necessarily required TSA to divert resources from review of other materials. We recently were advised by plaintiffs' counsel that they no longer want TSA to prioritize review of Boeing materials, but want TSA to focus instead on review of United and American documents produced in the third and fourth waves.

Since the Court entered the Stipulated Protective Order Governing Access to, Handling of, and Disposition of Potential SSI in April 2007, TSA has granted clearances to 109 attorneys for access to SSI. Depending on the type of clearance, cleared attorneys are permitted to have access to certain SSI in a Reading Room operated and maintained by the U.S. Attorney's Office, which is located at 26 Federal Plaza. In limited circumstances, such as for depositions, cleared attorneys also may have access to limited SSI outside of the Reading Room, subject to strict document handling requirements.

To date, TSA has authorized 43,746 pages of documents (as well as videos and audiotapes) containing SSI for placement in the Reading Room. Many more documents have been authorized for release, either in full or in redacted form, outside the Reading Room. The following documents submitted by the parties remain to be reviewed by TSA:

| | |
|---|---|
| American | approximately 7000 pages, out of 61,000 |
| United | approximately 20,000 pages, out of 39,000 |
| Huntleigh | approximately 100 pages, out of 12,000 |
| Globe | approximately 38,000 pages, out of 47,000 |
| Boeing | approximately 120,000 pages, out of 148,000 |

TSA has completed review of the documents submitted by Argenbright (approximately 44,000 pages) and USAirways (approximately 10,000 pages[1]), among others. In addition, TSA expects to produce a large volume of third-party documents in the next week, including documents produced by the Air Transport

---

[1] This figure does not include approximately 4300 pages of documents pending review by FBI.

Association, as well as documents produced by defendant ICTS.

In addition to reviewing documents for SSI, as the Court directed, TSA security experts and counsel have attended 95 depositions in this case for purposes of identifying and protecting SSI. TSA security personnel have also reviewed transcripts of these depositions and made redactions where appropriate.

**VII.     Status of Discovery from the Government**

   **A.     Process for Discovery of Information in Government Files**

The parties have sought documents from a variety of government agencies, including TSA, FAA, and FBI. Government counsel have attempted to work with both defendants and plaintiffs to facilitate the production of relevant, non-privileged documents. We have engaged in meet and confer sessions and have attempted to reach agreement on the scope of production from various agencies. Although the aviation defendants initially served subpoenas for documents, through the meet and confer process, the subpoenas have been withdrawn, and plaintiffs and defendants have instead made written requests for information. As set forth more fully below, the Government has produced voluminous materials from TSA, FAA and FBI in response to those written requests. Certain materials have been withheld in accordance with the agencies' Touhy regulations. In addition, to a more limited extent, the parties have obtained information through the FOIA process.

With respect to depositions, the aviation defendants have sought depositions of individuals from the agencies listed above, as well as the CIA, via Touhy requests. Among others, they have sought the depositions of counter-terrorism experts and analysts and various FBI field agents on a host of issues pertaining to intelligence gathering. They have also sought a Rule 30(b)(6) witness as well as individual witnesses from the FAA and TSA. The Government has attempted to work with the parties to make available certain witnesses who may have relevant information. With respect to witnesses on the Government's intelligence gathering and investigations, the respective agencies have issued Touhy decisions denying the requests because of the burdens such depositions would impose on the agencies, the privileges that attach to the information requested, which includes classified information, and the lack of relevance, among other things. Those denials may be challenged under the APA, as the aviation defendants have done with respect to certain

requested FBI and CIA witnesses.

### 1. Documents Produced by TSA

Since July 2006, TSA has received numerous requests, from both plaintiffs and the aviation defendants, for production of documents and other materials in this case. In response to these various requests, TSA has produced an enormous volume of TSA and FAA material, including, among other things, documents gathered for and provided to the 9/11 Commission investigating the September 11 attacks, and documents pertaining to many of the parties' requested Rule 30(b)(6) deposition topics. To date, TSA has produced more than 11,700 pages of documents in this case.

In accordance with its Touhy regulations, TSA has withheld information that is classified, privileged, or otherwise protected from disclosure. See 6 C.F.R. § 5.48(a)(2), (b). TSA has expended thousands of hours identifying and reviewing documents responsive to the parties' various requests, including reviews for responsiveness, Sensitive Security Information, and other privileges.

Additional documents remain to be produced from the TSA Commission Index and in response to the parties' Rule 30(b)(6) requests. Those documents are still in the process of being gathered and reviewed. When those documents have been produced, TSA's document production will be substantially complete.

