# EXHIBIT 5

'08 CIV 3719
RECEIVED

08 APR 17 PM 7:03

U.S. DISTRICT COURT
S.D.N.Y.

Richard A. Williamson (RW-3033)
FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006-1404
(212) 412-9500

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re SEPTEMBER 11 PROPERTY DAMAGE AND      :      21 MC 101 (AKH)
BUSINESS LOSS LITIGATION                              :
------------------------------------------------------X
WORLD TRADE CENTER PROPERTIES LLC,          :      Civ. Action No.
2 WORLD TRADE CENTER LLC, AND 4 WORLD        :
TRADE CENTER LLC,                                           :
                                                                         :
                                    Plaintiffs,              :      **COMPLAINT**
                                                                         :
                        v.                                        :      Jury Trial Demanded
                                                                         :
UNITED AIRLINES, INC., UAL CORPORATION,      :
AMERICAN AIRLINES, INC., AMR                       :
CORPORATION, MASSACHUSETTS PORT              :
AUTHORITY, THE BOEING COMPANY, DELTA        :
AIR LINES, INC., DELTA EXPRESS, INC.,            :
MIDWAY AIRLINES CORPORATION,                   :
HUNTLEIGH USA CORPORATION, ICTS              :
INTERNATIONAL, N.V., GLOBE AVIATION           :
SERVICES CORPORATION, BURNS                     :
INTERNATIONAL SECURITY SERVICES              :
CORPORATION, BURNS INTERNATONAL             :
SERVICES CORPORATON, PINKERTON'S INC.,      :
and SECURITAS AB,                                         :
                                                                         :
                                    Defendants.           :
------------------------------------------------------X



This complaint is filed pursuant to the Order of the Honorable Alvin K. Hellerstein, dated

March 18, 2008, transferring the cross-claims of World Trade Center Properties LLC ("WTC

Properties LLC"), 2 World Trade Center LLC, and 4 World Trade Center LLC (collectively

referred to as the "WTCP Plaintiffs"), pending since 2004 in the 21 MC 97 docket, to the 21 MC

101 docket and granting leave to amend the cross-claims solely to recast them as direct claims under a new civil action number. The omission of certain cross-claim defendants who have been dismissed by the Court as named defendants in this pleading should not be construed as a waiver or an intent to waive the WTCP Plaintiffs' right to appeal the dismissal of those parties.[1]

The WTCP Plaintiffs, by their attorneys, Flemming Zulack Williamson Zauderer LLP, allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.    The WTCP Plaintiffs are business entities whose operations are based directly and indirectly upon long term leases of the destroyed World Trade Center buildings known as Two World Trade Center and Four World Trade Center. The September 11, 2001 ("September 11") hijacking and crash of Flight 175 into Two World Trade Center proximately caused the total destruction of Two World Trade Center and Four World Trade Center, and thereby damaged the WTCP Plaintiffs' leasehold interests in those buildings, damaged the WTCP Plaintiffs' businesses based upon those leasehold interests, including triggering an obligation to replace the destroyed properties, and otherwise damaged the WTCP Plaintiffs. The WTCP Plaintiffs, which have been obligated to and have continued to pay rent since September 11 to the Port Authority of New York and New Jersey (the "Port Authority") on buildings that no longer exist, seek damages in an amount that would make them whole: that is, place them in the same position they would have been in but for the defendants' tortious conduct that caused the September 11 crash of Flight 175.

---

[1] The WTCP Plaintiffs specifically reserve all rights to appeal from the July 6, 2007 Judgment dismissing the WTCP Plaintiffs' cross-claims against U.S. Airways, Colgan Air and Continental Airlines arising out of Flight 175, and the Court's September 20, 2007 Order denying the WTCP Plaintiffs' motions for final judgment pursuant to Rule 54(b) and for certification of appealability pursuant to 28 U.S.C. § 1292(b).

