# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
IN RE SEPTEMBER 11, 2001 LITIGATION    :    21 MC 97 (AKH)
                                                            :
------------------------------------------------------------x

## PLAINTIFFS' FOURTH AMENDED FLIGHT 175 MASTER LIABILITY COMPLAINT

### (TWO WORLD TRADE CENTER CRASH)

Plaintiffs, by their respective attorneys complaining of defendants herein, upon information and belief, respectfully state as and for their common liability allegations as follows:

### BACKGROUND

These actions seek damages on behalf of plaintiffs, the heirs and next of kin of decedents, and the Estates of decedents for the personal injuries to and wrongful deaths of the individuals who were killed in the hijacking and crash of United Air Lines Flight 175 (hereinafter "Flight 175") into Two World Trade Center (hereinafter "Two World Trade") as well as on behalf of those who were in Two World Trade or in the vicinity thereof and were killed as a result of the fires in and collapse of Two World Trade on September 11, 2001 and its aftermath.

In sum, these actions allege that for several years prior to September 11, 2001, the defendants named herein had actual knowledge of the fact that terrorist groups and individuals associated with them had publicly proclaimed a pathological hatred of the United States, its citizens and those who resided or traveled within or to its borders and vowed to kill Americans and to destroy American institutions and that airlines and airports and buildings of cultural significance were a likely target of that

fireproofing and sprinkler systems were properly installed.

91.  At all relevant times, THE PORT AUTHORITY and THE BUILDING DEFENDANTS, their subsidiaries and each of them were the agent of each other and were acting within the time, purpose or scope of such agency; and all acts or omissions alleged herein of each of THE PORT AUTHORITY and THE BUILDING DEFENDANTS were authorized, adopted or approved by each of the other building defendants.

92.  As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT ONE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, AND MASSPORT BASED ON NEGLIGENCE, NEGLIGENCE PER SE, RECKLESS CONDUCT, AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY

93.  Plaintiffs incorporate by reference all prior allegations in this Complaint.

94.  On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, and MASSPORT, by their officers, agents, employees, servants or representatives had an independent, joint and several, nondelegable duty to safeguard Flight 175 and all other aircraft that operated at Portland Jetport and Logan Airport to prevent hijackers from carrying dangerous and deadly weapons capable of causing injury or death aboard the aircraft or otherwise threaten the safety of passengers and crew as well as people in buildings or on the ground who might suffer death or injury as a result of a crash.

95.  The defendants were jointly and severally required to secure Flight 175 from

unreasonable dangers such as terrorist action aboard the aircraft, including hijacking, resulting in injuries or death to passengers and crew; and/or to operate the subject aircraft in a manner which would not result in injury or death to its passengers and crew as well as individuals in buildings or on the ground who might suffer death or injury at the hands of the terrorists or otherwise by a crash of the airplane.

96.   On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, and MASSPORT, entered into contracts for security services for all flights departing from Portland Jetport and Logan Airport. These defendants had a duty to exercise the highest degree of care to prevent individuals carrying weapons from passing through security checkpoints at Portland Jetport and Logan Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with THE SECURITY COMPANY DEFENDANTS to provide various airline and airport security services.

97.   By virtue of their negligence, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, and MASSPORT breached their contracts to provide effective security at Portland Jetport and Logan Airport and to prevent security breaches which could cause injury or death to passengers, crew and individuals in buildings or on the ground who might suffer death or injury as a result of a deliberate crash.

98.   On September 11, 2001, hijackers penetrated said airline and airport security system at Portland Jetport and subsequently Logan Airport, brought dangerous weapons onto the Colgan aircraft and subsequently the UNITED aircraft and used said dangerous weapons to seize control of the UNITED aircraft and then crash it into Two World Trade Center injuring and

killing decedents.

99.     On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, and MASSPORT, by their respective officers, agents, employees, servants and/or representatives, breached their duty to decedents and engaged in conduct that was reckless, negligent, negligent per se, wrongful, unlawful, careless, and willful and wanton in conscious disregard of the rights and safety of the decedents by violating applicable rules and regulations, including Federal Aviation Regulations; and further by creating unreasonable dangers to decedents in that THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, and MASSPORT:

- failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers and crew and persons on the ground or in buildings who might suffer injury or death upon improper or unauthorized operation of an aircraft against acts of criminal violence and air piracy;

- failed to adequately train, staff and equip Portland Jetport and Logan Airport's airline and airport security system;

- failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;

- failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;

- violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;

- failed to properly scrutinize the hijackers' tickets and identification documents;

- failed to properly monitor security checkpoints, x-ray machines and metal detectors;

- failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover investigations;

- failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

- failed to prevent the hijackers from entering the unprotected cockpit;

- failed to implement adequate safety and security measures to prevent hijacking;

- failed to equip the subject aircraft with a secure cockpit door and adequate locking mechanisms; and

- defendants were otherwise negligent, engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, and/or willful in conscious disregard for rights and safety.

