# EXHIBIT 10

Case 1:07-cv-07051-AKH   Document 41-11   Filed 06/17/2008   Page 1 of 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                          :

IN RE SEPTEMBER 11, 2001 LITIGATION    :    21 MC 97 (AKH)
                                          :

                                            :
-------------------------------------------------------x

## PLAINTIFFS' FOURTH AMENDED FLIGHT 77 MASTER LIABILITY COMPLAINT

### (THE PENTAGON CRASH)

Plaintiffs, by their respective attorneys complaining of the defendants herein, upon information and belief, respectfully state as and for their common liability allegations as follows:

### BACKGROUND

These actions seek damages on behalf of plaintiffs, the heirs and next of kin of decedents, and the Estates of decedents for the wrongful deaths of the individuals who were killed in the hijacking and crash of American Airlines Flight 77 (hereinafter "Flight 77") into the Pentagon in Arlington, Virginia on September 11, 2001 as well as on behalf of those who were in the Pentagon or in the vicinity thereof who were killed or injured as a result of the Flight 77 crash and its aftermath. Flight 77 originated at Dulles International Airport, Virginia (hereinafter "Dulles Airport") and was bound for Los Angeles International Airport.

In sum, these actions allege that for several years prior to September 11, 2001, AMERICAN, THE OTHER AIRLINE DEFENDANTS and THE SECURITY COMPANY DEFENDANTS named herein, BOEING, and the METROPOLITAN WASHINGTON

## COUNT ONE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST AMERICAN, THE SECURITY COMPANY DEFENDANTS AND MWAA, BASED ON NEGLIGENCE, NEGLIGENCE PER SE, RECKLESS CONDUCT AND CONSCIOUS DISREGARD FOR RIGHTS AND SAFETY

59. Plaintiffs incorporate by reference all prior allegations in this Complaint.

60. On and prior to September 11, 2001, AMERICAN, THE SECURITY COMPANY DEFENDANTS and MWAA, by their officers, agents, employees, servants or representatives, had an independent, joint and several, non-delegable duty to exercise and provide the passengers of Flight 77 as well as persons on the ground or in buildings who might suffer death or injury as a result of improper or unauthorized operation of an aircraft with the highest level of security and care to safeguard Flight 77 and all other aircraft that operated at Dulles Airport to prevent hijackers from carrying dangerous and deadly weapons capable of causing injury or death aboard aircraft or otherwise threaten the safety of passengers and crew or those on the ground.

61. The defendants were jointly and severally required to secure Flight 77 from unreasonable dangers such as terrorist action aboard the aircraft, including hijacking, and to operate the subject aircraft in a manner which would not result in injury or death to its passengers or others on the ground.

62. On and prior to September 11, 2001, AMERICAN and MWAA entered into contracts with THE SECURITY COMPANY DEFENDANTS for security services for all flights departing from Dulles Airport. These defendants had a duty to exercise the highest degree of care for the safety and security of all passengers passing through security checkpoints at Dulles

18

Airport and prior to boarding aircraft there, and in recognition of that duty, voluntarily entered into contracts with THE SECURITY COMPANY DEFENDANTS to provide various airline and airport security services so as to secure from harm all passengers and crew and those persons on the ground or in buildings who might suffer injury or death from improper or unauthorized operation of an aircraft.

63. By virtue of their negligence, AMERICAN, MWAA and THE SECURITY COMPANY DEFENDANTS breached their contracts to provide effective security at Dulles Airport and to prevent security breaches which could cause injury or death to passengers and persons on the ground or in buildings who might suffer injury or death from improper or unauthorized operation of an aircraft.

64. On and prior to September 11, 2001, AMERICAN, THE SECURITY COMPANY DEFENDANTS and MWAA, by their respective officers, agents, employees, servants and/or representatives, breached their duty to decedents and engaged in conduct which was reckless, negligent, negligent per se, wrongful, unlawful, careless, and willful and wanton in conscious disregard of the rights and safety of the passengers and others on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft by violating applicable rules and regulations, including Federal Aviation Regulations; and further by creating unreasonable dangers to Flight 77 passengers and the Pentagon Plaintiffs in that AMERICAN, THE SECURITY COMPANY DEFENDANTS and MWAA:

- failed to implement, operate, maintain, supervise and control an adequate airline and airport security system that ensured the safety of and protected passengers and persons on the ground or in buildings who might suffer injury or death upon improper or unauthorized operation of an aircraft against acts of criminal violence, air piracy and terrorist activity;

19

- failed to adequately train, staff and equip Dulles Airport's airline and airport security system;

- failed to improve airline and airport security despite knowledge and prior warnings of numerous security breaches and lapses and terrorist threats to airline security;

- failed to properly screen the hijackers and allowed them aboard the subject aircraft with dangerous and deadly weapons capable of causing injury or death;

- violated proper security procedures, including FAA and internal airline/security guidelines and other security directives;

- failed to properly scrutinize the hijackers' tickets and identification documents;

- failed to properly monitor security checkpoints, x-ray machines and metal detectors;

- failed to install state of the art security equipment and systems to prevent hijacking and routinely failed to detect dangerous and deadly weapons capable of causing injury or death in undercover investigations;

- failed to adequately protect the subject aircraft's cockpit from unauthorized entry;

- failed to prevent the hijackers from entering the unprotected cockpit;

- failed to implement adequate safety and security measures to prevent hijacking;

- failed to equip the subject aircraft with a secure cockpit door and adequate locking mechanisms; and

- defendants were otherwise negligent, engaged in conduct that was negligent per se, reckless, wrongful, unlawful, careless, and/or willful in conscious disregard for rights and safety.

