UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE SEPTEMBER 11TH PROPERTY DAMAGE           Civil No.
AND BUSINESS LOSS LITIGATION                    21 MC 101 (AKH)

------------------------------------------------------------X

------------------------------------------------------------X

IN RE SEPTEMBER 11TH LITIGATION                 Civil No.
                                                21 MC 97 (AKH)

------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

DESMOND T. BARRY, JR., being duly sworn, deposes and says:

1. I am an attorney admitted to practice before this Court and a member of the law firm of Condon & Forsyth LLP. I serve as Aviation Defendants' Liaison Counsel in the above-captioned actions. I make this Affidavit in connection with the Aviation Defendants' request to depose the witness identified as "Mary" in *U.S. v. Moussaoui*, Crim. No. 01-455A (LMB) (E.D.Va.), in accordance with 28 C.F.R. § 16.21 *et seq.* Mary is identified in *U.S. v. Moussaoui* as an FBI agent, who was detailed to the Usama Bin Laden Unit in the Counterterrorism Section (CTC) of the CIA from 1998 through 2001.

2. The above-captioned lawsuits seek to impose billions of dollars in liability against the Aviation Defendants for their alleged failure to detect and halt the terrorists who attacked the United States on September 11. The Aviation Defendants are being

sued by approximately six dozen personal injury and wrongful death claimants for injuries and fatalities that resulted from the hijackings of four flights on that morning by members of al-Qaeda. Numerous property damage and business loss plaintiffs have also brought claims for billions of dollars in damages against the Aviation Defendants for the destruction of real property and business interruption caused by the terrorist attacks.

3. Both sets of plaintiffs have brought claims for negligence, and their suits center around the same two core issues: what the Aviation Defendants knew or should have known before September 11 regarding the terrorist threat that al-Qaeda and Usama Bin Laden posed to domestic civil aviation; and what countermeasures the Aviation Defendants could or should have taken in response to that threat. Specifically, plaintiffs allege that the Aviation Defendants did not design or take appropriate countermeasures to guard against terrorist attacks by al-Qaeda or Usama Bin Laden in response to the available intelligence. Plaintiffs also allege that the Aviation Defendants failed to comply with applicable federal aviation regulations and failed to institute countermeasures that went beyond those required by the regulations, to the extent that such additional measures were necessary to meet their supposed duties under common law.

4. In light of plaintiffs' allegations, evidence regarding the intelligence available before September 11 to the FBI, the CIA, the FAA and the airlines regarding the terrorists' intent, likely means of attack, and capabilities, as well as the uses to which

that intelligence was put and with whom that intelligence was shared is critical to the Aviation Defendants' defense.

5. Together, the FBI and the CIA are the federal agencies tasked with collecting intelligence on possible terrorist attacks against the United States. Their responsibilities before September 11 included collecting intelligence regarding the threat of attacks against civil aviation by al-Qaeda or Usama Bin Laden. As part of its mandate, the FBI also had the obligation to decide which specific intelligence regarding the potential threat should be communicated to the FAA and, in turn, the airlines, including the Aviation Defendants. The intelligence that the FBI and the FAA communicated to the airlines was the Aviation Defendants' primary source of information regarding the threat of terrorist attacks on civil aviation. Therefore, evidence as to the specific intelligence the FBI recommended be shared with the airlines regarding possible terrorist attacks by al-Qaeda or Usama Bin Laden is vital to the Aviation Defendants' defense of the allegation that they were negligent in failing to prevent the attacks on September 11.

6. The FBI also participated in the process of determining when new countermeasures were necessary to protect the public, because the FAA received much of its intelligence concerning the terrorist threat to domestic civil aviation from the FBI. The FBI evaluated whether its intelligence indicated that the threat of terrorist attacks had materially increased such that the information should be shared with other federal agencies, including the FAA. The FAA then directed the airlines to implement whatever new or amended security procedures it determined were appropriate to guard against the

heightened threat. The intelligence the FBI communicated to the FAA was thus an important basis of any new security protocols that the FAA required -- or elected not to require -- the airlines to follow in the months preceding September 11, 2001.

