UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

IN RE SEPTEMBER 11TH PROPERTY DAMAGE            Civil No.
AND BUSINESS LOSS LITIGATION                    21 MC 101 (AKH)


------------------------------------------------------------- X
------------------------------------------------------------- X

IN RE SEPTEMBER 11TH LITIGATION                 Civil No.
                                                21 MC 97 (AKH)


------------------------------------------------------------- X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

DESMOND T. BARRY, JR., being duly sworn, deposes and says:

    1.    I am an attorney admitted to practice before this Court and a member of the law firm of Condon & Forsyth LLP. I serve as Aviation Defendants' Liaison Counsel in the above-captioned actions. I make this Affidavit in accordance with 28 C.F.R. § 16.21 *et seq.*, in connection with the Aviation Defendants' request to depose Behrooz Sarshar, a former FBI translator who was assigned to the FBI's Washington Field Office in April 2001.

    2.    These lawsuits seek to impose billions of dollars in liability against the Aviation Defendants for their alleged failure to detect and halt the terrorists who attacked the United States on September 11, 2001. The Aviation Defendants are being sued by dozens of personal injury and wrongful death claimants for injuries and fatalities that

resulted from the hijackings of four flights on that morning by members of the terrorist group al-Qaeda. Numerous property damage and business loss plaintiffs have also brought claims for billions of dollars in damages against the Aviation Defendants for the destruction of real property and business interruption caused by the terrorist attacks.

3. Both sets of plaintiffs have brought claims for negligence, and their suits center around the same two core issues: (i) what the Aviation Defendants knew or should have known before September 11 regarding the terrorist threat that al-Qaeda and Usama Bin Laden posed to domestic civil aviation; and (ii) what countermeasures the Aviation Defendants could or should have taken in response to that threat.

4. Through their pleadings, discovery demands, and questions in deposition discovery, plaintiffs have claimed or indicated that they are likely to claim, among other things, that the Aviation Defendants had primary responsibility to assess the risks posed by terrorists in general and al-Qaeda in particular to domestic civil aviation, and that the Aviation Defendants could have prevented the September 11 terrorist attacks if they had properly carried out this responsibility.

5. Plaintiffs have also claimed or indicated that they are likely to claim that the Aviation Defendants should have anticipated suicide hijackings and implemented security procedures that would have provided an effective defense against such attacks.

6. In light of these allegations, the Aviation Defendants anticipate that Mr. Sarshar will offer important, relevant testimony.

7.  As an FBI translator, in the spring of 2001 Mr. Sarshar participated in two FBI interviews with a former member of the Iranian intelligence service who had been a longtime informant for the FBI (the "Informant"). Mr. Sarshar is expected to testify that the Informant reported to the FBI that al-Qaeda was planning terrorist attacks on the United States in which commercial aircraft would be used as weapons.

8.  The topics upon which the Aviation Defendants would depose Mr. Sarshar include:

   a.  The information conveyed to the FBI during the interviews the agency conducted with the Informant regarding the possibility that al-Qaeda or Usama Bin Laden were planning terrorist attacks involving civil aviation, including the intelligence the Informant provided about the likely means of attack, the purpose and motivation for the attacks, the potential targets of the attacks, whether the attacks were likely to be carried out in the United States or abroad, and whether the attacks were intended to be suicide-operations.

   b.  The FBI's assessment of the Informant's statements regarding the threat of terrorist attacks involving civil aviation posed by al-Qaeda or Usama Bin Laden, including whether the FBI considered the information to be credible or detailed enough to be actionable.

   c.  The steps, if any, that Mr. Sarshar took before September 11, 2001, in response to the information conveyed by the Informant regarding the terrorist threat to civil aviation posed by al-Qaeda or Usama Bin Laden.

   d.  The steps, if any, that the FBI took before September 11, 2001, in response to the information conveyed by the Informant regarding the terrorist threat to civil aviation posed by al-Qaeda or Usama Bin Laden.

    e.    The information, if any, that the FBI had received from the Informant regarding the possibility that al-Qaeda and Usama Bin Laden were planning terrorist attacks involving civil aviation, which was communicated to the FAA before September 11, 2001.

    f.    The information, if any, that the FBI had received from the Informant regarding the possibility that al-Qaeda and Usama Bin Laden were planning terrorist attacks involving civil aviation, which was communicated to the Aviation Defendants before September 11, 2001.

9. Given the central role the FBI played in the civil aviation security system on September 11, Mr. Sarshar's testimony as to the information conveyed by the Informant and the steps the FBI took in response to this information is directly relevant to the material issues of proximate cause and the reasonableness of the Aviation Defendants' conduct.

10. The FBI was and continues to be one of the federal agencies tasked with collecting intelligence on possible terrorist attacks against the United States, including the terrorist threat posed to domestic civil aviation by al-Qaeda or Usama Bin Laden.

11. On September 11, 2001, the FBI also had joint responsibility with the Federal Aviation Administration ("FAA") for assessing the seriousness of potential terrorist threats to civil aviation, pursuant to federal statute. *See* 49 U.S.C. § 44904(a) (2000).

12. In addition, the FBI participated in the process by which the federal government determined when new or different aviation security measures were necessary

to protect the public. The FBI evaluated the intelligence it had collected and determined whether the threat of terrorist attacks had materially changed, such that the information should be shared with the FAA. In turn, the FAA would direct commercial airlines and airport authorities to implement any amended security procedures that the FAA determined were an appropriate response to intelligence that had been conveyed by the FBI.

