**U.S. Department of
Homeland Security**



**Transportation
Security
Administration**

June 16, 2008

<u>By Electronic Mail</u>

Marc S. Moller, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017

Richard A. Williamson, Esq.
Flemming Zulack Williamson Zauderer
One Liberty Plaza
New York, NY 10006

Desmond T. Barry, Jr., Esq.
Condon & Forsyth
7 Times Square
New York, NY 10036

Robert A. Clifford, Esq.
Clifford Law Offices
120 North LaSalle Street
Chicago, IL 60602

Beth Jacob, Esq.
Schiff Hardin LLP
623 Fifth Avenue
New York, NY 10022

Donald Migliori, Esq.
Motley Rice LLC
28 Bridgeside Blvd
P.O. Box 1792
Mount Pleasant, S.C. 29465

Re:    *In re September 11 Litigation*, 21 MC 97 (S.D.N.Y.)
       *In re September 11 Property Damage and Business Loss Litigation*,
       21 MC 101 (S.D.N.Y.)

Dear Counsel:

    This letter constitutes a final determination by the Federal Aviation Administration ("FAA") and the Transportation Security Administration ("TSA") (collectively, the "agencies"), with respect to (1) the requests of American Airlines, Inc., AMR Corporation, United Air Lines, Inc., UAL Corporation, Colgan Air, Inc., US Airways, Inc., Argenbright Security, Inc., Globe Aviation Services, Inc., Huntleigh USA Corp., and the Boeing Company (the "Aviation Defendant Requestors"), dated July 14, 2006, for testimony from the FAA and TSA, pursuant to

Letter to Liaison Counsel
June 16, 2008
Page 2 of 35

Federal Rules of Civil Procedure 45 and 30(b)(6), as revised by the March 27, 2007 Notice of
Deposition of the FAA pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Roger
Podesta's letter of July 25, 2007, the Aviation Defendants' FAA Rule 30(b)(6) Topics:
Supplemental Document References, dated September 28, 2007, and the Aviation Defendants'
FAA Rule 30(b)(6) Topics: Document Designations in Reply to Plaintiffs' Designation, dated
October 4, 2007 (collectively, the "Aviation Defendants' Rule 30(b)(6) Deposition Request");
and (2) the request of the plaintiffs and World Trade Center Properties Cross-Claim plaintiffs
(collectively, the "Plaintiffs"), dated September 21, 2007, for testimony from the FAA and TSA
pursuant to Rule 30(b)(6) and Plaintiffs' supplemental request, dated September 27, 2007
(collectively, "Plaintiffs' Rule 30(b)(6) Deposition Request") (collectively, "the Parties' Rule
30(b)(6) Deposition Requests"). According to their submissions, the Parties seek Rule 30(b)(6)
deposition testimony on a number of different topics in connection with the consolidated cases *In
re September 11 Litigation*, 21 MC 97 (S.D.N.Y.), and *In re September 11 Property Damage and
Business Loss Litigation*, 21 MC 101 (S.D.N.Y.).

On October 12, 2007, the agencies issued a final determination with respect to certain of
the requested topics, as amended by letter dated February 7, 2008 (the "First
*Touhy* Determination"). In the First *Touhy* Determination, the agencies authorized Rule 30(b)(6)
testimony on seven discrete topics. In the First *Touhy* Determination, the agencies indicated that
all requests for Rule 30(b)(6) testimony on additional topics set forth in the Parties' Rule
30(b)(6) Deposition Requests remained under consideration and would be the subject of a
separate decision letter.

The agencies have now determined that, for the reasons stated herein, all outstanding
requests for Rule 30(b)(6) testimony contained in the Parties' Rule 30(b)(6) Deposition Requests
are denied pursuant to 6 C.F.R. §§ 5.41 *et seq.* and 49 C.F.R. §§ 9.1 *et seq.* The agencies have
further determined, however, that as discussed in more detail below, they will authorize the
production of documents, declarations to authenticate documents and/or the testimony of
individual agency employees who possess information responsive to certain of the requested
topics.

## I.   DENIAL OF ADDITIONAL RULE 30(B)(6) TESTIMONY

The preparation of a Rule 30(b)(6) witness places an enormous strain on agency
resources and diverts agency personnel from their official duties. Pursuant to Rule 30(b)(6), a
designated witness is required to provide testimony "as to matters known or reasonably available
to the organization." Fed. R. Civ. P. 30(b)(6). In the case of governmental agencies the size and
breadth of the FAA and TSA, which had and continue to have thousands of employees stationed
in offices around the world, ascertaining what information is "known" to the FAA and/or TSA
within the meaning of Rule 30(b)(6) is a monumental task, particularly given that the requested
topics concern events and issues that are many years, if not decades, in the past. In addition,
many of the documents pertaining to these topics, to the extent they still exist, are now in the

Letter to Liaison Counsel
June 16, 2008
Page 3 of 35

possession of TSA, further complicating the agencies' search efforts. Accordingly, the burdens imposed on the agencies in providing testimony pursuant to Rule 30(b)(6) is exponentially greater than producing documents or individual fact witness testimony.

Over the past year, the agencies have conducted an extensive review of the remaining requested topics. More than a thousand hours have been expended to date in an effort to determine where responsive information might be located and what additional work would need to be done in order to adequately prepare a Rule 30(b)(6) witness to testify as to these topics. The agencies' conclusion at the end of this review process is that it would be extremely difficult, if not impossible, for the agencies to respond comprehensively to the remaining topics set forth in the Parties' Rule 30(b)(6) Deposition Requests.

As an initial matter, the agencies have determined that thousands of additional hours of research, including the search for and review of documents and interviews of past and current agency employees, would need to be completed before the agencies could produce witnesses competent to testify in a Rule 30(b)(6) capacity as to the remaining requested topics. The agencies' task in this regard is complicated by the passage of time. The agencies note that they were not served with any of the subject requests for testimony until July 2006, approximately four years after the commencement of this litigation, and more than a decade after many of the events concerning which testimony is sought took place. In addition, subsequent to September 11, 2001, the FAA was reorganized and its responsibilities related to civil aviation security were transferred to TSA. Both of these factors make locating reliable sources of information relevant to the requested topics extraordinarily difficult.

This determination is reinforced by the agencies' prior experience in providing Rule 30(b)(6) testimony in this litigation. On February 11, 2008, and February 12, 2008, Robert J. Cammaroto, Branch Chief for Commercial Airports Policy at TSA, testified as a Rule 30(b)(6) witness for the agencies on a select number of discrete topics, predominantly related to the checkpoint security screening procedures that were in effect on September 11, 2001, as set forth in the Air Carrier Standard Security Program and various Security Directives. In order to adequately prepare Mr. Cammaroto for even this limited testimony, agency and Department of Justice personnel spent hundreds of hours searching for relevant documents and interviewing past and present agency employees.