### 2. Documents Produced by FBI

The FBI likewise has received multiple requests from plaintiffs and the aviation defendants for production of documents relating to the agency's Penttbom investigation, the largest investigation in FBI history. In March 2007, in an effort to avoid duplication and piecemeal review, the FBI requested that the parties submit all requests for FBI materials within 30 days. Since that time, the FBI has produced more than 33,000 pages of documents and other materials. In accordance with its Touhy regulations, the FBI has withheld information that is classified, privileged, or otherwise protected from disclosure. See 28 C.F.R. § 16.26(a)(2), (b).

Among the materials that the FBI has provided to the parties are reports of interviews of airline and airport personnel and other witnesses, documents concerning the hijackers' weapons purchases and flights taken prior to September 11, 2001, documents concerning communications with persons aboard the hijacked aircraft, and documents provided to the FBI by

American Airlines and United Air Lines. The FBI has also produced a large volume of FBI laboratory photographs and related information concerning physical evidence collected by the FBI in the course of its investigation.

The FBI continues to gather and identify documents and other materials responsive to the parties' requests for information, and we expect that additional materials will be produced over the next few months. The FBI, however, is in the advanced stages of its document production in this case. As of March 12, 2008, the FBI unit responsible for gathering and processing documents for litigation had logged 3,453 hours responding to the parties' requests for information in this case.

### 3. Government Depositions

To date, TSA and FAA have produced two witnesses for deposition. On January 25, 2008, former FAA special agent and current TSA employee David Peterson was deposed in Boston, Massachusetts, concerning his role in gathering documents and testing walk-through metal detectors at Logan Airport following the terrorist attacks on September 11, 2001. On February 11-12, 2008, former FAA and current TSA employee Robert Cammaroto provided Rule 30(b)(6) testimony on behalf of the FAA. Mr. Cammaroto testified on a variety of subjects, including, inter alia, the FAA-mandated security requirements in effect on September 11, 2001, with regard to selectee screening and checkpoint screening, the FAA's policy concerning discrimination in security screening, the Deadly and Dangerous Weapons Guidelines contained in the Air Carrier Standard Security Program, and the FAA's participation in the development of the industry's Checkpoint Operations Guide.

Additional requests for depositions remain pending with TSA and FAA. Although the agencies have not made final decisions with regard to those requests, and the scope of testimony that will be authorized under the applicable Touhy regulations, we have advised the parties that the FAA and TSA expect to produce additional witnesses to testify with regard to specific topics potentially relevant to the litigation, including certain intelligence topics, the Common Strategy for responding to hijacking situations, and the FAA's response to a checkpoint testing proposal put forward by Massport in 2001. Although the FAA and TSA do not expect to provide further Rule 30(b)(6) testimony, they are planning to produce witnesses with personal knowledge of these topics. TSA also plans to produce documents concerning many of the other requested Rule 30(b)(6) topics.

### B. Pending Actions Challenging Agency <u>Touhy</u> Decisions

The aviation defendants have brought APA actions against the FBI and CIA to challenge the <u>Touhy</u> decisions of those two agencies denying the aviation defendants' requests for depositions of certain FBI and CIA employees. The manner in which defendants have proceeded is entirely consistent with an agreement between the Government and the aviation defendants aimed at channeling all litigation regarding <u>Touhy</u> denials to this Court. The parties agreed that rather than have a variety of challenges to different <u>Touhy</u> responses brought in various districts in which the agencies or the employees reside, as would usually be necessary, the defendants would bring separate APA actions in the Southern District and, on consent of the Government, request that the cases be deemed related to the September 11 Litigation.[2] The aviation defendants and the Government agree that it is important that the Court supervising discovery in this case decide these cases in the context of the litigation.

The procedure in place is not a time-wasting procedure. Indeed, the litigation over this matter could have been resolved by now, had the aviation defendants pursued the matter. The complaints were filed on July 31, 2007. The Government timely answered the complaints on October 9, 2007. Although the aviation defendants have repeatedly stated that they intend to move for summary judgment on their claims (<u>see</u> Aviation Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Protective Order, dated October 26, 2007, at 25 ("The Aviation Defendants intend to move for summary judgment on their complaints."); February 6, 2008 Letter from Desmond T. Barry, Jr. to the Court ("We expect to file a motion for summary judgment in that action shortly.")), five months have passed with no action on this matter. There is no reason to believe that resolution of this matter by the Court in the context in which it has been brought will result in any unnecessary delay.[3]

---

[2] The parties also agreed that this arrangement did not apply to any objections that an individual witness might have separate and apart from the objections of the agency. In light of recent legislation providing for nationwide service of process in this case, the venue for such individual objections may be this Court as well.