2.    The damages sought by the WTCP Plaintiffs include, *inter alia*, sufficient money (i) to satisfy the WTCP Plaintiffs' contractual and legal obligations to replace the destroyed buildings to the satisfaction of the Port Authority, (ii) to compensate the WTCP Plaintiffs for lost rents and other revenue, (iii) to compensate the WTCP Plaintiffs for additional expenses incurred as a consequence of the destruction of the buildings, (iv) to compensate the WTCP Plaintiffs for the costs of mitigating their damages (including (a) the costs of securing new tenants when the replacement buildings are completed, (b) the costs of restarting their businesses, and (c) the costs of prosecuting claims for the recovery of monies under their insurance policies), and (v) to compensate the WTCP Plaintiffs for the diminished future performance of their businesses caused by the defendants' tortious acts.

3.    The WTCP Plaintiffs also seek compensation for any potential contingent liabilities related to the events of September 11, such as those flowing from the indemnification provisions in their net leases with the Port Authority for alleged injuries to persons, property or businesses, or as a result of claims against them for indemnification or contribution.

4.    In addition to damages, as a matter of law, each defendant must pay prejudgment interest upon damages from September 11 and postjudgment interest from the date judgment is entered.

5.    Because section 408(a) (1) of the Air Transportation Safety and System Stabilization Act of 2001, Pub. L. No. 107-42, 115 Stat. 230 (2001), as amended on November 19, 2001 and January 23, 2002, see Pub. L. No. 107-71, 115 Stat. 631 (2001) and Pub. L. No. 107-134, 115 Stat. 2435 (2002) (codified at 49 U.S.C. § 40101) (the "Act"), limits the aggregate liability of each defendant for damages to "an amount not greater than the limits of liability insurance" that defendant maintained on September 11, it effectively creates a "limited fund"

equal to the amount of the insurance limits maintained on September 11. All plaintiffs are entitled to due process in any distribution of limited recoverable funds. The WTCP Plaintiffs intend to continue to honor their commitment (limited only by the legal restraints, if any, that their insurance companies may impose) to not object to the payment of reasonable damages to wrongful death and personal injury claimants from the limited recoverable funds. The WTCP Plaintiffs hope that other 21 MC 101 plaintiffs, including insurance companies seeking reimbursement for property insurance payments that they have made, will continue to do the same.

## JURISDICTION

6.    This Court has exclusive subject matter jurisdiction under section 408(b) (1), which creates a federal cause of action, and section 408(b) (3) of the Act which vests original and exclusive jurisdiction in this Court "over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes" of September 11.

7.    This Court also has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367, since these claims are so related to other claims resulting from or relating to the terrorist crashes of September 11 that they form part of the same case and controversy.

## PARTIES

### The WTCP Plaintiffs

8.    WTC Properties LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York. It is the indirect parent of the WTCP Plaintiffs listed in paragraphs 9-10, below.

4

9.      2 World Trade Center LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York. On September 11, 2 World Trade Center LLC was the "net lessee" of Two World Trade Center.

10.     4 World Trade Center LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York. On September 11, 4 World Trade Center LLC was the "net lessee" of Four World Trade Center.

### Defendants

11.     United Airlines, Inc. ("United") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Illinois.

12.     UAL Corporation ("UAL") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Illinois. On September 11, UAL was the parent corporation and controlling entity of its wholly-owned subsidiary, United. It remains so to date. As such, UAL is liable for the negligence, recklessness, and wanton and tortious acts of United.

13.     American Airlines, Inc. ("American") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Texas.

14.     AMR Corporation ("AMR") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Texas. On September 11, AMR was the parent corporation of and controlling entity of its wholly-owned subsidiary, American. It remains so to date. As such, AMR is liable for the negligence, recklessness, and wanton and tortious acts of American.

15.    Massachusetts Port Authority ("Massport") is a public instrumentality created and existing under the laws of Massachusetts, with its principal place of business in Massachusetts. Massport owns and operates Logan International Airport ("Logan"), including the operation of Logan's security operations.  Massport also controls and supervises the security activities of those persons and entities who use, lease, or otherwise operate businesses at Logan.  As such, Massport, was jointly, severally and contractually liable, by and through its agents, employees, lessees, and contractors, for all security breaches at Logan, including security breaches anywhere at Logan and aboard aircraft that departed from Logan on and before September 11.