100. As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

101. Plaintiffs and the Estates of decedents and the heirs and next of kin of the decedents have sustained and are entitled to recover compensatory damages allowed under law, including damages for the value of decedents' life, loss of net earnings of the decedents, loss of probable support, future contributions and pecuniary benefits, loss of services, loss of inheritance of prospective accumulations, mental anguish, emotional pain and suffering, grief and sorrow, loss of society, companionship, comfort, protection, care, attention, advice, maintenance, counsel, guidance, and decedents' pre-death conscious pain, suffering and fear of death, loss of personal property, and funeral and burial expenses, and other damages.

## COUNT TWO

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, AND MASSPORT BASED ON NEGLIGENT SELECTION

102. Plaintiffs incorporate by reference all prior allegations in this Complaint.

103. On and prior to September 11, 2001, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT had an independent and non-delegable duty to provide and maintain competent and careful security of their terminal operations area and aircraft. In recognition of that duty, THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT subcontracted for security services to protect all flights departing from Portland Jetport and Logan Airport.

104. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing THE SECURITY COMPANY DEFENDANTS.

105. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT each had a duty or voluntarily undertook a duty through their contracts with THE SECURITY COMPANY DEFENDANTS to exercise the highest degree of care for the safety and security of all passengers and crew passing through security at Portland Jetport and Logan Airport.

106. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT each knew or should have known that the security screening systems and services at Portland Jetport and Logan Airport provided by THE SECURITY

COMPANY DEFENDANTS were grossly inadequate and posed a severe danger to its aircraft, passengers, crew and the public. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT knew or should have known that the security systems at Portland Jetport and Logan Airport had been demonstrated to be like a sieve frequently unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

107. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT knew or should have known that THE SECURITY COMPANY DEFENDANTS failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

108. THE SECURITY COMPANY DEFENDANTS' work as security system contractors at Portland Jetport and Logan Airport presents a risk of physical harm and death unless skillfully and carefully performed commensurate with the threat of terrorist action.

109. THE SECURITY COMPANY DEFENDANTS had a record of incompetent and careless operation and maintenance of their contracted security service obligations over many years according to FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

110. THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, and MASSPORT's failure to remedy these known security lapses was a reckless, negligent and willful and wanton breach of their respective duties of care to all passengers and crew passing through Portland Jetport and Logan Airport and boarding aircraft

## COUNT FOUR

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON NEGLIGENT DESIGN

119. Plaintiffs incorporate by reference all prior allegations in this Complaint.

120. BOEING owed plaintiffs a duty of care in safely designing the subject aircraft and their component parts and systems, including, but not limited to, a duty to safety design:

- a secure cockpit, including doors and locking mechanisms, that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- hardened cockpit doors, more sophisticated locking systems for cockpit doors, secondary barriers to prevent cockpit intrusion, and doors with unique entry codes that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- systems in the flight deck environment, such as cabin video surveillance systems, that would enable pilots to view and assess the situation in the cabin before unlocking and opening the cockpit doors;

- systems that would prevent or lock out unauthorized persons from taking over the flight controls, including, but not limited to, password protected flight controls;

- systems that would prevent unauthorized persons from disengaging the autopilot systems, taking physical control of the subject aircraft, and programming the aircraft to fly to a specific set of coordinates;

- flight controls that would send a notification to the Government and/or UNITED if unauthorized persons gained control of the aircraft;

- features that would prevent unauthorized persons from shutting off the transponders of the subject aircraft; and/or

- install or use aircraft systems designed to prevent or avoid intentional downing and/or crashing the subject aircraft into buildings or structures on the ground.

121. BOEING breached this duty of care by failing to, among other things:

- design and/or install a secure cockpit, including doors and locking mechanisms, that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- harden cockpit doors, provide more sophisticated locking systems for cockpit doors, provide secondary barriers to prevent cockpit intrusion, or provide doors with unique entry codes that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- install or use systems in the flight deck environment, such as cabin video surveillance systems, that would enable pilots to view and assess the situation in the cabin before unlocking and opening the cockpit doors;

- install or use a system that would prevent or lock out unauthorized persons from taking over the flight controls, including, but not limited to, password protected flight controls;

- install or use systems that would prevent unauthorized persons from disengaging the autopilot systems, taking physical control of the subject aircraft, and programming the aircraft to fly to a specific set of coordinates;

- install flight controls that would send a notification to the Government and/or UNITED if unauthorized persons gained control of the aircraft;

- install features that would prevent unauthorized persons from shutting off the transponders of the subject aircraft; and/or

- install or use aircraft systems designed to prevent or avoid intentional downing and/or crashing the subject aircraft into buildings or structures on the ground.

122.   Defendant BOEING knew or should have known that the design of the subject aircraft and their component parts and systems was defective. Defendant BOEING failed to remedy this defect. The aircraft's defective design permitted the terrorists to gain access to the Flight 175 cockpit, take over the controls, and crash the subject aircraft into the subject buildings.

123.   In addition, BOEING knew or should have known that alternative and safer designs were available for a nominal increase in cost, which would have prevented the terrorists

from entering the cockpit on the subject aircraft, taking over the controls, and crashing the subject aircraft into the subject buildings.