20

65. As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT TWO

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE OTHER AIRLINE DEFENDANTS BASED ON NEGLIGENCE

66. Plaintiffs incorporate by reference all prior allegations in this Complaint.

67. On and prior to September 11, 2001, THE OTHER AIRLINE DEFENDANTS had an independent and non-delegable duty to maintain the security of their aircraft and Dulles Airport. In recognition of that duty, THE OTHER AIRLINE DEFENDANTS subcontracted for security services to protect all flights departing from Dulles Airport.

68. THE OTHER AIRLINE DEFENDANTS each had a duty or voluntarily undertook a duty through its contract with THE SECURITY COMPANY DEFENDANTS to exercise the highest degree of care for the safety and security of all passengers passing through security at Dulles Airport and for persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft.

69. THE OTHER AIRLINE DEFENDANTS each knew or should have known that the security screening systems and services at Dulles Airport provided by THE SECURITY COMPANY DEFENDANTS were grossly inadequate and posed a severe danger to its passengers and the public. THE OTHER AIRLINE DEFENDANTS knew or should have known that the security systems at Dulles Airport had been demonstrated to be like a sieve, frequently

21

unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

70. Each of THE OTHER AIRLINE DEFENDANTS knew or should have known that THE SECURITY COMPANY DEFENDANTS failed to adequately train its employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

71. THE OTHER AIRLINE DEFENDANTS failure to remedy these known security lapses was a reckless, negligent and willful and wanton breach of their respective duties of care to all passengers passing through Dulles Airport and boarding aircraft there as well as to persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft.

72. As a direct and proximate result of the conduct of all defendants, the defendants are jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable state law.

## COUNT THREE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST AMERICAN, THE OTHER AIRLINE DEFENDANTS AND MWAA BASED ON NEGLIGENT SELECTION

73. Plaintiffs incorporate by reference all prior allegations in this Complaint.

74. AMERICAN, THE OTHER AIRLINE DEFENDANTS AND MWAA had a non-delegable duty to the traveling public and persons on the ground or in buildings who might suffer injury or death as a result of improper or unauthorized operation of an aircraft, including decedents, to provide competent and careful security of their terminal operations areas and aircraft. In recognition of that duty, AMERICAN, THE OTHER AIRLINE DEFENDANTS and MWAA subcontracted for security services to protect all flights departing from Dulles Airport.

75. AMERICAN, THE OTHER AIRLINE DEFENDANTS and MWAA failed to exercise reasonable care in the selection of a competent and careful security system contractor by employing THE SECURITY COMPANY DEFENDANTS.

76. AMERICAN, THE OTHER AIRLINED DEFENDANTS and MWAA each knew or should have known that the security screening systems and services at Dulles Airport provided by THE SECURITY COMPANY DEFENDANTS were grossly inadequate and posed a severe danger to its aircraft, passengers and the public. AMERICAN, THE OTHER AIRLINE DEFENDANTS and MWAA knew or should have known that security systems at Dulles Airport had been demonstrated to be like a sieve, frequently unable to detect dangerous and deadly weapons capable of causing injury or death in numerous evaluations.

77. AMERICAN, THE OTHER AIRLINED DEFENDANTS and MWAA knew or should have known that THE SECURITY COMPANY DEFENDANTS failed to adequately train their employees, hired illegal aliens, failed to conduct required criminal background checks, and routinely failed in undercover security evaluations to detect even the most obvious of dangerous and deadly weapons capable of causing injury or death.

95.  As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law

### COUNT SEVEN

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON NEGLIGENT DESIGN

96.  Plaintiffs incorporate by reference all prior allegations in this Complaint.

97.  BOEING owed plaintiffs a duty of care in safely designing the subject aircraft and their component parts and systems, including, but not limited to, a duty to safety design:

- a secure cockpit, including doors and locking mechanisms, that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- hardened cockpit doors, more sophisticated locking systems for cockpit doors, secondary barriers to prevent cockpit intrusion, and doors with unique entry codes that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- systems in the flight deck environment, such as cabin video surveillance systems, that would enable pilots to view and assess the situation in the cabin before unlocking and opening the cockpit doors;

- systems that would prevent or lock out unauthorized persons from taking over the flight controls, including, but not limited to, password protected flight controls;

- systems that would prevent unauthorized persons from disengaging the autopilot systems, taking physical control of the subject aircraft, and programming the aircraft to fly to a specific set of coordinates;

- flight controls that would send a notification to the Government and/or AMERICAN if unauthorized persons gained control of the aircraft;

- features that would prevent unauthorized persons from shutting off the transponders of the subject aircraft; and/or

- install or use aircraft systems designed to prevent or avoid intentional downing and/or crashing the subject aircraft into buildings or structures on the ground.