7. The measures that the FBI recommended as appropriate responses to the intelligence it had regarding the terrorist threat are also important to the Aviation Defendants' defense. As one of the two key intelligence gathering agencies of the federal government, the FBI had far more and far more specific information regarding al-Qaeda and Usama Bin Laden's intentions to commit attacks against the United States and their likely means of attack than did the Aviation Defendants. Plaintiffs contend that the Aviation Defendants should have revised their security procedures in light of an escalating threat of terrorist attacks. However, the Aviation Defendants anticipate that the evidence will show that the federal government, armed with far more detailed information as to the activities of al-Qaeda and Usama Bin Laden, made the decision not to change the countermeasures it had in place -- nor did it recommend or require that the airlines adjust their security procedures. The measures that the FBI determined that it should take in response to the intelligence it had available to it, sheds light on whether the Aviation Defendants acted reasonably in response to the more limited intelligence that they had available to them.

8. Mary is well qualified to testify to these material issues. As an FBI agent detailed to the Usama Bin Laden Unit in the Counterterrorism Section (CTC) of the CIA from 1998 through 2001, Mary is believed to have collected substantial intelligence

information concerning al-Qaeda, Usama Bin Laden, and their operatives. Even before September 11, Mary had begun to investigate two of the terrorists who later took part in the attack, Khalid al-Midhar and Nawaf al-Hazmi, as well as their connection to known al-Qaeda operatives and the possibility that they were present in the United States. Because of her work with the Usama Bin Laden Unit and her investigation into two of the hijackers, Mary has specialized knowledge of the terrorists' intent, likely means of attack, capabilities, and activities in the months leading up to September 11.

9. One of the Aviation Defendants' main defenses in this action is that the fanatical terrorists who intentionally carried out the well-planned and highly coordinated attacks of September 11 are responsible for the injuries and damages caused by their attacks. The Aviation Defendants believe that because of her investigation into Mr. Moussaoui, Mary has specific knowledge of the unique skills and planning that went into al-Qaeda's plot. Accordingly, she is particularly qualified to offer evidence as to the manner in which the terrorists caused the injuries on which the plaintiffs base these actions. The Aviation Defendants expect that the deposition testimony of Mary will establish or tend to establish the following points in support of their defense. First, with careful study of the civil aviation system, the terrorists formulated a hijacking plot that was intended to minimize the chance that they would be detected. Indeed, their plan was specifically designed to permit them to circumvent the multilayered system of aviation security that was in place before September 11. Second, the terrorists worked around the security measures that were in place. As a result, the success of their plot was not

dependent on whether the Aviation Defendants failed to fulfill their responsibilities under the aviation security system mandated by the FAA.

10. The Aviation Defendants also anticipate that Mary will testify that, before September 11, the FBI and the CIA knew that Khalid al-Midhar and Nawaf al-Hazmi were al-Qaeda operatives and known threats to the United States. They also expect that Mary will testify that the FBI knew or suspected that both men were present in the United States before September 11. The Aviation Defendants further believe that Mary will testify that no communication was sent to the FAA requesting that the two men be placed on a "no-fly" list – even though such a list existed and even though on August 22, 2001 Mary asked a co-worker to put both men on other government watch-lists and indicate that going forward they should be denied entry into the United States. The Aviation Defendants expect that Mary's deposition testimony and other litigation discovery will help establish that if Khalid al-Midhar and Nawaf al-Hazmi had been placed on a no-fly list they would not have been permitted to board Flight 77 on September 11 and, at a minimum, its hijacking would have been prevented.

11. By virtue of her position with the FBI and her detail to Usama Bin Laden Unit in the Counterterrorism Section of the CIA, Mary also is uniquely qualified to testify as to the intelligence that was available to both agencies before September 11 concerning the possibility that al-Qaeda or Usama Bin Laden would commit a terrorist attack on the United States and its civil aviation system. Mary can also testify as to which portions of the intelligence that the FBI and the CIA gathered regarding the threat of a terrorist attack

were communicated to the FAA and offer evidence as to what, if any, countermeasures the intelligence agencies recommended that the airlines take in response to the available intelligence.

12. Mary has already provided a statement to a federal court concerning many of these material issues. In *U.S. v. Moussaoui*, Crim. No. 01-455A (LMB) (E.D.Va.), a statement authored by Mary attesting to what she would testify to if called as a witness was read into the record in a proceeding open to the public. A copy of Mary's statement remains available to the public on the website established by the Court at http://www.vaed.uscourts.gov/notablecases/moussaoui/exhibits/defense/940.pdf. Mary was also interviewed about these issues by the National Commission on Terrorist Attacks Against the United States (more familiarly known as the "9/11 Commission") and is frequently cited as an authority on these topics in the Commission's Report, which is publicly available.