13.     The FBI's response to and assessment of the information it gathered before September 11 regarding the terrorist threat to civil aviation posed by al-Qaeda or Usama Bin Laden is therefore directly relevant to a central issue in these cases: whether, in light of the intelligence available to them, the Aviation Defendants' conduct was reasonable with respect to the aviation security procedures that they followed at the time of the terrorist attacks.

14.     While plaintiffs allege that the Aviation Defendants should have revised their security procedures because of an escalating threat of terrorist attacks,[1] they cannot recover on this theory if the Aviation Defendants acted reasonably in taking precautions

---

[1] The Aviation Defendants have a different view, namely that they cannot be held liable if they complied with the procedures and requirements mandated by the FAA. However, the Court has indicated that it will determine the applicable standard of care in the September 11 Litigation only when the parties are able to make "a motion seeking actual and specific relief, or in the context of a jury instruction." Summary Order, dated June 22, 2007. In order to be able to file such a motion and until the Court makes its determination, the Aviation Defendants must conduct discovery relevant to the plaintiffs' theory of liability.

against terrorist attacks on civil aviation. Therefore, the reasonableness of the Aviation Defendants' conduct is crucial to the issue of liability.

15. Evidence regarding the measures that the FBI determined that the agency should take in response to the intelligence it had available to it concerning the terrorist threat to civil aviation posed by al-Qaeda and Usama Bin Laden will assist the trier of fact to determine whether the Aviation Defendants acted reasonably in response to the same threat.

16. The Aviation Defendants also anticipate that Mr. Sarshar's testimony will show or tend to show that the FBI was armed with far more detailed information than the FAA or the airlines about the possibility that al-Qaeda and Usama Bin Laden were planning to execute terrorist attacks involving commercial flights, yet the agency made the decision not to change the countermeasures that were in place and it did not recommend that the FAA or the airlines adjust security procedures. This evidence will establish or tend to establish that the Aviation Defendants acted reasonably on September 11 by continuing to follow and implement the aviation security procedures that were required by the federal government.

17. Plaintiffs also cannot recover if the Aviation Defendants' conduct was not the proximate cause of their injuries. Therefore, the Aviation Defendants are entitled to show that the operations conducted by the federal intelligence agencies, including the FBI, were the most effective way to uncover and stop the September 11 attacks and that

the inability of the federal intelligence agencies to detect and stop the terrorist plot is a more significant causal circumstance of the terrorist attacks than any allegedly negligent conduct of the Aviation Defendants.

18.   Accordingly, evidence regarding the facts and circumstances surrounding the FBI's inability to specifically identify, uncover and halt al-Qaeda's plot through its intelligence gathering activities – including the interview with the Informant for which Mr. Sarshar was the translator – is relevant to the Aviation Defendants' defenses.

19.   Mr. Sarshar has made several statements concerning the FBI's interviews with the Informant. He was interviewed by staff of the National Commission on Terrorist Attacks Against the United States (more familiarly known as the "9/11 Commission") in 2004. Upon information and belief, Mr. Sarshar also provided the Department of Justice Inspector General with specific information regarding this issue. In addition, Mr. Sarshar gave a two-hour interview to a journalist concerning these topics and was frequently cited in the resulting newspaper article. *See* John Crewdson, "As U.S. Steps Up Investigation, Iran Denies Assisting Al Qaeda," *Chicago Tribune,* July 21, 2004, at C1. The facts surrounding Mr. Sarhar's participation in the interviews with the Informant are also discussed at length in an open-letter that another FBI translator wrote to the Chairman of the 9/11 Commission and publicly released. *See* Letter from Sibel Edmonds to Thomas Kean, dated August 1, 2004.

20.     In short, Mr. Sarshar's testimony is clearly appropriate when all of the factors listed in 28 C.F.R. § 16.26 *et seq.* are taken into consideration. Since Mr. Sarshar's participation in the FBI's interviews with the Informant and the substance of the information conveyed during those interviews has already been publicly disclosed, the FBI has already concluded that disclosure would not infringe an applicable privilege, violate a statute or regulation, reveal classified information, reveal a confidential source or informant, reveal investigative records or interfere with enforcement proceedings, or improperly reveal trade secrets. Moreover, the magnitude of the liability sought to be imposed, the national gravity of the underlying events, and the importance of the legal issues presented all militate in favor of Mr. Sarshar's testimony.

21.     By contrast, a refusal to permit the deposition would deprive the Aviation Defendants of evidence that is important to their defense. While plaintiffs' claim that the Aviation Defendants were responsible for gathering and assessing information regarding the threat of a terrorist attack and for designing appropriate countermeasures, the Aviation Defendants contend that their role was limited to implementing the security measures mandated by the FAA based on threat assessments made by the FAA and the federal intelligence community, including the FBI.  *See, e.g.*, Domestic Air Transportation System Security Act, 49 U.S.C. § 44904(a) (1994) ("The Administrator of the Federal Aviation Administration and the Director of the Federal Bureau of Investigation jointly shall assess current and potential threats to the domestic air transportation system."). Precluding the Aviation Defendants from taking Mr. Sarshar's

deposition would prevent them from obtaining important, relevant evidence that establishes or tends to establish that, contrary to plaintiffs' assertions, the Aviation Defendants acted reasonably and were not the proximate cause of the injuries that resulted from the September 11 terrorist attacks.

DESMOND T. BARRY, JR.

Sworn to before me this
___ day of August 2007

_____
Notary Public

MARIA PAGAN
Notary Public, State of New York
No. 01PA4670337
Qualified in Queens County
Commission Expires 10/31/___