Moreover, Mr. Cammaroto personally spent more than 100 hours in preparation for, and participation in, his Rule 30(b)(6) deposition in this litigation. The agencies estimate that, in light of the breadth and scope of the remaining requested topics, any additional witness(es) designated to provide testimony pursuant to Rule 30(b)(6) would require at least as much time, if not more, to prepare for their depositions. The diversion of critical agency employees from their official duties for such an unacceptable length of time is untenable.

Finally, as detailed *infra*, many of the remaining requested topics are individually objectionable and inappropriate subjects for Rule 30(b)(6) testimony. For example, the vast breadth and scope of many of the remaining topics extend far beyond what the agencies have previously authorized in this case. Additionally, classified national security information or information that is otherwise privileged or protected from disclosure is intrinsically intertwined with much of the responsive information.

In rendering their decision as to the Parties' Rule 30(b)(6) Deposition Requests, the agencies have given due consideration to the substantial public interest in this litigation. However, it appears that the Parties' expressed needs could be satisfied from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4), (a)(5), (a)(7); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, the agencies have determined that, even assuming there was a minimal public interest that would be served in providing the requested information in the form of a Rule 30(b)(6) deposition, such interest is far outweighed by the enormous burdens that providing such testimony would impose on the agencies.

In sum, in light of the undue burdens that would be placed upon the agencies in providing additional Rule 30(b)(6) testimony; the need to conserve the time of agency employees for the conduct of official business; the objectionable nature of most of the remaining requested topics; and the availability of much of the requested information through other, less burdensome, sources, the agencies decline to authorize additional Rule 30(b)(6) testimony in this litigation.

## II.    ADDITIONAL OBJECTIONS TO THE PARTIES' RULE 30(B)(6) DEPOSITION REQUESTS

In addition to the substantial burdens that providing any additional Rule 30(b)(6) testimony would impose upon the agencies generally, the agencies raise the following objections to the remaining requested Rule 30(b)(6) topics. Each stated objection constitutes a substantive basis for the agencies' denial of the Parties' Rule 30(b)(6) Deposition Requests.

### A.    GENERAL OBJECTIONS

The agencies assert the following general objections to the Parties' Rule 30(b)(6) Deposition Requests, and to each topic proposed therein.

First, the agencies object to the Parties' Rule 30(b)(6) Deposition Requests to the extent that they call for the production of classified national security information, Sensitive Security Information ("SSI") that would not be appropriate for disclosure under Section 525(d) of the Department of Homeland Security Appropriations Act, 2007, Public Law No. 109-295, 120 Stat. 1355, 1382 (Oct. 4, 2006), as reenacted by Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, § 522, 121 Stat. 2069 (Dec. 26, 2007), or information that is otherwise privileged or

protected from disclosure, including but not limited to information protected by the law enforcement privilege, the deliberative process privilege, the work product privilege and the attorney-client privilege. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(2), (b)(2), (b)(3), (b)(5), (b)(6); 49 C.F.R. § 9.9(a)(3); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii).

Second, the agencies object to the Parties' Rule 30(b)(6) Deposition Requests to the extent that they seek intelligence information that was not communicated to the Aviation Defendants. The majority of such intelligence information remains currently and properly classified. The process of separating the classified information from the non-classified information would be an extremely difficult and burdensome task. This risk is heightened in the context of a deposition, where open-ended inquiries may elicit responses in which classified material is intertwined and not readily segregable, and where making on-the-spot determinations as to what specific information is classified is extremely difficult, if not impossible. The difficulty of this task is illustrated by TSA's experience in monitoring depositions in this litigation to protect against the disclosure of SSI. Despite the attendance of an aviation security expert and government counsel at each deposition, there nonetheless have been to date mor than 25 instances of inadvertent disclosure by deposition witnesses. Such disclosures are inevitable in the deposition context, as a witness's response cannot always be anticipated with any certainty. As the risk of inadvertent disclosure of classified information is insurmountably high, and as the relevance of such information is minimal at best, the agencies decline to authorize this testimony. *See* 6 C.F.R. §§ 5.48(b)(2), (b)(3); 49 C.F.R. § 9.9(a)(3); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii).

Third, the agencies object to the Parties' Rule 30(b)(6) Deposition Requests to the extent that they call for opinion or expert testimony, as such testimony is prohibited by agency regulation. *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii).

Fourth, the agencies object to the Parties' Rule 30(b)(6) Deposition Requests to the extent that they seek testimony concerning documents that neither were prepared by the FAA or TSA, nor enforced by the FAA in the exercise of its regulatory authority. Preparing a witness to testify regarding such documents would impose an undue burden on the agencies. Moreover, the agencies are not competent to provide authoritative testimony on documents they did not author or enforce.

## B.    OBJECTIONS TO SPECIFIC REQUESTED TOPICS

The agencies assert the following specific objections, and provide the following responses, to each of the remaining topics proposed in the Parties' Rule 30(b)(6) Deposition Requests.

## AVIATION DEFENDANTS' TOPIC NO. 1

> The origin, substance, objectives and mandatory nature of the
> Common Strategy for addressing aircraft hijackings as in effect on
> 9/11/2001.

The agencies object to this topic as it is overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## AVIATION DEFENDANTS' TOPIC NO. 4

> The FAA's development and maintenance of a "no fly" list pre-
> 9/11/2001 for persons whose travel on commercial aircraft in the
> United States was restricted or prohibited for security reasons, and
> whether any of the hijackers involved in any of the September 11
> Attacks had been placed on any no fly list before 9/11/2001.

The agencies object to this topic as it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## AVIATION DEFENDANTS' TOPIC NO. 5

>    Whether the Federal Bureau of Investigation, the Central
>    Intelligence Agency, or any other United States government
>    agency had requested the FAA before 9/11/2001 to place any of
>    the hijackers (including specifically Khalid al Mihdhar or Nawaf al
>    Hazmi) involved in any of the September 11 Attacks on any no fly
>    list.

The agencies object to this topic as it is vague, ambiguous, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including public sources. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## AVIATION DEFENDANTS' TOPICS NOS. 10-13, 15-16

>    10.  Any studies, investigations, or reports prepared by or for the
>    FAA, or any other United States government agency, concerning
>    the rate at which, or circumstances under which, short-bladed
>    knives (i.e. knives with a blade length less than 4 inches),
>    including Swiss Army knives, pocket utility knives, Scout knives,
>    or multipurpose tools like LEATHERMAN brand tools, would set
>    off the alarms of magnetometers that were set at the sensitivity
>    levels established by the FAA for magnetometers approved for use
>    at airport screening checkpoints on or before 9/11/2001.

>    11.  Any studies, investigations, or reports prepared by or for the
>    FAA, or any other United States government agency, concerning
>    the rate at which, or the circumstances under which, short-bladed
>    knives (i.e. knives with a blade length less than 4 inches),
>    including Swiss Army knives, pocket utility knives, Scout knives,
>    or multipurpose tools like LEATHERMAN brand tools, contained
>    in passenger carry-on baggage could be detected by FAA-approved
>    x-ray machines in use at airport screening checkpoints on or before
>    9/11/2001.