[3] To the extent defendants decide to appeal any decision by this Court, any delay to the case is attributable to their delay in prosecuting the matter, and the Court may decide not to

It would not be appropriate or efficient to proceed in a different manner at this point. The Second Circuit has made clear that it is the APA that provides the waiver of sovereign immunity where a party seeks to challenge an agency's Touhy decision. See U.S. E.P.A. v. General Electric Co., 197 F.3d 592, 599 (2d Cir. 1999) ("the only identifiable waiver of sovereign immunity that would permit a court to require a response to a subpoena in an action in which the government is not a party is found in the APA"), amended by, 212 F.3d 689 (2d Cir. 2000). While a separate and independent lawsuit is not required under EPA v. GE, given that the cases have already been filed (unlike in EPA v. GE) and consolidated with the September 11 litigation, there is no need for or benefit to undoing them. Moreover, whether or not a separate action is brought, the APA governs. See id. The Court is not free to apply a materiality or public interest standard to overturn an agency's Touhy decision. Because, however, relevance and burden are among the factors that were considered by the agencies, this Court is uniquely positioned to consider those issues upon review of the Touhy decisions under the APA. Indeed, it may be that the Court's prior rulings, as discussed below, preclude the aviation defendants' actions entirely, as they seek discovery beyond the scope of the discovery permitted by the Court.

### C. Relevance of Discovery Sought by Aviation Defendants in APA Actions

The discovery sought by the aviation defendants in the APA actions is not relevant to issues of duty, foreseeability, or causation. Information known (or not known) to the Government that was not communicated to the aviation defendants in not relevant to these issues. This case is about the aviation defendants' conduct; the reasonableness of that conduct is properly judged by reference to the information they knew or should have known, not information they could not have known because it was not communicated to them. Indeed, the Court already ruled in a comparable situation in connection with the World Trade Center Properties' motion for a protective order that "the security practices of the World Trade Center Properties parties, whatever they were, have no relevance to the measures

---

stay proceedings. To the extent the Government seeks an appeal, we commit to proceeding on an expedited basis. In any event, proceeding on a motion to compel would not obviate the possibility of an appeal by the Government. See, e.g., In re SEC ex rel. Glotzer, 374 F.3d 184 (2d Cir. 2004).

that were taken by the aviation defendants." Feb. 26, 2007 Tr. at 11; id. at 13 ("what other parties did or did not do is not relevant").

The March 20, 2007 letter referred to in the Court's Agenda for the March 18, 2008 conference predates the extensive briefing by the parties in connection with the aviation defendants' "Motion for Focused Discovery From the Government," as well as the decision by the Court denying the aviation defendants' motion. The Court found that "given the burden, the confusion, the expense," among other things, on the Government and the Court, such discovery would not be allowed. See June 14, 2007 Tr. at 128-29. The burdens on the Government, as recognized by the Court last June, remain extremely heavy. The information sought by the aviation defendants implicates classified information as well as various other privileges, including the law enforcement privilege. The sensitive areas of inquiry would require classification reviews, potentially by multiple agencies, a process that is extremely burdensome and time-consuming, and incompatible with the question-and-answer structure of the deposition process. The scope of the aviation defendants' requests for information about threats to civil aviation, the Government's intelligence gathering pre-September 11, and its knowledge of al-Qaeda and bin Ladin, among other things, is unwieldy and would pose inordinate burdens on law enforcement and intelligence agencies to produce discovery that ultimately has little or no relevance to this case.

The extraordinary burdens to the Government, as well as the absence of relevance, are among the factors considered by the agencies in rejecting the aviation defendants' Touhy requests. These issues are properly decided by this Court in the context of the pending APA proceedings, to the extent those actions are not precluded entirely by the Court's June 2007 ruling.

   We thank the Court for its consideration of this submission.

                                        Respectfully submitted,

                                        MICHAEL J. GARCIA
                                        United States Attorney

                                    By: _____
                                        BETH E. GOLDMAN
                                        SARAH S. NORMAND
                                        JEANNETTE A. VARGAS
                                        Assistant U.S. Attorneys
                                        Telephone: (212) 637-2732/2709

cc:   Liaison Counsel (via email)