16.    The Boeing Company ("Boeing") is a corporation organized and existing under the laws of Delaware, with its World Headquarters in Illinois, and major business operations in Washington, California, Missouri and Kansas.

17.    Delta Air Lines, Inc. ("Delta") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Georgia.

18.    Delta Express, Inc. ("Delta Express") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Georgia.

19.    Midway Airlines Corporation ("Midway") is a corporation organized and existing under the laws of Delaware, with its principal place of business in North Carolina.

20.    Huntleigh USA Corporation ("Huntleigh") is a corporation organized and existing under the laws of Missouri, with its principal place of business in Missouri.

21.    ICTS International, N.V. ("ICTS") is a business entity of unknown form organized and existing under the laws of The Netherlands, with its principal place of business in The Netherlands.  On September 11, ICTS was the parent corporation of and exercised control

6

over its wholly-owned subsidiary, Huntleigh. That remains so to date. As such, ICTS is liable for the negligence, recklessness, and wanton and tortious acts of Huntleigh.

22.    Globe Aviation Services Corporation ("Globe") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Texas.

23.    Burns International Security Services Corporation ("BISSC") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Illinois.

24.    Burns International Services Corporation ("BISC") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Illinois. (BISSC and BISC are collectively referred to as "Burns".)

25.    Burns, as corporate "parents" of Globe, exercised control over Globe on September 11, and continue to do so to date. As such, these corporate parents are each jointly and severally liable for Globe's negligence, recklessness, and wanton and tortious acts.

26.    Pinkerton's Inc. ("Pinkerton") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Illinois. On September 11, Pinkerton was the parent corporation of and exercised control over Globe and Burns. It continues to exercise such control to date. As such, Pinkerton is liable for the negligence, recklessness, and wanton and tortious acts of Globe and Burns.

27.    Securitas AB ("Securitas") is a business entity of unknown form organized and existing under the laws of Sweden, with its principal place of business in Sweden. On September 11, Securitas was the parent corporation of and controlling entity over its wholly-owned subsidiaries Globe, Burns and Pinkerton. It remains so to date. As such, Securitas is

liable for the negligence, recklessness, and wanton and tortious acts of Globe, Burns and Pinkerton.

## CLAIM ONE FOR NEGLIGENCE AGAINST
## ALL DEFENDANTS EXCEPT BOEING[2]

28.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

29.    On and prior to September 11, defendants, through their agents, servants, officers, employees, designees and/or contractors, separately and jointly and severally, assumed responsibility for, undertook to, and developed, implemented, owned, operated, managed, supervised, staffed, equipped, maintained, controlled and/or oversaw the airline and airport security systems at the Portland (Maine) International Jetport ("Portland Jetport") and/or Logan (including, but not limited to, passenger screening, security checkpoint operations, pre-boarding passenger and luggage inspections, controlling access to secure areas, ticket purchasing and check-in procedures and passenger identification and document checks for aircrafts and flights), to ensure the safety and security of air passengers and of persons and property on the ground from harm as a result of criminal acts, violence, hijackings, crashes and all hazards that could cause harm to air passengers and persons and property on the ground.  They owed the WTCP Plaintiffs a duty under New York, Massachusetts, and Maine common law to establish, operate, and maintain such security systems in a non-negligent, non-reckless, and wanton and non-tortious manner.

30.    On and prior to September 11, the air carrier defendants were issued air carrier operating certificates by the United States Department of Transportation, through the Federal Aviation Administration.  The operation certificates contained terms necessary to ensure safety

---

[2] References in Claim One to "defendants" do not include Boeing.

of air transportation. As certificate holders, the air carriers had a nondelegable federal duty to comply with minimum safety standards prescribed by the Federal Aviation Administration to ensure the safety and security of air passengers and of persons and property on the ground from harm as a result of criminal acts, violence, hijackings, crashes and all hazards that could cause harm to air passengers and persons and property on the ground. It was an essential part of defendants' federal duty to provide service with the highest possible degree of safety in the public interest. Complying with this federal duty was also an essential part of defendants' common law duty under New York, Massachusetts, and Maine law to avoid acting negligently.