124. The defective design of the subject aircraft was a proximate cause of the deaths of plaintiffs' decedents.

125. As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT FIVE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON BREACH OF WARRANTY

126. Plaintiffs incorporate by reference all prior allegations in this Complaint.

127. Prior to September 11, 2001, defendant BOEING expressly and/or impliedly warranted and represented that the subject aircraft, and their component parts and systems, including, but not limited to, the subject aircraft flight decks, systems, structures, airframes, locking mechanisms and cockpit doors, were airworthy, of merchantable quality, and/or fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained and/or repaired, intended, and used. Defendant BOEING further warranted that the subject aircraft, and their component parts and systems, including, but not limited to the subject aircraft flight decks, systems, structures, airframes, locking mechanisms and cockpit doors, were free from all defects.

128. Defendant BOEING breached said warranties in that the subject aircraft, and their component parts and systems, including, but not limited to, the subject aircraft flight decks, systems, structures, airframes, locking mechanisms and cockpit doors, were not airworthy, of

merchantable quality, and/or fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained and/or repaired, intended, and used. Defendant BOEING further breached said warranties in that the subject aircraft and their component parts and systems, including, but not limited to, the subject aircraft flight decks, systems, structures, airframes, locking mechanisms and cockpit doors, were not free from all defects.

129. The breach of said warranties proximately caused the terrorist hijacking, crash, and the deaths of plaintiffs' decedents on September 11, 2001.

130. As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT SIX

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AND PERSONAL INJURIES ON BEHALF OF THE TOWER PLAINTIFFS AGAINST THE PORT AUTHORITY AND THE BUILDING DEFENDANTS BASED ON NEGLIGENCE

131. Plaintiffs incorporate by reference all prior allegations in this Complaint.

132. Since the World Trade Center was designed and built in the late 1960's and early 1970's, THE PORT AUTHORITY and THE BUILDING DEFENDANTS knew or should have known that the World Trade Center complex in New York City, due to its size as well as location in an area heavily traversed by aircraft, could be struck by such an aircraft.

133. Since at least 1993, THE PORT AUTHORITY and THE BUILDING DEFENDANTS knew or should have known that the buildings that constituted the World Trade Center complex were a primary target for terrorist attack due to their size, symbolic significance

33

and because they were in the heart of New York City. Despite this knowledge, THE PORT AUTHORITY and THE BUILDING DEFENDANTS failed to develop an adequate and safe evacuation and egress plan for the building occupants and failed to ensure that the building could withstand the crash of an aircraft and the resulting fire.

134.   THE PORT AUTHORITY and THE BUILDING DEFENDANTS, by their officers, agents, employees, servants and/or representatives, owed to the Tower Plaintiffs' decedents, duties to use reasonable care to design, construct, maintain, inspect, service, repair, own, lease, manage, operate and control Two World Trade so that it could withstand the crash of an aircraft and the resulting fire; that it was safe for dangerous and hazardous conditions; that its occupants were provided with safe and unobstructed escape routes from the building; to ensure that structural fireproofing and sprinkler systems were properly installed, serviced, maintained and operated; and to develop, implement and maintain safe, adequate and effective egress and evacuation plans for Two World Trade and its occupants.

135.   The collapse of Two World Trade and the resulting injuries and deaths were proximately caused by the negligence of THE PORT AUTHORITY and THE BUILDING DEFENDANTS, their respective officers, agents, employees, servants or representatives, who breached their duty of care to the Tower Plaintiffs' decedents, violated applicable rules and regulations; created unreasonable dangers in Two World Trade in that THE PORT AUTHORITY and THE BUILDING DEFENDANTS:

- negligently designed, constructed, serviced, repaired, inspected and maintained Two World Trade;

- negligently failed to adhere to safe engineering practices and standards used in the design and construction of high-rise buildings;

- negligently failed to inspect, discover and repair unsafe and dangerous conditions which it knew would detrimentally affect the safety of the

building's occupants;

- negligently failed to provide a safe and unobstructed escape route from Two World Trade;

- negligently tested and evaluated Two World Trade's ability to withstand impact forces and fire;

- negligently installed an inadequate and unsafe sprinkler system;

- negligently installed, inspected, repaired and maintained inadequate and unsafe fireproofing materials throughout Two World Trade;

- negligently allowed spray-on fireproofing materials to fall off or flake away from the building's structure leaving steel exposed and unprotected from fire and heat;

- negligently developed and maintained an unsafe and inadequate emergency management plan for catastrophic events;

- negligently developed and maintained an inadequate egress and evacuation plan for the building and its occupants;

- negligently ordered building occupants to remain in the building rather than evacuate;

- negligently applied, interpreted and/or enforced applicable building and fire safety codes, regulations and practices;

and said THE PORT AUTHORITY and THE BUILDING DEFENDANTS were otherwise negligent.

136.   As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT SEVEN

### CLAIM FOR WRONGFUL DEATH AND SURVIVAL DAMAGES BASED ON RES IPSA LOQUITUR

137.   Plaintiffs incorporate by reference all prior allegations in this Complaint.

138.   Defendants, and each of them, had exclusive management and control of the