28

98. BOEING breached this duty of care by failing to, among other things:

- design and/or install a secure cockpit, including doors and locking mechanisms, that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- harden cockpit doors, provide more sophisticated locking systems for cockpit doors, provide secondary barriers to prevent cockpit intrusion, or provide doors with unique entry codes that would prevent or deter unauthorized or unlawful entry into the cockpit, or a hijacking;

- install or use systems in the flight deck environment, such as cabin video surveillance systems, that would enable pilots to view and assess the situation in the cabin before unlocking and opening the cockpit doors;

- install or use a system that would prevent or lock out unauthorized persons from taking over the flight controls, including, but not limited to, password protected flight controls;

- install or use systems that would prevent unauthorized persons from disengaging the autopilot systems, taking physical control of the subject aircraft, and programming the aircraft to fly to a specific set of coordinates;
- install flight controls that would send a notification to the Government and/or AMERICAN if unauthorized persons gained control of the aircraft;

- install features that would prevent unauthorized persons from shutting off the transponders of the subject aircraft; and/or

- install or use aircraft systems designed to prevent or avoid intentional downing and/or crashing the subject aircraft into buildings or structures on the ground.

99. Defendant BOEING knew or should have known that the design of the subject aircraft and their component parts and systems was defective. Defendant BOEING failed to remedy this defect. The aircraft's defective design permitted the terrorists to gain access to the Flight 77 cockpit, take over the controls, and crash the subject aircraft into the subject buildings.

29

100. In addition, BOEING knew or should have known that alternative and safer designs were available for a nominal increase in cost, which would have prevented the terrorists from entering the cockpit on the subject aircraft, taking over the controls, and crashing the subject aircraft into the subject buildings.

101. The defective design of the subject aircraft was a proximate cause of the deaths of plaintiffs' decedents.

102. As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT EIGHT

### CLAIMS FOR WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST DEFENDANT BOEING BASED ON BREACH OF WARRANTY

103. Plaintiffs incorporate by reference all prior allegations in this Complaint.

104. Prior to September 11, 2001, defendant BOEING expressly and/or impliedly warranted and represented that the subject aircraft, and their component parts and systems, including, but not limited to, the subject aircraft flight decks, systems, structures, airframes, locking mechanisms and cockpit doors, were airworthy, of merchantable quality, and/or fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained and/or repaired, intended, and used. Defendant BOEING further warranted that the subject aircraft, and their component parts and systems, including, but not limited to the subject aircraft flight decks, systems, structures, airframes, locking mechanisms

30

and cockpit doors, were free from all defects.

105. Defendant BOEING breached said warranties in that the subject aircraft, and their component parts and systems, including, but not limited to, the subject aircraft flight decks, systems, structures, airframes, locking mechanisms and cockpit doors, were not airworthy, of merchantable quality, and/or fit and safe for the purposes for which they were designed, manufactured, assembled, inspected, tested, distributed, sold, serviced, maintained and/or repaired, intended, and used. Defendant BOEING further breached said warranties in that the subject aircraft and their component parts and systems, including, but not limited to, the subject aircraft flight decks, systems, structures, airframes, locking mechanisms and cockpit doors, were not free from all defects.

106. The breach of said warranties proximately caused the terrorist hijacking, crash, and the deaths of plaintiffs' decedents on September 11, 2001.

107. As a direct and proximate result of the conduct of defendant BOEING, BOEING is jointly and severally liable for damages sustained by each plaintiff and each plaintiff is entitled to recover such damages to the extent allowed under applicable law.

## COUNT NINE

### CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

108. Plaintiffs incorporate by reference all prior allegations in this Complaint.

109. Defendants owe a duty to the public and to the Plaintiff to adequately safeguard air travel. Defendants undertook this duty freely.

31

110. Defendants knew or should have known that their conduct and actions in failing to implement adequate security systems would lead to increased danger, risk of catastrophic injury, and severe, debilitating emotional distress to its passengers and to those on the ground, and to the Plaintiffs. The Defendants knew or should have known that the failure to implement adequate safety and security measures placed the public in extreme danger, increasing the risk of injury and the resulting emotional distress.

111. The conduct and actions of the Defendants were done in breach of their duties and in negligent disregard for the rights and lives of the general public and of those killed and injured at the Pentagon.

112. The course of conduct undertaken by the Defendants in failing to safeguard airports and aircraft was such that it was reasonably foreseeable to result in the death, injury and suffering of innocent people, both in the air and on the ground. The repeated failure to implement adequate security culminated in injury of and damage to plaintiffs' decedents resulting in severe, continuing, permanent mental, physical and emotional distress and suffering, and resulting loss of consortium and services to Plaintiffs.

113. As a direct and proximate cause of Defendants' negligent, grossly negligent and/or reckless misconduct and disregard for public and aviation safety in breach of their duty, Plaintiffs have suffered severe emotional distress and ongoing psychiatric injuries and damages.

114. Defendants, by reason of their negligent breach of duty and/or recklessness, inflicted emotional distress upon the Plaintiffs.