13. The topics upon which the Aviation Defendants would depose Mary include

   a. The information that the FBI, the CIA, and Mary had before September 11, 2001 regarding Khalid al-Midhar, including his contact with Nawaf al-Hazmi; any connection between Khalid al-Midhar and al-Qaeda; the likelihood that Khalid al-Midhar had participated in or planned to participate in any terrorist attacks; and whether that information was shared with the FAA and/or any Aviation Defendant.

   b. The information that the FBI, the CIA, and Mary had before September 11, 2001, regarding Khalid al-Midhar's entry into the United States, including that there was no record of his departure and whether this information was shared with the FAA and/or any Aviation Defendant.

c. The information that the FBI, the CIA, and Mary had before September 11, 2001 regarding Nawaf al-Hazmi, any connection between Nawaf al-Hazmi and al-Qaeda; the likelihood that Nawaf al-Hazmi had participated in or planned to participate in any terrorist attacks; and whether that information was shared with the FAA or the Aviation Defendants.

d. Mary's request to a coworker on August 22, 2001 that Khalid al-Midhar and Nawaf al-Hazmi be placed on a "U.S. watch-list", including the consequences of placing persons on the watch-list and whether this information was communicated by the FBI to the FAA and/or any Aviation Defendant.

e. The basis of Mary's statement to FBI analyst Dina Corsi in a voicemail in August 22, 2001 that it was imperative to find Khalid al-Midhar and Nawaf al-Hazmi.

f. The FBI's role in designating individuals for a "no fly" list, including the criteria for designating an individual as "no fly," the scope of any such list that existed on September 11, 2001, and whether and how such a list or any terrorist watch-list was communicated to the FAA and/or any Aviation Defendant.

g. Whether the FBI made any request to the FAA to place Khalid al-Midhar and/or Nawaf al-Hazmi on a "no fly" list before September 11, 2001.

h. Whether the FBI had information before September 11, 2001 indicating that a terrorist attack would likely target civil aviation, would take place within the United States, and would involve the use of hijacked aircraft as weapons against ground targets.

i. Whether the FBI considered the intelligence that it had before September 11, 2001 to be actionable.

j. The communications, if any, between the FBI and the FAA and/or any defendant before September 11, 2001 regarding the possibility of an al-Qaeda attack on civil aviation.

k. The communications, if any, between the FBI and the CIA before September 11, 2001 regarding the possibility of an al-Qaeda attack on civil aviation.

14.  The Aviation Defendants submit that Mary's testimony is clearly appropriate when all of the factors listed in 28 C.F.R. § 16.26 are taken into consideration. Given that Mary has already provided a statement to the Court in *U.S. v. Moussaoui* in an open proceeding and that her statement remains publicly available, the FBI has already concluded that disclosure would not infringe an applicable privilege, violate a statute or regulation, reveal classified information, reveal a confidential source or informant, reveal investigative records or interfere with enforcement proceedings, or improperly reveal trade secrets. Moreover, the significance of the liability sought to be imposed, the national gravity of the underlying events, and the importance of the legal issues presented all militate in favor of Mary's testimony.

15.  By contrast, a refusal to permit Mary's deposition would deprive the Aviation Defendants of evidence that is important to its defense of the very serious allegations that have been made against them in this important civil litigation. The Aviation Defendants are defending against allegations that they were responsible for gathering and assessing information regarding the threat of a terrorist attack and for designing appropriate countermeasures. The Aviation Defendants contend that their role was limited to implementing the security measures mandated by the FAA based on threat assessments made by the FAA and the federal intelligence community, including the FBI. *See, e.g.*, Domestic Air Transportation System Security Act, 49 U.S.C. § 44904(a) (1994) ("The Administrator of the Federal Aviation Administration and the Director of

the Federal Bureau of Investigation jointly shall assess current and potential threats to the domestic air transportation system.").

———————————————
DESMOND T. BARRY, JR.

Sworn to before me this
___ day of March 2007

———————————————
Notary Public

MARIA PAGAN
Notary Public, State of New York
No. 01PA4670337
Qualified in Queens County
Commission Expires 10/31/____