12.  Any studies, investigations, or reports prepared by or for the FAA, or any other United States government agency, concerning the feasibility or practicality of prohibiting or restricting the carrying of short-bladed knives through airport screening checkpoints on or before 9/11/2001.

13.  Any studies, investigations, or reports prepared by or for the FAA, or any other United States government agency, concerning the feasibility or success or failure rates of detecting concealed or disguised airborne irritant sprays or aerosols (such as mace, tear gas, or pepper spray) at airport screening checkpoints on or before 9/11/2001.

15.  Any studies, investigations, or reports prepared by or for the FAA, or any other United States government agency, before 9/11/2001, concerning the screening methods and/or equipment (including the setting and calibration of the equipment) required to detect airborne irritant sprays or aerosols (such as mace, tear gas, or pepper spray) and/or small metal objects (such as short-bladed knives, pocket knives, small scissors, screwdrivers, or box cutters).

16.  Any studies, investigations, or reports prepared by or for the FAA, or any other U.S. government agency, before 9/11/2001, concerning human factors and other variables affecting the performance of airport security checkpoint screeners.

The agencies object to these topics as they are vague, ambiguous, overly broad, unduly burdensome, and call for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).  The agencies further object to these topics as they do not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).  The agencies further object to these topics to the extent that they call for the production of information regarding screening equipment that was not in use at airport screening checkpoints on September 11, 2001.

The agencies further object to these topics because, to the extent any testimony is sought beyond the information contained in these scientific reports, such information would almost certainly constitute expert or opinion testimony.  Agency regulations prohibit the provision of such expert or opinion testimony.  *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule

Letter to Liaison Counsel
June 13, 2008
Page 9 of 35

30(b)(6) witness, including agency records or public sources. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to these topics as they predominantly seek testimony regarding governmental reports, which documents speak for themselves.

Finally, we note that, in their letter of March 27, 2007, the Aviation Defendant Requestors indicated that they would be willing to accept documents in lieu of testimonial responses with respect to these topics.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to these topics.

## AVIATION DEFENDANTS' TOPIC NO. 14

> The FAA certification standards and calibration and sensitivity settings in effect on 9/11/2001 for magnetometers, handheld metal detectors, and x-ray machines in use at airport security screening checkpoints. This topic includes a description of standard TIPS threat images and the required minimum detection rates for test items that X-ray equipment or magnetometers must attain in order to be properly authorized for use.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## AVIATION DEFENDANTS' TOPIC NO. 17

The purpose and function, before 9/11/2001, of the FAA "Red Team," and the use to which Red Team findings and reports were put by the FAA before 9/11/2001.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## AVIATION DEFENDANTS' TOPIC NO. 18

Any reports, studies, and findings of Red Team investigations or tests of airport security passenger screening checkpoint performance before 9/11/2001.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as it predominantly seeks testimony regarding governmental reports, which documents speak for themselves.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

**AVIATION DEFENDANTS' TOPIC NO. 19**

> Any reports, studies, and findings of investigations or tests
> conducted after 9/11/2001 of the effectiveness of airport security
> passenger screening checkpoints by Red Teams or their TSA
> equivalent.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad,
unduly burdensome, and calls for the production of information that is not relevant to the
litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further
object to this topic as it does not describe with reasonable particularity the matters on which
examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as it calls for information concerning the post-
September 11 aviation security system. Such evidence is, at most, of marginal relevance to this
litigation, particularly in light of the federalization of screening functions and the other
significant changes to the aviation security system that were put into effect subsequent to
September 11, 2001. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 26(b)(2)(C)(iii); Fed. R. Civ.
P. 45(c)(3)(A)(iv). This is consistent with the district court's order, dated May 16, 2006, limiting
the scope of depositions in this litigation to security measures and procedures that were in effect
on or prior to September 11, 2001.

Moreover, certain information concerning post-September 11, 2001 Red Team results
constitutes classified national security information. TSA therefore objects to this topic to the
extent it calls for the disclosure of such classified national security information. *See* 6 C.F.R.
§§ 5.48(b)(2), (b)(3); 49 C.F.R. § 9.9(a)(3); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii).

Finally, TSA has determined that certain post-September 11, 2001 Red Team results
constitute SSI, the disclosure of which presents a risk of harm to the nation. *See* Section 525(d)
of the Department of Homeland Security Appropriations Act, 2007, Public Law No. 109-295,
120 Stat. 1355, 1382 (Oct. 4, 2006), as reenacted by Consolidated Appropriations Act, 2008,
Pub. L. No. 110-161, § 522, 121 Stat. 2069 (Dec. 26, 2007); *see also* 6 C.F.R. §§ 5.48(b)(1),
(b)(2); 49 C.F.R. § 9.9(b)(3), (b)(4); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii). TSA therefore objects to
this topic as it calls for the disclosure of such SSI.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to
authorize Rule 30(b)(6) testimony with respect to this topic.

**AVIATION DEFENDANTS' TOPIC NO. 20**

> The respective roles and responsibilities of the FAA, airports,
> airport authorities, air carriers and aircraft manufacturers for

> aviation security before 9/11/2001, including: (a) the statements in
> the DOT's 1998 Report to Congress on Civil Aviation Security
> asserting that the FAA and the DOT, in conjunction with the
> "Intelligence Community" of the United States, had the specific
> responsibility to assess threats against civil aviation and to design
> the "most effective" countermeasures necessary to address those
> threats"; and (b) the statements in the DOT's 1998 Report to
> Congress on Civil Aviation Security asserting that the airlines and
> airports had the responsibility to "implement" the countermeasures
> that the federal government directed them to apply.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad,
unduly burdensome, and calls for the production of information that is not relevant to the
litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further
object to this topic as it does not describe with reasonable particularity the matters on which
examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as it predominantly calls for legal opinion
testimony. The agencies will not provide opinion or expert testimony, as such testimony is
prohibited by regulation. *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P.
45(c)(3)(B)(ii). A Rule 30(b)(6) deposition may not serve as the vehicle through which to
compel the United States or its agencies to provide its views as to a legal issue affecting federal
interests.

The agencies further object to this topic as it predominantly seeks testimony regarding
governmental reports, which documents speak for themselves.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to
authorize Rule 30(b)(6) testimony with respect to this topic.

## AVIATION DEFENDANTS' TOPIC NO. 21

> The right or ability of air carriers or checkpoint security companies
> pre-9/11/2001 to adopt passenger security screening procedures
> other than those prescribed by the FAA in the ACSSP or
> applicable Security Directives without first obtaining the FAA's
> approval.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad,
unduly burdensome, and calls for the production of information that is not relevant to the
litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further

object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as it predominantly calls for legal opinion testimony. The agencies will not provide opinion or expert testimony, as such testimony is prohibited by regulation. *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii). A Rule 30(b)(6) deposition may not serve as the vehicle through which to compel the United States or its agencies to provide its views as to a legal issue affecting federal interests.