31.    On and before September 11, United was a common carrier engaged in the business of transporting passengers by air and was operating regularly scheduled flights from Portland Jetport and Logan. United operated the flight designated as Flight 175 ("Flight 175"), which departed from Logan.

32.    The pre-screening and screening systems at Portland Jetport and/or Logan that were required to prevent or deter individuals believed to be a security threat from boarding passenger aircraft and to prevent or deter weapons from being taken onto aircraft, failed in numerous respects because of defendants' negligent and reckless acts and omissions.

33.    On September 11, as a result of defendants' tortious acts and omissions, hijackers carrying prohibited items including deadly and dangerous weapons, were allowed to board Flight 175 and were not stopped by the pre-screening and screening systems at Portland Jetport and Logan that were supposed to prevent or deter individuals that pose a hazard to aircraft security from boarding the aircraft and to prevent or deter or deter weapons from being taken onto aircraft. These hijackers were allowed to enter the unprotected cockpit of Flight 175 and take control of the aircraft, intentionally crashing the plane into Two World Trade Center and causing

9

the death of hundreds of people, and billions of dollars of damages as a result to the collapse and destruction of that building and the nearby building Four World Trade Center.

34.    On September 11, Flight 175 was operated in a careless and reckless manner so as to endanger the life and property of others.

35.    Defendants had no measure, system, or safeguard in place to prevent or deter the actions of the hijackers.  The aircraft operated as Flight 175 on September 11 lacked a cockpit door designed to prevent or deter unauthorized persons from entering the cockpit; lacked cockpit controls designed to prevent or deter unauthorized persons from flying the aircraft and intentionally crashing it into target buildings; and lacked an alarm system designed to prevent or deter unauthorized persons from flying the aircraft without United's and the government's being notified of the location of the aircraft and that the authorized pilots had lost operational control.

36.    Each defendant owed a duty to the WTCP Plaintiffs to take reasonably effective measures to prevent or deter the hijackers from boarding Flight 175, from bringing weapons aboard the aircraft, and from entering into the cockpit and taking over the flight control of the commercial aircraft.  Each defendant also owed a duty to the WTCP Plaintiffs to have a system in place that would automatically notify United and the government whenever unauthorized persons were flying the aircraft that was operated on September 11 as Flight 175.

37.    Defendants negligently and recklessly breached the duties, jointly and severally, that each owed to the WTCP Plaintiffs.  Every step of the way, defendants were negligent and reckless, *inter alia*, in failing to screen passengers properly; in failing to protect against weapons and/or potential weapons from being brought onto Flight 175; in failing to protect against entry by hijackers into the cockpit of Flight 175; in failing to prevent or deter individuals who posed a threat to Flight 175 and to persons and property on the ground from boarding the aircraft; in

10

failing to protect against hijackers flying the plane after they had gained entry; and in failing to install an automatic notification system to signal when the authorized pilots were no longer operating Flight 175. These breaches of duty proximately caused the destruction of Two World Trade Center and Four World Trade Center on September 11.