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Indeed, the agencies note that FAA policy statements pertaining to this topic have been produced previously in this litigation, and Mr. Cammaroto similarly authenticated certain prior statements he had made regarding this topic at his deposition on February 11 and 12, 2008. Moreover, the agencies already have provided Rule 30(b)(6) testimony relevant to this topic as it pertains to two specific factual scenarios that had been presented to the FAA prior to September 11, 2001 — the right or ability of air carriers to implement additional passenger screening procedures in connection with the Computer Assisted Passenger Prescreening System and the development and review of the Checkpoint Operations Guide.

To the extent that the Aviation Defendant Requestors seek further testimony regarding the application of the FAA's general policy in other factual contexts, the FAA has determined that it would be impossible to provide such Rule 30(b)(6) testimony in any comprehensive manner. Given the generalized and abstract nature of the issue as presented, it potentially intersects with a wide-ranging number of FAA programs and procedures. After an extensive investigation, including interviews with multiple current and former employees, the agencies have concluded that they could not possibly identify every situation in which the FAA's policy had been implicated. Moreover, to the extent this topic seeks testimony as to how the FAA's general policy in this area hypothetically would have been applied to scenarios with which the agency was not in fact presented, such testimony would be speculative, and therefore impermissible.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

Letter to Liaison Counsel
June 13, 2008
Page 14 of 35

## AVIATION DEFENDANTS' TOPIC NO. 22

> The right or ability of state or local governments pre-9/11/2001 to impose upon airports, airport authorities, air carriers, or checkpoint security companies, passenger screening standards and procedures or other aviation security standards and procedures that were different from those prescribed by the FAA in the ACSSP, the Airport Security Program ("ASP"), or applicable Security Directives.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as it predominantly call for legal opinion testimony. The agencies will not provide opinion or expert testimony, as such testimony is prohibited by regulation. *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii). A Rule 30(b)(6) deposition may not serve as the vehicle through which to compel the United States or its agencies to provide its views as to a legal issue affecting federal interests.

To the extent that the Aviation Defendant Requestors seek testimony regarding the application of preemption doctrine in specific factual contexts, the FAA has determined that it would be impossible to provide such Rule 30(b)(6) testimony. Given the generalized and abstract nature of the issue as presented, it potentially intersects with a wide-ranging number of FAA programs and procedures. After an extensive investigation, including interviews with multiple current and former employees, the agencies have concluded that they could not possibly identify every situation in which the FAA has taken a position relevant to this issue. Moreover, to the extent this topic seeks testimony as to what position the FAA hypothetically might have taken with respect to facts with which the agency was not in fact presented, such testimony would be speculative, and therefore impermissible.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to these topics.

## AVIATION DEFENDANTS' TOPIC NOS. 23-28, 31

> 23. Any information communicated by the FAA before 9/11/2001 to any of the Aviation Defendants concerning the arrest and

suspected terrorism-related plans and/or activities of Zaccarias Moussaoui.

24. Any information communicated by the FAA before 9/11/2001 to any of the Aviation Defendants concerning whether Middle Eastern or Arabic-appearing men were undergoing, or had undergone, training in the United States to fly commercial passenger aircraft.

25. Any information communicated by the FAA before 9/11/2001 to any of the Aviation Defendants concerning whether al-Qaeda, Usama bin Laden, or any terrorist group was planning to use trained pilots to hijack commercial aircraft.

26. Any information communicated by the FAA before 9/11/2001 to any of the Aviation Defendants concerning whether al-Qaeda, Usama bin Laden, or any terrorist group was planning to use groups of men armed with short-bladed knives to hijack commercial aircraft.

27. Any information communicated by the FAA before 9/11/2001 to any of the Aviation Defendants concerning whether al-Qaeda, Usama bin Laden, or any terrorist group was considering, or had ever considered, the use of hijacked commercial aircraft as a weapon against buildings, landmarks, or other ground targets.

28. Any information communicated by the FAA between 3/11/2001 and 9/11/2001 to any of the Aviation Defendants regarding the possibility of attacks by al-Qaeda, Usama bin Laden, or any terrorist group against commercial aviation interests or operations in the United States.

31. The security briefings provided by the FAA during the period 1/1/2001 through 9/11/2001 to any of the Aviation Defendants.

The agencies object to these topics to the extent they are vague, ambiguous, overly broad, unduly burdensome, and call for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to these topics as they do not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6). The agencies further object to these topics to the extent they are not limited in scope with respect to the time period covered.

The agencies further object to these topics as a significant amount of the requested information is protected from disclosure because it involves classified national security information. *See* 6 C.F.R. § 5.48(b)(2), (b)(3); 49 C.F.R. § 9.9(a)(3); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii). The process of separating the classified information from the non-classified information would be an extremely difficult and burdensome task and would pose an unacceptable risk that classified information may be inadvertently disclosed. This risk is heightened in the context of a deposition, where open-ended inquiries may elicit responses in which classified or privileged material is intertwined and not readily segregable.

The agencies further object to these topics as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to these topics.

## AVIATION DEFENDANTS' TOPIC NO. 29

> The FAA's assessment, during the five-year period prior to 9/11/2001, of the potential threats to civil aviation posed by different types of terrorist attacks, its prioritization of those threats, and the countermeasures designed to address those threats.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as a significant amount of the requested information is protected from disclosure by the deliberative process privilege. *See* 6 C.F.R. § 5.48(b)(5); 49 C.F.R. § 9.9(a)(3); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii). The process of separating the privileged information from the non-privileged information would be an extremely difficult and burdensome task and would pose an unacceptable risk that privileged information may be inadvertently disclosed. This risk is heightened in the context of a deposition, where open-ended inquiries may elicit responses in which privileged material is intertwined and not readily segregable.

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## AVIATION DEFENDANTS' TOPIC NO. 30

> The specific security measures that the FAA required airports, airport authorities, air carriers, or checkpoint security companies to adopt, whether pursuant to Security Directives, amendments to the ACSSP or ASP, or otherwise, from 1/1/2001 through 9/11/2001 in response to the then perceived threat of terrorist attacks against commercial aviation in the United States.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as it predominantly seeks testimony regarding agency documents, which documents speak for themselves.

Finally, to the extent this topic seeks testimony regarding the checkpoint screening procedures that were in effect on September 11, 2001, such testimony would be duplicative of the testimony provided by the agencies' designated Rule 30(b)(6) witness on February 11 and 12, 2008. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

**AVIATION DEFENDANTS' TOPIC NO. 32-33**

> 32. The Security Directives and Information Circulars issued by the FAA to air carriers, airports, airport authorities or aircraft manufacturers during the period 9/11/1996 to 9/11/2001.