38.    As a consequence, the WTCP Plaintiffs, who continue to pay rent to the Port Authority, have been deprived, and continue to be deprived, of the use and benefit of their property interests, including, but not limited to, the ability to use the buildings and to receive the rental income therefrom, from September 11 until the office space is replaced and re-rented. Therefore, defendants are jointly and severally liable for all damages sustained by the WTCP Plaintiffs including (i) the cost to satisfy the WTCP Plaintiffs' contractual and legal obligations to replace the destroyed buildings to the satisfaction of the Port Authority; (ii) the cost to compensate the WTCP Plaintiffs for lost rents and revenues, (iii) the cost to compensate the WTCP Plaintiffs for additional expenses incurred as a consequence of the destruction of the buildings, (iv) the cost to compensate the WTCP Plaintiffs for the costs of mitigating their damages (including (a) the costs of securing new tenants when the replacement buildings are completed, (b) the costs of restarting their businesses, and (c) the costs of prosecuting claims for the recovery of monies under their insurance policies), and (v) the cost to compensate WTCP Plaintiffs for the diminished future performance of their businesses caused by the defendants' tortious conduct. The WTCP Plaintiffs are entitled to recover their damages from defendants to the full extent allowed under applicable federal and state law.

**CLAIM TWO FOR NEGLIGENT SELECTION
AGAINST ALL DEFENDANTS EXCEPT BOEING
AND THE SECURITY COMPANY DEFENDANTS[3]**

39.     Each and every allegation contained in each of the foregoing paragraphs is

realleged as if fully set forth herein.

40.     On and before September 11, defendants had a nondelegable duty to the traveling

public and to the WTCP Plaintiffs to exercise reasonable care in the selection of competent

security system contractor(s) to perform the aviation security duties which defendants had the

duty to provide with the highest degree of safety in the public interest.

41.     Defendants breached their nondelegable duty when they negligently and

recklessly contracted with and failed to supervise the Security Company Defendants at Portland

Jetport and/or Logan and when the Security Company Defendants failed to provide aviation

security with the highest possible degree of safety in the public interest.

42.     Defendants selected and contracted with Security Company Defendants who had

well-documented records of incompetent and careless performance of aircraft and airport

security and safety service over many years, as evidenced by FAA "Red Team" audits and other

independent checks on the quality and effectiveness of their services.

43.     Defendants' failure to exercise reasonable care to select and supervise competent

and careful aircraft and airport security and safety service contractors was a proximate cause of

the hijacking and crash of Flight 175 on September 11, and of the destruction of Two World

Trade Center and Four World Trade Center.

44.     As a consequence, the WTCP Plaintiffs, who continue to pay rent to the Port

Authority, have been deprived, and continue to be deprived, of the use and benefit of their

---

[3] References in Claim Two to "defendants" do not include Huntleigh, ICTS, Globe, BISSC, BISC, Pinkerton and
Securitas (the "Security Company Defendants") or Boeing.

property interests, including but not limited to, the ability to use the buildings and to collect rent from September 11 until the buildings are replaced and re-rented. Therefore, defendants are jointly and severally liable for all damages sustained by the WTCP Plaintiffs including (i) the cost to satisfy the WTCP Plaintiffs' contractual and legal obligations to replace the destroyed buildings to the satisfaction of the Port Authority; (ii) the cost to compensate the WTCP Plaintiffs for lost rents and revenues, (iii) the cost to compensate the WTCP Plaintiffs for additional expenses incurred as a consequence of the destruction of the buildings, (iv) the cost to compensate the WTCP Plaintiffs for the costs of mitigating their damages (including (a) the costs of securing new tenants when the replacement buildings are completed, (b) the costs of restarting their businesses, and (c) the costs of prosecuting claims for the recovery of monies under their insurance policies), and (v) the cost to compensate WTCP Plaintiffs for the diminished future performance of their businesses caused by the defendants' tortious conduct. The WTCP Plaintiffs are entitled to recover their damages from them to the full extent allowed under applicable federal and state law.

### CLAIM THREE BASED ON *RES IPSA LOQUITUR* AGAINST ALL DEFENDANTS EXCEPT BOEING[4]

45.     Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

46.     Defendants jointly and severally had exclusive management and control of the aircraft and airport security and safety systems that allowed the hijackers to board Flight 175, resulting in the destruction of Two World Trade Center and Four World Trade Center on September 11. These events would not have occurred if defendants had exercised ordinary care in the maintenance and operation of the aircraft and airport security and safety systems. Because

---

[4] References in Claim Three to "defendants" do not include Boeing.