> 33. The Security Directives and Information Circulars issued by the FAA to checkpoint security companies in the United States during the period 9/11/1996 to 9/11/2001.

The agencies object to these topics to the extent they are vague, ambiguous, overly broad, unduly burdensome, and call for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources, or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv). Indeed, in their letter of March 27, 2007, the Aviation Defendant Requestors indicated that these topics were designed to ensure that "they have a complete set of all Security Directives and Information Circulars issued by the FAA during the periods in question."

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

**AVIATION DEFENDANTS' REQUEST NO. 34**

> The FAA's process for the development and issuance of Security Directives and Information Circulars during the period 9/11/1996 to 9/11/2001.

The agencies object to this topic to the extent it is overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including public sources. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv). Moreover, the agencies have previously produced a Rule 30(b)(6) witness in this litigation who testified regarding the process for the development and issuance of Security Directives.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

**AVIATION DEFENDANTS' REQUEST NO. 35**

> The measures and initiatives adopted by the FAA from 9/11/1996 through 9/11/2001 to improve screening performance at airport security checkpoints, including without limitation the Threat Imagining [sic] Projection System ("TIPS"), the Computer Assistance [sic] Passenger Pre-Screening System ("CAPPS") and Explosive Detection Systems ("EDS").

At a meeting with the Aviation Defendant Requestors to discuss the Aviation Defendants' Rule 30(b)(6) Deposition Request, the Aviation Defendant Requestors clarified that this topic sought only nationwide measures and initiatives adopted by the FAA during the relevant time period, and that the topic was intended to cover measures and initiatives adopted to improve aviation security generally, and not merely "screening performance." The agencies therefore considered the request so modified.

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including public sources or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv). Moreover, the agencies have previously produced a Rule 30(b)(6) witness in this litigation who testified extensively regarding CAPPS.

The agencies object to the language "including without limitation." This open-ended description of the topic places too great a burden on the agencies in preparing a witness to respond.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

**AVIATION DEFENDANTS' TOPIC NO. 36 & 38**

36.  The FAA regulations or policy statements concerning cockpit doors, including without limitation the following:

A.      Pilot Compartment Security; Large Passenger Carrying Airplanes, 35 FR 12074-75 (July 18, 1970); Large Turbojet Powered Passenger-Carrying Airplanes, Proposed Pilot Compartment Security, 37 FR 5638-39 (Mar. 17, 1972); and Withdrawal of Proposed Rule Making, Pilot Compartment Security: Large Turbojet Powered Passenger-Carrying Airplanes, 38 FR 2639 (September 27, 1973).

B.      FAR Part 25 regulations applicable to the 1982 type certifications of the 757 and 767 model aircraft (limited to cockpit-door design); and the FAR Part 25 regulations applicable to cockpit-door design on the dates of delivery of the subject aircraft.

C.      FAA Advisory Circular 25-17, Transport Airplane Cabin Interiors Crashworthiness Handbook, para 43(b)(2)(a) (July 15, 1991), as it relates to "frangible" cockpit-door designs.

38.  FAA regulations, policy statements and certification of Boeing model 757 and 767 aircraft, from the time of the original design and certification of those aircraft through September 11, 2001, concerning the following systems:

(a) Secondary barriers intended to prevent cockpit intrusion;

(b) Systems that would identify unauthorized persons attempting to operate the flight controls and prevent such persons from operating the flight controls;

(c) Systems that would automatically signal the government and/or airlines when an unauthorized person attempted to operate the flight controls or was in fact operating the flight controls;

(d) Systems incorporating cameras in the cabin of passenger aircraft that are intended to allow the flight crew to observe the cabin to determine whether to open the flight deck door;

(e) Automatic navigation systems that would prevent unauthorized persons from programming aircraft to fly to certain locations;

(f) Systems designed to prevent the transponders from being turned off; and

(g) Systems that would prevent aircraft from being intentionally crashed into buildings.

The agencies object to these topics as they are vague, ambiguous, overly broad, unduly burdensome, remote in time and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to these topics as they do not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to these topics because, to the extent any testimony is sought beyond that contained in the governing regulations, such information would almost certainly constitute legal opinion testimony. Agency regulations prohibit the provision of such legal opinion testimony. *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii). A Rule 30(b)(6) deposition may not serve as the vehicle through which to compel the United States or its agencies to provide its views as to a legal issue affecting federal interests.

The agencies further object to these topics as a significant amount of the requested information is protected from disclosure by the deliberative process privilege. *See* 6 C.F.R. § 5.48(b)(5); 49 C.F.R. § 9.9(a)(3); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii). The process of separating the privileged information from the non-privileged information would be an extremely difficult and burdensome task and would pose an unacceptable risk that privileged information may be inadvertently disclosed. This risk is heightened in the context of a deposition, where open-ended inquiries may elicit responses in which privileged material is intertwined and not readily segregable.

The agencies further object to these topics to the extent they seek testimony regarding federal regulations, policy statements and certifications, which documents speak for themselves.

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including public sources or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Letter to Liaison Counsel
June 13, 2008
Page 22 of 35

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to these topics.

**AVIATION DEFENDANTS' TOPIC NO. 37**

> The FAA's response to a proposal by Massachusetts Port
> Authority prior to 9/11/2001 to utilize Massachusetts State Police
> to conduct tests of passenger security screening checkpoints at
> Logan Airport.

The agencies object to the topic as it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records, public sources or information already in the possession of the Aviation Defendant Requestors. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to these topics. The agencies note that the Massachusetts Port Authority has pending *Touhy* requests, dated March 20, 2007, for the depositions of Stephen Luongo and James Peters, with respect to their knowledge regarding "the FAA's rejection or lack of approval of Massport's proposal, prior to September 11, 2001, to utilize Massachusetts State Police to conduct tests of passenger security screening checkpoints at Logan Airport." The agencies will render decisions on these requests for fact witness testimony by separate cover.

**PLAINTIFFS' TOPIC NOS. 1-4**

> 1. The regulatory obligations applicable to the Aviation
> Defendants

> a.    Did the FAA establish minimum security standards for the
>       Aviation Defendants?

> b.    Did the regulations in 14 C.F.R. parts 107 and 108, the
>       regulatory requirements in the ACSSP and the Massport
>       ASP, and the security directives/emergency amendments
>       issued by the FAA from time to time constitute minimum

security standards that the Aviation Defendants had to follow?

c.    Did the ACSSP Appendices ("Guidelines") for deadly or dangerous weapons, physical inspection and screening of persons and carry-ons constitute minimum security standards that the airlines had to follow?

d.    Did the ACSSP Appendix XV AVSEC Plan set forth additional minimum security standards that the airlines had to meet for each alert level above the baseline security level?

e.    Did the Aviation Defendants have the responsibility to comply with FAA minimum security standards and to provide their services with the highest degree of safety in the public interest?

f.    Can the FAA authenticate the following documents?