13

of their exclusive control and management of the security and safety systems, and/or the aircraft operated as Flight 175 on September 11, defendants are possessed of superior, if not exclusive, access to information concerning the precise cause of the hijackers' (i) being able to take weapons through the airport and airline screening systems, (ii) being able to enter the cockpit of the aircraft operated on September 11 as Flight 175, (iii) being able to operate and control the aircraft, and (iv) being able to fly the aircraft without detection for an extended period of time by anyone including United and the government. The WTCP Plaintiffs, therefore, are legally entitled to infer defendants' negligence from the general circumstances alleged herein. The penetration of the security and safety systems and the takeover of the operation of the aircraft operated on September 11 as Flight 175 were not due to any action or omission on the part of the WTCP Plaintiffs.

47.    The destruction of Two World Trade Center and Four World Trade Center was a direct and proximate result of the conduct of defendants.

48.    As a consequence, the WTCP Plaintiffs have been deprived, and continue to be deprived, of the use and benefit of their property interests, including but not limited to, the ability to use the buildings and to receive the rental income therefrom from September 11 until the building are replaced and re-rented. Therefore, these defendants are jointly and severally liable for all damages sustained by the WTCP Plaintiffs including (i) the cost to satisfy the WTCP Plaintiffs' contractual and legal obligations to replace the destroyed buildings to the satisfaction of the Port Authority; (ii) the cost to compensate the WTCP Plaintiffs for lost rents and revenues, (iii) the cost to compensate the WTCP Plaintiffs for additional expenses incurred as a consequence of the destruction of the buildings, (iv) the cost to compensate the WTCP Plaintiffs for the costs of mitigating their damages (including (a) the costs of securing new tenants when

the replacement buildings are completed, (b) the costs of restarting their businesses, and (c) the costs of prosecuting claims for the recovery of monies under their insurance policies), and (v) the cost to compensate WTCP Plaintiffs for the diminished future performance of their businesses caused by the defendants' tortious conduct. The WTCP Plaintiffs are entitled to recover damages from them to the full extent allowed under applicable federal and state law.

## CLAIM FOUR BASED ON STRICT LIABILITY
## AGAINST BOEING, UNITED AND UAL

49.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

50.    The aircraft operated as Flight 175 on September 11 was manufactured by Boeing in accordance with a design prepared by Boeing in conjunction with United, under the control of UAL. It was foreseeable that on some occasion individuals would attempt to gain access to the cockpit of the aircraft so as to control the operation of the aircraft or otherwise put the operation of the aircraft at risk.

51.    Boeing, in conjunction with United, under the control of UAL, defectively designed the cockpit or flight deck environment, including the cockpit door and accompanying locks, and Boeing manufactured the designs according to the specifications jointly agreed upon by Boeing and United. The design in use on September 11, 2001 on Flight 175 was unreasonably dangerous because there was no adequate security impediment to prevent or deter criminal acts, violence, hijackings, crashes and all hazards that could cause harm to air passengers and persons and property on the ground. For example, an unauthorized person could easily penetrate the cockpit and operate the aircraft. Moreover, the cockpit door was not secure and the accompanying locks were insufficient to prevent or deter unauthorized or unlawful entry. Alternative and safer designs were available for a nominal increase in cost that would have

15

prevented or deterred unauthorized individuals, including the September 11 hijackers, from entering the Flight 175 cockpit and taking control of the flight.

52.    Boeing, in conjunction with United, under the control of UAL, defectively designed and Boeing defectively manufactured the aircraft operated as Flight 175 by failing to install a system that would lock out unauthorized persons from the aircraft controls, and by failing to install a system that would automatically signal United and/or the government when unauthorized persons attempted to gain control or gained control of the aircraft's flight controls. Alternative and safer designs were available for a nominal increase in cost that would have prevented or deterred unauthorized individuals, including the September 11 hijackers, from gaining or keeping control of the aircraft operated as Flight 175 on September 11.