(1)  FAA Website on September 11, 2001 . . . ;

(2)  March 3, 1996 letter from Cathal L. Flynn, FAA Associate Administrator for Civil Aviation Security to Robert Ellis Smith;

(3) US Airways' Roles and Responsibilities of Principal Security Inspector . . . , at US001932;

(4) 10/11/01 statement of Jane Garvey, FAA Administrator, to the Committee on Transportation and Infrastructure Subcommittee on Aviation;

g.    Did the Aviation Defendants have the right, with or without first seeking FAA approval, to adopt security procedures and practices for deadly or dangerous weapons, physical inspection, and screening of persons and property that exceeded the FAA's minimum standards?

2.  Whether the FAA had a position that the Aviation Defendants had the authority to adopt the following security related procedures

involving intelligence, prescreening, checkpoint screening, and in-flight security and, if so, what the FAA's position was:

a.      Collecting intelligence independent of the intelligence disseminated from the FAA.

b.      Creating an internal "watch list" of persons that an Aviation Defendant deemed to pose a potential threat.

c.      Independently employing heightened or increased security measures based upon the Aviation Defendants' assessment of the threat conditions.

d.      Manually designating a passenger as a CAPPS selectee and/or otherwise manually designating a passenger and his or her carry-on for heightened checkpoint scrutiny.

e.      Designating a passenger as a selectee if that passenger does not have proper identification regardless of whether the passenger has checked baggage.

f.      Subjecting selectees to heightened checkpoint scrutiny regardless of whether a Security Directive required it.

g.      Asking passengers any questions beyond the FAA-mandated two security questions.

h.      Hiring security checkpoint screeners with credentials that exceed the FAA's minimum requirements.

i.      Requiring that Checkpoint Security Supervisor possess "to the extent feasible . . . a high school education plus 3 years of law enforcement, industrial security, military police or supervisor experience."

j.      Training and testing checkpoint screeners to identify objects and weapons by using non-FAA approved test objects as part of the training as well as FAA approved test objects.

    k.       Training ticket agents, Ground Security Coordinators, and checkpoint screeners and their supervisors to observe passengers for suspicious behaviors and actions.

    l.       Massport's hiring of Rafi Ron to emulate El Al and "deployment of uniformed and undercover law enforcement officers in each terminal to monitor passenger activity in the terminal, randomly screen passengers and identify unusual behavior."

    m.      Massport's Laser Program and K-9 Program.

    n.       Setting the sensitivity level of the walk-through magnetometer to a level that exceeded the FAA's minimum operating level.

    o.       Directing more frequent random and continuous searches of carry-on baggage and/or performing random handwandings and/or pat downs of passengers.

    p.       Directing private screenings of a passenger who is "profiled."

    q.       Using force in response to physical assaults by passengers upon flight crew or other passengers.

    r.       Terminating a hijacking and/or deviating from any recommended common strategy procedures if the emergency circumstances warranted in the pilot's/captain's view a safer course of action for the flight.

    s.       Deploying privately retained in-flight security personnel on flights and/or to retain Air Marshals.

3. Whether the FAA had a position that the following non-parties had the authority to adopt the following security procedures involving intelligence, prescreening, checkpoint screening, and in-flight security and, if so, what the FAA's position was:

    a.       El Al's security practices for flights operating solely within the United States or departing from airports within the United States as of September 11, 2001 including El Al's procedures such as questioning passengers, behavioral

profiling, checkpoint security, and in-flight security measures.

b.   San Francisco International Airport's January 2000 "Quality Standards Program."

4.   Whether the FAA had a position that the Aviation Defendants had the responsibility to implement the following security related procedures involving intelligence, prescreening, checkpoint screening and in-flight security and, if so, what the FAA's position was:

a.   Notifying responsible entities, including the FAA, the FBI, and connecting airport authorities of suspected terrorists.

b.   Making the "final decision" regarding whether a passenger should be denied passage aboard an aircraft.

c.   To "consider the prevailing wage rate for comparable employment in the geographical area when hiring or contracting security screeners and supervisors."

d.   Obtaining an approved translator if the passenger does not speak English.

e.   Common Strategy: Keeping the door of the cockpit closed and locked where terrorists are stabbing and killing passengers and crew; and, to the extent physically possible, maintaining physical control of the mechanisms of the aircraft from terrorists.

The agencies object to these topics to the extent they are vague, ambiguous, overly broad, unduly burdensome, and call for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to these topics as they do not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to these topics as they predominantly call for legal opinion testimony. The agencies will not provide opinion or expert testimony, as such testimony is prohibited by regulation. *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii). A Rule 30(b)(6) deposition may not serve as the vehicle through which to compel the United States or its agencies to provide its views as to a legal issue affecting federal interests.

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records or public sources. *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Indeed, the agencies note that FAA policy statements pertaining to the topic of "minimum standards" have been produced previously in this litigation, and Mr. Cammaroto authenticated certain prior statements he had made regarding this topic at his deposition on February 11 and 12, 2008. Moreover, the agencies already have provided Rule 30(b)(6) testimony relevant to this topic as it pertained to two specific factual scenarios that had been presented to the FAA prior to September 11, 2001 — the right or ability of air carriers to implement additional passenger screening procedures in connection with the Computer Assisted Passenger Prescreening System (*see* Plaintiffs' Topic Nos. 2(d), 2(f) and 2(p)) and the development and review of the Checkpoint Operations Guide.

To the extent that Plaintiffs seek further testimony regarding the application of the FAA's general policy to other identified contexts, the FAA has determined that it would be impossible to provide such Rule 30(b)(6) testimony in any comprehensive manner. After an extensive investigation, including interviews of multiple current and former employees, the agencies have concluded that they cannot determine definitively whether the FAA took a position as to most of these specific issues. Moreover, to the extent this topic seeks testimony as to how the FAA's general policy in this area hypothetically would have been applied to scenarios with which the agency was not in fact presented, such testimony would be speculative, and therefore impermissible.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to these topics.

## PLAINTIFFS' TOPIC NO. 5

The FAA's policies and actions concerning the Aviation Defendants' Performance of their Obligations Pre-9/11

a.  What was the FAA's position, if any, concerning issues of screener turnover, wages, and hiring selection and whether or not these issues resulted in poor domestic civil aviation security performance and/or contributed to making civil aviation an attractive target for terrorists?

b.  What was the FAA's position as to the state of security performance at Logan Airport, including Massport's Guaranteed Passenger Standards Program and its mandatory time limits for processing passengers through

checkpoint security, plus security violations, citations and fines of Massport and the Aviation Defendants at Logan, and media reports such as April 2001 Fox 25 report about checkpoint security?

c.   What inspections (field agent, Red Team etc) and findings did the FAA make, what enforcement actions for non-compliance did the FAA take, and what were the results of the FAA's enforcement actions concerning the Aviation Defendants' security performance at the Portland, Me., Logan, Newark and Dulles airports during the 1996 to September 2001 time period?

d.   What actions or positions did the Aviation Defendants take in response to the FAA's enforcement activities at the Portland, Me., Logan, Newark, and Dulles airports during the 1996 to September 2001 time period?