53.    This defective design and/or manufacture permitted unauthorized individuals, including the September 11 hijackers, to gain access to the cockpit and to operate the aircraft and intentionally crash it into Two World Trade Center. The defective design and/or manufacture were proximate causes of the business losses and property damage suffered by the WTCP Plaintiffs as a consequence of the destruction of Two World Trade Center and Four World Trade Center on September 11.

54.    The WTCP Plaintiffs, who continue to pay rent to the Port Authority, have been deprived, and continue to be deprived, of the use and benefit of their property interests in Two World Trade Center and Four World Trade Center, including but not limited to, the ability to use the buildings and to receive rental income therefrom from September 11 until the buildings are replaced and re-rented. Therefore, Boeing, United and UAL are jointly and severally liable for all damages sustained by the WTCP Plaintiffs including (i) the cost to satisfy the WTCP Plaintiffs' contractual and legal obligations to replace the destroyed buildings to the satisfaction

16

of the Port Authority; (ii) the cost to compensate the WTCP Plaintiffs for lost rents and revenues, (iii) the cost to compensate the WTCP Plaintiffs for additional expenses incurred as a consequence of the destruction of the buildings, (iv) the cost to compensate the WTCP Plaintiffs for the costs of mitigating their damages (including (a) the costs of securing new tenants when the replacement buildings are completed, (b) the costs of restarting their businesses, and (c) the costs of prosecuting claims for the recovery of monies under their insurance policies), and (v) the cost to compensate WTCP Plaintiffs for the diminished future performance of their businesses caused by the defendants' tortious conduct. The WTCP Plaintiffs are entitled to recover these damages from them to the full extent allowed under applicable federal and state law.

### CLAIM FIVE FOR NEGLIGENT DESIGN AND/OR MANUFACTURE AGAINST BOEING, UNITED AND UAL

55.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

56.    On and before September 11, Boeing was engaged in the business of designing and manufacturing aircraft to be used by common carriers to transport passengers and crew throughout the world. The Boeing aircraft operated as United Flight 175 on September 11, including the cockpit environment, cockpit doors and cockpit locking mechanisms, was designed by Boeing, in conjunction with United, operating under the control of UAL, and was manufactured by Boeing in accordance with design specifications jointly agreed upon between Boeing and United. Additionally, Boeing, in conjunction with United, under the control of UAL, designed the systems used to operate the aircraft. Boeing manufactured these systems according to the design specifications jointly agreed upon between United and Boeing.

57.    United and UAL owed the public, including the WTCP Plaintiffs, a duty to design the aircraft operated as Flight 175, and Boeing owed the public, including the WTCP Plaintiffs, a

duty to design and manufacture the aircraft used in Flight 175, with security impediments adequate to prevent or deter criminal acts, violence, hijackings, crashes and all hazards that could cause harm to air passengers and persons and property on the ground. For example, United and UAL owed the public, including the WTCP Plaintiffs, a duty to design the aircraft operated as Flight 175, and Boeing owed the public, including the WTCP Plaintiffs, a duty to design and manufacture the aircraft used in Flight 175, so that unauthorized individuals, including hijackers, could not gain access to the cockpit and/or could not take control of and fly the aircraft. Moreover, United, UAL, and Boeing owed the public, including the WTCP Plaintiffs, a duty to design and manufacture the aircraft so that if unauthorized individuals succeeded in unlawfully operating and flying the aircraft, United and the government would automatically be notified that unauthorized persons were in operational control of the aircraft.

58.    United, UAL and Boeing negligently and recklessly breached their duties by defectively designing and/or manufacturing the cockpit and flight deck environment, including the door and accompanying locks, in a way that unauthorized individuals, including hijackers, could gain entry and operate the aircraft. Alternative and safer designs were available for a nominal increase in cost that would have prevented or deterred unauthorized individuals, including the September 11 hijackers, from gaining access to the cockpit and taking charge of the aircraft's controls. United, UAL and Boeing also negligently and recklessly breached their respective duties by defectively designing and/or manufacturing the aircraft without putting in place a system that would automatically notify United and the government when unauthorized persons were flying the aircraft. Alternative designs were available for a nominal increase in cost that would have automatically notified United and the government that unauthorized persons were flying the aircraft.