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv).  The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested.  *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records or public sources.  *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

The agencies further object to this topic as it predominantly seeks testimony regarding governmental reports and enforcement records, which documents speak for themselves.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

**PLAINTIFFS' TOPIC NO. 6**

For each of the following security directives, what were the FAA's reasons for issuance, the Aviation Defendants' responses to issuance and the FAA's findings concerning the airlines' implementation generally and under AVSEC level three in particular?

Letter to Liaison Counsel
June 13, 2008
Page 29 of 35

> . . .

    b.    FAA Security Directive SD 108-98-03 (additional security procedures).

    c.    FAA Security Directive SD 108-98-05 (resolving all alarms).

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as a significant amount of the requested information is protected from disclosure by the deliberative process privilege. *See* 6 C.F.R. § 5.48(b)(5); 49 C.F.R. § 9.9(a)(3); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iii). The process of separating the privileged information from the non-privileged information would be an extremely difficult and burdensome task and would pose an unacceptable risk that privileged information may be inadvertently disclosed. This risk is heightened in the context of a deposition, where open-ended inquiries may elicit responses in which privileged material is intertwined and not readily segregable.

The agencies further object to this topic as it seeks testimony regarding Security Directives, which documents speak for themselves.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## PLAINTIFFS' TOPIC NOS. 7-8

7. Studies, investigations or reports by or for the FAA, any comments/responses or positions by the Aviation Defendants or Airport Operators, and actions taken by the FAA concerning the following issues before September 11, 2001:

    a.    Whether properly calibrated and maintained metal detecting equipment operated by trained screeners would alarm in response to knives with blades shorter than 4 inches, box cutters, Leathermen tools, Mace or similar items or weapons.

    b.    What variables affected the performance of airport security checkpoint screeners.

     c.     The turnover among airport security checkpoint screeners.

     d.     Adequacy of training of airport security checkpoint screeners.

     e.     Adequacy of training of airline GSC's.

     f.     The results of FAA testing to determine whether screener performance improved followings SDs, citation of airlines or any other enforcement actions taken by the FAA.

     g.     FAA findings regarding improved or worsening performance of metal detection of weapons, physical inspection and screening of persons and carry-ons, maintenance and calibration settings for metal detectors, x-rays and hand wands during the period 1996 to September 11, 2001.

8.  Studies, investigations or reports by or for the FAA, any comments/responses or position by the Aviation Defendants or Airport Operators, and actions taken by the FAA concerning the following issues:

     a.     Adequacy of function and calibration of metal detectors at Portland, ME, Logan, Newark and Dulles airports on September 11, 2001.

     b.     Adequacy of function and calibration of x-ray equipment and hand wands at Portland, ME, Logan, Newark and Dulles airports on September 11, 2001.

     c.     Adequacy of screening and physical inspection of persons and carry-ons at Portland, ME, Logan, Newark and Dulles airports on September 11, 2001.

     d.     The types of weapons utilized by the terrorists aboard the aircraft on September 11, 2001.

The agencies object to these topics as they are vague, ambiguous, overly broad, unduly burdensome, and call for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to these

topics as they do not describe with reasonable particularity the matters on which examination is requested.  *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to these topics to the extent they seek information constituting expert or opinion testimony.  Agency regulations prohibit the provision of such expert or opinion testimony.  *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii).

The agencies further object to these topics as, to the extent such information exists, it is obtainable from sources that are more convenient and less burdensome than an agency Rule 30(b)(6) witness, including agency records or public sources.  *See* 6 C.F.R. §§ 5.48(a)(1), (a)(4); 49 C.F.R. § 9.15; *cf.* Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(c)(3)(A)(iv).

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to these topics.

**PLAINTIFFS' TOPIC NO. 9**

The FAA's purpose and intent in communicating the following threat information to the airline defendants, the airline defendants' response to the FAA, and the FAA's findings concerning airline actions as a result of the communication:

a.   Information Circular ("IC") 97-03

b.   IC's 98-13 and 98-19

c.   Massport Security Consortium Meeting 3/5/99

d.   The 10/30/00 FAA Memo

e.   FAA position that it could not rule out hijacking within the United States [IC 2000-01]

f.   Terrorist Threat Overview Meeting by United States Department of Transportation 2/12-16/01

g.   The possibility of a suicide hijacking of an airplane [FAA slide presentation Spring 2001 by Pat McDonnell]

h.   Pinkerton Global Intelligence Services Weekly Intelligence Forecast 9/7/01

    i.    DOT Transportation Security & Terrorism Review Spec. Ed. USA v. Usama

    j.    IC's 98-14, 98-17, 2000-06, 2000-07, 2000-08, 2000-09, 2000-10, 2001-02, 2001-04, 2001-08, 2001-09, 2001-04A

    k.    Any briefings about the terrorist threat to civil aviation communicated by the FAA to the Aviation Defendants during the year before September 11, 2001

The agencies object to this topic to the extent it is vague, ambiguous, overly broad, unduly burdensome, and calls for the production of information that is not relevant to the litigation. *See* 6 C.F.R. § 5.48(a)(1); *cf.* Fed. R. Civ. P. 45(c)(3)(A)(iv). The agencies further object to this topic as it does not describe with reasonable particularity the matters on which examination is requested. *See* Fed. R. Civ. P. 30(b)(6).

The agencies further object to this topic as a significant amount of the requested information is protected from disclosure because it involves classified national security information or is protected by the deliberative process privilege. *See* 6 C.F.R. § 5.48(b)(2), (b)(3), (b)(5); 49 C.F.R. § 9.9(a)(3); Fed. R. Civ. P. 45(c)(3)(A)(iii). The process of separating the protected information from the non-protected information would be an extremely difficult and burdensome task and would pose an unacceptable risk that classified and/or privileged information may be inadvertently disclosed. This risk is heightened in the context of a deposition, where open-ended inquiries may elicit responses in which classified or privileged material is intertwined and not readily segregable.

Accordingly, and for the reasons stated in Part I of this letter, the agencies decline to authorize Rule 30(b)(6) testimony with respect to this topic.

## III.    REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Although the agencies decline to authorize further testimony pursuant to Rule 30(b)(6) in this litigation, the agencies have determined that some of the information requested in the Parties' Rule 30(b)(6) Requests appropriately may be provided through document discovery. In such instances, as an accommodation to the parties, the agencies have deemed requests for Rule 30(b)(6) testimony also as constituting requests for the production of documents pursuant to 6 C.F.R. § 5.45 and 49 C.F.R. § 9.13. Specifically, the agencies have deemed Aviation Defendants' Topic Nos. 10-16, 18, 30, 32, 33 and 37, and Plaintiffs' Topic Nos. 5, 7 and 8 also as constituting requests for the production of documents. The agencies will respond to such requests by separate cover. The agencies note, however, that TSA already has produced more than 11700 pages of documents in response to document requests from the parties in this

Letter to Liaison Counsel
June 13, 2008
Page 33 of 35

litigation and in connection with the earlier Rule 30(b)(6) testimony, many of which are
responsive to these topics.