18

59.    United, UAL, and Boeing's negligent and reckless design and/or manufacture of the Boeing aircraft operated as Flight 175 were proximate causes of the business losses and property damage suffered by the WTCP Plaintiffs as a consequence of the destruction of Two World Trade Center and Four World Trade Center on September 11.

60.    The WTCP Plaintiffs, who continue to pay rent to the Port Authority, have been deprived, and continue to be deprived, of the use and benefit of their property interests in two World Center and Four World Trade Center, including but not limited to, the ability to use the buildings and to receive rental income therefrom from September 11 until the buildings are replaced and re-rented. Therefore, United, UAL, and Boeing are jointly and severally liable for all damages sustained by the WTCP Plaintiffs including (i) the cost to satisfy the WTCP Plaintiffs' contractual and legal obligations to replace the destroyed buildings to the satisfaction of the Port Authority; (ii) the cost to compensate the WTCP Plaintiffs for lost rents and revenues, (iii) the cost to compensate the WTCP Plaintiffs for additional expenses incurred as a consequence of the destruction of the buildings, (iv) the cost to compensate the WTCP Plaintiffs for the costs of mitigating their damages (including (a) the costs of securing new tenants when the replacement buildings are completed, (b) the costs of restarting their businesses, and (c) the costs of prosecuting claims for the recovery of monies under their insurance policies), and (v) the cost to compensate WTCP Plaintiffs for the diminished future performance of their businesses caused by the defendants' tortious conduct. The WTCP Plaintiffs are entitled to recover these damages from them to the full extent allowed under applicable federal and state law.

### CLAIM SIX FOR CONTRIBUTION AGAINST ALL DEFENDANTS

61.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

19

62.    In the event that anyone settles a claim with or recovers a judgment against one or more of the WTCP Plaintiffs arising out of, relating to, or resulting from, in whole or in part, the terrorist-related aircraft crash into Two World Trade Center on September 11, the defendants are each jointly and severally responsible to pay contribution to the WTCP Plaintiffs for all or part of that settlement or judgment.

### CLAIM SEVEN FOR INDEMNIFICATION AGAINST ALL DEFENDANTS

63.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

64.    In the event that anyone settles a claim with or recovers a judgment against one or more of the WTCP Plaintiffs arising out of, resulting from, or relating to, in whole or in part, the terrorist-related aircraft crash into Two World Trade Center on September 11, the defendants are each jointly and severally responsible to indemnify the WTCP Plaintiffs for all or part of that settlement or judgment.

WHEREFORE:

a.    The WTCP Plaintiffs are entitled to a judgment against each of defendants, jointly and severally, for damages in an amount sufficient to make them whole, including but not limited to monies to replace the total square footage that was destroyed at Two World Trade Center and Four World Trade Center, to pay the rental income lost from these buildings from September 11, 2001 until the buildings are replaced and re-rented, and to compensate them for other expenses, mitigation costs and diminished future performance of their businesses;

b.    The WTCP Plaintiffs are entitled to a judgment against each of defendants for contribution and/or for indemnification for all or part of any and all payments made by the WTCP Plaintiffs in settlement of a claim or in satisfaction of a judgment that in whole or in part arises out of, results from or relates to the terrorist-related aircraft crash of Flight 175 into Two World Trade Center on September 11; and

c.    The WTCP Plaintiffs are entitled to a judgment awarding their costs and disbursements in this action, and such further relief as this Court believes just and proper.

Dated: New York, New York
     April 17, 2008

               FLEMMING ZULACK WILLIAMSON ZAUDERER LLP

               By:

                   Richard A. Williamson (RW-3033)
                   One Liberty Plaza
                   New York, New York 10006-1404
                   (212) 412-9500
                   Attorneys for Plaintiffs

TO:  All Counsel

303581

21