## IV.    AUTHENTICATION OF DOCUMENTS

Plaintiffs also have sought authentication of various FAA documents.  *See* Plaintiffs'
Topic No. 2(f).  To the extent that any party in this litigation seeks to authenticate FAA or TSA
documents, the agencies are willing to provide a declaration or enter into a stipulation to
authenticate such documents, where appropriate.

## V.    AUTHORIZATION OF TESTIMONY FROM INDIVIDUAL FACT WITNESSES

Additionally, the agencies have determined that some of the information requested in the
Parties' Rule 30(b)(6) Requests appropriately may be provided by an individual fact witness
providing testimony pursuant to Rule 30(a).  In such instances, as an accommodation to the
parties, the agencies have deemed the request for Rule 30(b)(6) testimony also as constituting
requests for testimony of agency employees with personal knowledge of such topics.

Accordingly, the agencies have identified Michael Morse, Manager, Identification Media
Division, Office of Security and Hazardous Materials of the FAA, as an agency employee with
personal knowledge regarding Aviation Defendants' Topic No. 1 and Plaintiffs' Topic Nos. 1(r)
and 4(e), and hereby authorize him to provide testimony regarding those topics, subject to the
restrictions set forth herein.

The agencies additionally have identified Claudio Manno, Deputy Assistant
Administrator for Security and Hazardous Materials of the FAA, as an agency employee with
personal knowledge regarding Aviation Defendants' Topic Nos. 4, 5, 23-29, 31, and 34, and
Plaintiffs' Topic Nos. 9(a), 9(b), 9(d), 9(e), 9(g), 9(j), and 9(k), and hereby authorize him to
provide testimony regarding these topics, subject to the restrictions set forth herein.

First, the witnesses are prohibited from disclosing classified national security
information, SSI that would not be appropriate for disclosure under Section 525(d) of the
Department of Homeland Security Appropriations Act, 2007, Public Law No. 109-295, 120 Stat.
1355, 1382 (Oct. 4, 2006), as reenacted by Consolidated Appropriations Act, 2008, Pub. L. No.
110-161, § 522, 121 Stat. 2069 (Dec. 26, 2007), or information that is otherwise privileged or
protected from disclosure, including but not limited to information protected by the law
enforcement privilege, the deliberative process privilege, the work product privilege and the
attorney-client privilege.

Second, the witnesses categorically are prohibited from disclosing intelligence
information that was not communicated to the Aviation Defendants, unless such intelligence
information has since been specifically, officially and publically disclosed by the executive
branch of the United States Government.  This includes intelligence information that was

received by the FAA from the Intelligence Community before and after September 11, 2001. The vast majority of such intelligence information remains currently and properly classified. Moreover, the process of separating the classified information from any non-classified intelligence information would be an extremely difficult and burdensome task. This risk is heightened in the context of a deposition, where open-ended inquiries may elicit responses in which classified material is intertwined and not readily segregable, and where on-the-spot determinations as to what specific information is classified is extremely difficult, if not impossible. The difficulty of this task is illustrated by TSA's experience in monitoring depositions in this litigation to protect against the disclosure of SSI. Despite the attendance of an aviation security expert and government counsel at each deposition, there nonetheless have been to date mor than 25 instances of inadvertent disclosure by deposition witnesses. Such disclosures are inevitable in the deposition context, as a witness's response cannot always be anticipated with any certainty.

Third, the witnesses are prohibited from providing opinion or expert testimony based on information that they acquired in the scope and performance of their official duties. *See* 6 C.F.R § 5.49(a); 49 C.F.R § 9.9(c); *cf.* Fed. R. Civ. P. 45(c)(3)(B)(ii). This prohibition extends to legal opinion testimony and testimony regarding hypothetical scenarios. Accordingly, the witnesses may not opine as to what policy or position the FAA might have taken had it been presented with a particular issue, if in fact the FAA was not confronted with such issue or did not form an official policy or position with respect to such issue.

Fourth, the witnesses are not authorized to provide interpretations of documents that neither were prepared by the FAA or TSA, nor enforced by the FAA in the exercise of its regulatory authority. This prohibition extends to documents such as the Final Report of the National Commission on Terrorist Attacks Upon the United States and the Staff Monograph on the Four Flights and Civil Aviation Security. The witnesses are not competent to provide authoritative testimony on documents the agencies did not author or enforce.

Fifth, any testimony provided pursuant to this decision letter shall be strictly limited in scope to the specific topics authorized above. No witness may provide any testimony beyond the scope of the authorized topics.

The agencies reserve the right to assert additional objections in the future, including at the time of the depositions.

## VI.    PROCEDURES GOVERNING DEPOSITIONS OF THE GOVERNMENT WITNESSES

To ensure that the agencies have adequate time to consider any document-related requests that may arise in connection with the authorized depositions, the agencies are establishing the following protocol. Any *Touhy* requests for the production of specific documents relevant to the authorized topics must be submitted to the agencies by June 30, 2008. Similarly, any requests

Letter to Liaison Counsel
June 13, 2008
Page 35 of 35

for the expedited processing of particular documents that have been produced by the Parties to the TSA for an SSI review should be submitted to TSA by June 30, 2008. Any requests for Restricted Use Documents from the SSI Reading Room that a party wishes to use in connection with the depositions of the government witnesses must be submitted to TSA no later than August 15, 2008.

After the agencies receive and respond to all such submissions, the agencies will notify the parties of the dates, times and locations of the depositions.

Please be advised that, as SSI is intrinsically intertwined with the likely testimony that will be given on the authorized topics, the entirety of the depositions will be treated as SSI depositions pursuant to Section 8 of the Stipulated Protective Order Governing Access To, Handling Of, and Disposition of Potential Sensitive Security Information. Under the protocols in effect for SSI depositions, only Deemed Covered Persons may be present at the deposition, and no one may attend the deposition by conference call.

Finally, this authorization is conditioned upon receipt, from both the Aviation Defendant Requestors and the Plaintiffs, of the requisite declarations that the requesting parties will not seek testimony of the witnesses at a hearing or trial in this proceeding. *See* 49 C.F.R. § 9.15(a)(7).

Sincerely,

Lois B. Osler
Deputy Chief Counsel for Litigation
Transportation Security Administration

Richard H. Saltsman
Assistant Chief Counsel for Litigation
Federal Aviation Administration

cc:    Beth Goldman, Sarah Normand, Jeannette Vargas, U.S. Attorney's Office