UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AMERICAN AIRLINES, INC. et al.,

                                  :

                Plaintiffs,

                                  :      07 Civ. 7051 (AKH)

   v.

                                  :      This case relates to

FEDERAL BUREAU OF INVESTIGATION et al.,      21 MC 101 (AKH)

                                  :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT UPHOLDING THE DEPARTMENT OF JUSTICE'S FINAL DETERMINATIONS DECLINING TO AUTHORIZE THE TESTIMONY OF FIVE CURRENT AND FORMER FBI AGENTS IN THE SEPTEMBER 11 LITIGATION

                                   MICHAEL J. GARCIA
                                   United States Attorney for the
                                   Southern District of New York
                                   Attorney for Defendant
                                   86 Chambers Street
                                   New York, New York 10007
                                   Telephone:  (212) 637-2732/2709/2678
                                   Facsimile:   (212) 637-2702

BETH E. GOLDMAN
SARAH S. NORMAND
JEANNETTE A. VARGAS
Assistant United States Attorneys

   - Of Counsel -

## TABLE OF CONTENTS

I.      The Aviation Defendants' Proposed Plan for FBI Agent Depositions Is Unworkable....... 1

    A.      The Aviation Defendants' Broad Discovery Requests Will Burden the
        Government and the Court, and Will Cause Unnecessary Delay. ......................... 2

    B.      The Aviation Defendants' Proposed "Safeguards" Would Not
        Fully Protect Against Unauthorized Disclosure of Classified
        and Privileged Information. ................................................................................. 5

II.     The Aviation Defendants Have Failed to Establish That the Department
    of Justice's Final Touhy Determinations Are Arbitrary and Capricious. ......................... 8

    A.      The Government's Limited Prior Disclosures of Information Do
        Not Entitle the Aviation Defendants to Depose the FBI Agents
        in This Civil Case. ............................................................................................... 8

    B.      DOJ Was Not Required to Make Specific Classification and Privilege
        Determinations in Responding to the Aviation Defendants' Sweeping
        Requests for Testimony. ..................................................................................... 12

    C.      The Aviation Defendants Are Not Entitled to Live Testimony,
        Given That the Burdens Far Outweigh Any Benefits to Be Gained. .................... 13

CONCLUSION. ............................................................................................................... 17

# TABLE OF AUTHORITIES

Cases:                                                                                    Page

Alexander v. FBI, 186 F.R.D. 113 (D.D.C. 1998). ................................................................... 15, 16

Bobreski v. EPA, 284 F. Supp. 2d 67 (D.D.C. 2003) ............................................................. 10, 15

Boron Oil Co. v. Downie, 873 F.2d 67 (4th Cir. 1989). ............................................................ 10

COMSAT Corp. v. National Science Found., 190 F.3d 269 (4th Cir. 1999) .............................. 10

Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.,
      844 F. Supp. 770 (D.D.C. 1993). ..................................................................................... 11

Founding Church of Scientology v. Webster, 802 F.2d 1448 (D.C. Cir. 1986). ......................... 15

Miller v. Mehltretter, 478 F. Supp. 2d 415 (W.D.N.Y. 2007). ............................................. 12, 13

In re September 11 Litigation, 236 F.R.D. 164 (S.D.N.Y. 2006). ................................................ 11

Speadmark, Inc. v. Federated Dep't Stores, Inc., 176 F.R.D. 116 (S.D.N.Y. 1997).................... 15

In re Vioxx Products Liab. Litig., 235 F.R.D. 334 (E.D. La 2006). ............................................ 12


Statutes:

5 U.S.C. § 706(2)(A)................................................................................................................... 8

18 U.S.C. app. 3. ......................................................................................................................... 9

18 U.S.C. app. 3 § 4   .................................................................................................................. 16


Regulations & Rules:

28 C.F.R. § 16.26(a)(1)................................................................................................................ 10

28 C.F.R. § 16.26(a)(2)................................................................................................................ 10

28 C.F.R. § 16.26(b). ................................................................................................................... 10

28 C.F.R. § 16.26(b)(3)................................................................................................................ 9

28 C.F.R. § 16.26(c)..................................................................................................... 9

Fed. R. Civ. P. 26(b)(2)(C)(i) ...................................................................................... 15

Fed. R. Civ. P. 26(b)(2)(C)(iii). .................................................................................. 10

Fed. R. Civ. P. 45(c)(3)(iv). ........................................................................................ 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AMERICAN AIRLINES, INC. et al.,

                               :

                 Plaintiffs,

                               :       07 Civ. 7051 (AKH)

    v.

                               :       This case relates to
FEDERAL BUREAU OF INVESTIGATION et al.,      21 MC 101 (AKH)

                               :

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT UPHOLDING THE
DEPARTMENT OF JUSTICE'S FINAL DETERMINATIONS DECLINING TO
AUTHORIZE THE TESTIMONY OF FIVE CURRENT AND FORMER FBI AGENTS
IN THE SEPTEMBER 11 LITIGATION**

         Defendants the Federal Bureau of Investigation ("FBI") and Robert S. Mueller,

Director of the FBI (collectively, the "Government"), respectfully submit this reply memorandum

of law in further support of the Government's cross-motion for summary judgment dismissing

this action, which seeks to set aside the Department of Justice's ("DOJ's") final determinations

declining to authorize the testimony of five current and former agents of the FBI (the "FBI

agents") in the September 11 Litigation, 21 MC 101 (AKH).

**I.      The Aviation Defendants' Proposed Plan for FBI Agent Depositions Is Unworkable**

         The Aviation Defendants insist that theirs is a modest request – they claim to seek

nothing more than certain limited, non-classified information that has already been made public.

See, e.g., Reply Memorandum of Law in Support of the Aviation Parties' Motion for Summary

Judgment ("Reply Br.") at 1 ("requested testimony is narrowly tailored"), 2 ("requested

depositions of a handful of FBI witnesses on important, discrete topics"), 3 ("[n]one of the

requests seeks access to classified or privileged information"), 32 ("the requested topics have

already been publicly disclosed and discussed").  Their attempt to minimize the nature and scope

of their requests is disingenuous, and they offer no workable proposal that will not substantially

burden the Government and the Court and delay the litigation.

**A.    The Aviation Defendants' Broad Discovery Requests Will Burden the Government and the Court, and Will Cause Unnecessary Delay**

Contrary to their claims, the Aviation Defendants' requests are not narrow,

limited, or in any way discrete.  The requests rejected by the Department of Justice, which the

Aviation Defendants continue to pursue, seek vast amounts of intelligence and threat information

from the FBI, whether or not communicated to the Aviation Defendants or the Federal Aviation

Administration ("FAA"), including, for example, information the FBI had before September 11

that potential terrorists knew how to pilot commercial aircraft, see Declaration of Desmond T.

Barry, Jr., dated April 28, 2008, Exh. 4 (Billings) ¶¶ 10, 11f, g; id., Exh. 5 (Rolince) ¶ 12d; id.,

Exh. 3 (Rowley) ¶ 10; id., Exh. 2 (Samit) ¶ 10; information generally available to the FBI

indicating that a terrorist attack likely would target civil aviation, see id., Exh. 4 (Billings) ¶ 11c;

id., Exh. 5 (Rolince) ¶ 12d; id., Exh. 3 (Rowley) ¶ 12l; id., Exh. 2 (Samit) ¶ 11d; and information

regarding communications between the FBI and the Central Intelligence Agency ("CIA")

concerning the possibility of an al-Qaeda attack on civil aviation, see id., Exh. 5 (Rolince) ¶ 12b.

Not only are these not narrowly tailored requests seeking only public information, on their face

they seek classified and law enforcement privileged information.  See Government's

Memorandum of Law in Opposition to the Aviation Parties' Motion for Summary Judgment, and

in Support of the Government's Cross-Motion for Summary Judgment ("Govt. Br.") at 22-26;

see also id. at 31-33 (demonstrating that the Aviation Defendants seek information beyond the

scope of any prior disclosures).[1]

Although the Aviation Defendants insist that they do not seek access to any classified or privileged information, see Reply Br. at 5, 31, 37, they miss the Government's point entirely. The question is not only what information the Aviation Defendants wish to obtain from the FBI agents; at issue here is the Government's inability to protect classified and privileged information from unauthorized disclosure in the context of a deposition, where parties may elicit responses in which classified or privileged material is intertwined and not readily segregable. See Govt. Br. at 40-42; Heimbach Decl. ¶¶ 22-26. Even assuming the best of intentions by the Aviation Defendants, a deposition is not an appropriate forum to pursue intelligence information related to an ongoing criminal investigation.

And these five FBI witnesses are just the tip of the iceberg. Although they fail to mention it in their reply brief, the Aviation Defendants have made formal Touhy requests for depositions of two CIA witnesses, an additional FBI agent, and an FAA inspector, all on topics pertaining to intelligence information available to the federal government before September 11, 2001. In addition, although they have not submitted formal Touhy requests, the Aviation

---

[1]     The Aviation Defendants attempt to avoid application of the law enforcement privilege by arguing that they "seek specific information about a specific investigation of a specific individual," Zacarias Moussaoui, concerning "events that occurred nearly seven years ago," and further contending that they do not intend to ask about the PENTTBOM investigation or "the five September 11 co-conspirators who recently were arraigned." Reply Br. at 34-35. As the Government's moving papers make clear, however, PENTTBOM is an investigation of those responsible for the September 11, 2001 attacks, including Moussaoui (whose prosecution is ongoing, as his conviction and life sentence are on appeal), the five alleged co-conspirators recently charged in military commission proceedings, and others who remain at large. See Declaration of Michael J. Heimbach, Assistant Director, FBI Counterterrorism Division, dated June 16, 2008 ("Heimbach Decl."), ¶¶ 6, 8-12, 27; Govt. Br. at 6, 24-26. The information sought from the FBI agents is therefore part of the ongoing PENTTBOM investigation. Heimbach Decl. ¶¶ 8, 27.

Defendants have indicated an intent to seek the depositions of multiple FAA employees who served as intelligence specialists and/or liaisons between the FAA and the Intelligence Community prior to September 11, 2001, as well as depositions of "law enforcement officers and intelligence agents," presumably including FBI witnesses, in the event that the Court denies their motion to admit the prior out-of-court statements of Khalid Sheikh Mohammed and Ramzi Binalshibh. Thus, the Aviation Defendants' intended discovery from intelligence agencies is not contained or limited, but threatens to burden the Government and this entire litigation with what necessarily would be time-consuming and difficult discovery. See Govt. Br. at 40-46. This is discovery that would require classification review, privilege review, the input of multiple agencies, limitations on access to depositions and a host of other complicating issues, many of which likely would require Court intervention to resolve.

Notwithstanding the Aviation Defendants' assurances about the limited nature of their inquiries, moreover, they insist that "the Government's intelligence failures" are central to their defense. Reply Br. at 25. Their intention to put in issue at trial the federal government's role in failing to prevent the attacks of September 11 means that discovery will necessarily compound and delay the litigation. This is not by its nature a narrow topic. Even putting aside the inestimable burdens to the Government, discovery on this and related topics threatens to overwhelm this litigation and turn it in a direction the Court has so far resisted – a trial within a trial as to the Government's role. See Tr. June 14, 2007, at 121 (indicating that the Court did not wish to "authorize . . . another trial of the government").

**B.    The Aviation Defendants' Proposed "Safeguards" Would Not Fully Protect Against Unauthorized Disclosure of Classified and Privileged Information**

There is simply no mechanism that would render the areas into which the Aviation Defendants wish to inquire fair game for a deposition.  The Aviation Defendants suggest that they could submit questions to the Government in advance, and that "any counsel asking questions at the depositions would agree to stick to the agreed-upon outline of questions as closely as possible."  Id. at 39-40.  They offer that in the event that follow-up questions may be necessary, they could be "limited to the specific topics authorized for disclosure."  Id. at 40.  But that is precisely the problem.  The Aviation Defendants seek authorization for deposition testimony on topics that by their very nature implicate information that is protected.

The fact that some of the information sought by the Aviation Defendants previously has been disclosed, under controlled circumstances, Heimbach Decl. ¶¶ 13-20, does not give the Government "solace."  Reply Br. at 37.  The Aviation Defendants acknowledge that they will seek to amplify the testimony previously given by four of the FBI agents, see id. at 31 (admitting that they seek to obtain in "somewhat augmented form" information that has been publicly disclosed); id. at 38 (acknowledging that they seek information "related to" "topics that already have been publicly disclosed"), and that "follow-up" and "clarifying" inquiry will be "necessary," id. at 40, thus guaranteeing that classification issues will arise during the deposition. See Heimbach Decl. ¶ 23.  The Aviation Defendants' proposal to provide written questions in advance of the depositions also ignores entirely the plaintiffs' right to cross-examine witnesses, which cross-examination likely would seek to probe the witnesses' testimony and inquire into matters beyond the scope of the information previously disclosed.  Id.

Nor would the other proposed "safeguards" would fully protect against potential release of classified or privileged information during depositions. Involving a magistrate judge or special master, see Reply Br. at 40, obviously would not resolve the problem of identifying and protecting classified information in deposition questions and answers. Those determinations can only be made by an original classification authority, following a "painstaking and deliberate" review, which requires "a great deal of time, energy, and collaboration among multiple FBI divisions and other government agencies," and which would be difficult, if not impossible, to conduct on the spot in a deposition. See Heimbach Decl. ¶¶ 24-26. Given the nature of the classification review process, see id., it cannot be accomplished merely by conferring with the witness before a question is answered, as the Aviation Defendants suggest, see Reply Br. at 40. As the Transportation Security Administration's ("TSA's") experience in the SSI context illustrates, it simply is not possible to fully protect sensitive information that is intertwined in deposition questions and answers. See Declaration of Sarah S. Normand, dated June 17, 2008 ("Normand Decl."), ¶¶ 16-20; Govt. Br. 46-51.[2]

The Aviation Defendants' suggestion that attendance at depositions could be limited to those attorneys who have SSI clearance, Reply Br. at 40, is equally unavailing. Not only is SSI not the same as classified information, the process for SSI clearance bears no relationship to the security clearance procedures necessary to obtain access to classified

---

[2]    Although the Aviation Defendants dismiss the Government's concerns about SSI disclosures in depositions as "exaggerated," given that the established process generally "has been working smoothly," Reply Br. at 41 n.23, they do not dispute that inadvertent disclosures of SSI have occurred in a substantial number of depositions, Normand Decl. ¶¶ 19-20, nor that unauthorized disclosures of classified information similarly could occur in depositions of the FBI agents.

information.  Moreover, the number of attorneys with SSI clearance in this case exceeds 100

persons.  As we have faced previously in this case, given the number of parties and each party's

expectation that it will have its own counsel present, it is virtually impossible to limit the number

of people attending a deposition.  See Tr. June 8, 2006, at 4-49; Tr. July 21, 2006, at 11-12.[3]

        The Aviation Defendants' other proposals – allowing the Government to review

transcripts before they are released to ensure that they do not contain classified or privileged

information, and agreeing that the inadvertent release of classified or privileged information does

not constitute a waiver – merely underscore the FBI's concerns.  The Government cannot permit

any unauthorized disclosure of classified information.  The substantial possibility that classified

information could be disclosed if the FBI agents are deposed in this case, see Heimbach Decl.

¶¶ 26-27, which possibility the Aviation Defendants appear to acknowledge, see Reply Br. at 40-

41, alone constitutes a sufficient basis to reject the Aviation Defendants' proposal.

---

[3]      Thus, the Aviation Defendants are incorrect in their assertion that an FBI agent
deposition would be "inherently a more protected environment than testifying live at a public
trial."  Reply Br. at 39.  Unlike the attorneys in this case, Moussaoui's defense counsel had
security clearances and access to voluminous amounts of classified information, identified
specific classified information and documents that they wished to use at trial well in advance,
worked with prosecutors and agency officials through the CIPA process to resolve issues
involving classified information (including by using testimonial substitutes and factual
stipulations), and thus were aware of the boundaries of permissible questioning during the trial.
Heimbach Decl. ¶¶ 17-20.  This process is not possible in this case.  Id. ¶ 22.

## II.  The Aviation Defendants Have Failed to Establish That the Department of Justice's <u>Touhy</u> Determinations Are Arbitrary and Capricious[4]

### A.  The Government's Limited Prior Disclosures of Information Do Not Entitle the Aviation Defendants to Depose the FBI Agents in This Civil Case

According to the Aviation Defendants, in refusing to approve testimony regarding "topics [that] have already been publicly disclosed and discussed," "DOJ failed to follow the dictates of its own <u>Touhy</u> regulations."  Reply Br. at 32; <u>see also id.</u> at 1, 2, 37, 38 (referring to "topics" that have been "publicly disclosed").  Despite the Aviation Defendants' coy wording, however, there is no such thing as public disclosure of a "topic."  It is specific information, and not the more broadly framed topics, that is or is not disclosed.[5]  As the Government demonstrated in its opening brief, it is well established that the disclosure of specific information does not vitiate the protections afforded to undisclosed classified or law enforcement privileged information related to the same general subject matter.  <u>See</u> Govt. Br. at 28-31 (citing cases).  The Aviation Defendants do not and cannot cite any authority to refute this basic proposition.

The fact that the federal government undertook the tremendously difficult and time-intensive task of reviewing and segregating classified and privileged material from the PENTTBOM investigation in order to bring criminal death penalty proceedings against Zacarias

---

[4]    The Aviation Defendants do not contest that the Administrative Procedure Act's ("APA's") "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), applies in this case.  <u>See</u> Reply Br. at 8 n.4.

[5]    The Aviation Defendants also misperceive the information that the Government seeks to protect, as their supposedly "perfect illustration" demonstrates.  Reply Br. at 35 (noting that initial tip to FBI regarding Moussaoui has already been publicly disclosed).  The Government is not protecting information that has already been made public, Heimbach Decl. ¶ 13, but rather intelligence sources and methods directly implicated by the Aviation Defendants' deposition requests that remain classified, <u>id.</u> ¶ 12.

Moussaoui hardly obliges the Government to make the same efforts in response to third-party discovery requests in civil litigation.  See Reply Br. at 30 (arguing that the Government cannot disclose information only "when it serves its own purposes").  It is perfectly rational, and not arbitrary and capricious, for DOJ, as a federal law enforcement agency, to authorize federal law enforcement agents to testify in criminal proceedings that it has initiated in the public interest, while declining to permit such agents to become embroiled in civil proceedings to which the United States not a party – particularly where, as here, classified and privileged information is at issue.

The Government, furthermore, did not commit extensive resources to reviewing and segregating classified and privileged information in the death penalty trial of Zacarias Moussaoui on a whim; rather, the requirements imposed upon the Government with respect to the discovery of classified materials were established by Congress, in the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3.  Congress has imposed no congruent obligation upon the federal government in civil actions.  It was not arbitrary and capricious for the Government to decline to create from whole cloth procedures in civil cases for the discovery of information intertwined with classified materials, where Congress has not seen fit to do so, where the governing Touhy regulations expressly prohibit the disclosure of classified information, see 28 C.F.R. § 16.26(b)(3), (c), and where there is a substantial likelihood that any such procedures ultimately would not prove effective, see Heimbach Decl. ¶¶ 5, 26-27.

Nor was it arbitrary and capricious for DOJ to seek to conserve the time of its employees for "its own purposes" – i.e., the public safety, national security, and law enforcement functions served by the FBI – rather than commit its limited law enforcement resources to the

9

enormous task of protecting classified and privileged information from disclosure in third-party

civil litigation.[6]  To the contrary, "[t]he policy behind such [Touhy] prohibitions on the testimony

of agency employees is to conserve governmental resources where the United States is not a party

to a suit, and to minimize governmental involvement in controversial matters unrelated to official

business."  Boron Oil Co. v. Downie, 873 F.2d 67, 70 (4th Cir. 1989); see also COMSAT Corp.

v. National Science Found., 190 F.3d 269, 278 (4th Cir. 1999) (agency reasonably declined to

authorize depositions of employees because it would divert personnel from official duties);[7]

Bobreski v. EPA, 284 F. Supp. 2d 67, 80 (D.D.C. 2003) (EPA did not act arbitrarily and

capriciously in denying request to depose inspector, where EPA sought to "maximiz[e] the use of

limited government resources to prevent accidents involving hazardous chemicals," and where

---

[6]    The FBI, notably, has already expended significant resources responding to the
Aviation Defendants' and other parties' Touhy requests in this action.  See Govt. Br. at 7-8
(detailing FBI's production of more than 33,000 pages of documents and expenditure of more
than 3400 hours on document review and processing).

[7]    The Aviation Defendants argue that the facts of COMSAT are distinguishable,
because COMSAT involved a subpoena for records that had already been obtained through a
FOIA request.  Reply Br. at 45 n.25.  Yet in addition to upholding the agency's decision not to
produce duplicative agency records, the COMSAT decision also affirmed the agency's denial of
requests for depositions of federal employees on the separate ground that, "[w]hen the
government is not a party, the decision to permit employee testimony is committed to the
agency's discretion.  This compromise between public and private interests is necessary to
conserve agency resources . . . ."  190 F.3d at 278.  The Aviation Defendants further seek to
distinguish COMSAT on the ground that the National Science Foundation Touhy regulations at
issue in that case differ from the DOJ regulations at issue here.  Reply Br. at 45 n.25.  Any such
distinction is immaterial, however, as the DOJ regulations authorize the United States Attorney
to consider the burdens of responding to the requested discovery, see 28 C.F.R. § 16.26(a)(1)
(Department official should consider whether disclosure is appropriate under governing rules of
procedure); Fed. R. Civ. P. 26(b)(2)(C)(iii) (court "must limit" discovery where burden or
expense outweighs likely benefit, considering, among other things, the parties' resources); Fed.
R. Civ. P. 45(c)(3)(iv) (court may quash or modify subpoena that subjects a person to undue
burden), and further require the protection of classified and privileged information, see 28 C.F.R.
§ 16.26(a)(2), (b).

10

EPA had provided the parties with relevant documents); Cleary, Gottlieb, Steen & Hamilton v.

Dep't of Health & Human Servs., 844 F. Supp. 770, 786 (D.D.C. 1993) (upholding Food and

Drug Administration Touhy decision declining to authorize testimony of its employees, as

agency had rationally decided that the public health would be better served by conserving its

employees' time for their official duties).[8]

   The Aviation Defendants further claim, somewhat incoherently, that in refusing to

authorize testimony on topics that "have already been publicly disclosed and discussed," DOJ is

asserting that it "actually has carte blanche to refuse to authorize disclosure" in any case because

it could "always cite national security to block requested discovery." Reply Br. at 32.  Leaving

aside the fact that only a small fraction of the Touhy requests submitted to the multitude of

federal agencies in various litigations across the country would even implicate classified

information, this argument is erroneous on its face.  The Government has never suggested that

federal employees as a class cannot be deposed because of national security concerns.  To the

contrary, the FAA and TSA have authorized three depositions of federal employees in the

September 11 Litigation, including the former head of the FAA's intelligence office, as well as a

Rule 30(b)(6) deposition.  See Heimbach Decl. ¶¶ 12, 27.  The concerns set forth in the subject

Touhy determinations are specific to these five FBI agents and to the topics requested by the

---

   [8]  Given the history of the September 11 Litigation, the Aviation Defendants'
assertion that "DOJ and TSA have seen fit to divert their resources to attend more than 100
depositions noticed by plaintiffs," Reply Br. at 45, is nothing short of offensive.  The
Government did not volunteer to attend depositions in the September 11 Litigation – it was
required to do so by Court order, upon a request of the Aviation Defendants themselves, and over
the Government's vehement objections.  See In re September 11 Litigation, 236 F.R.D. 164, 172-
73 (S.D.N.Y. 2006); Joint Letter from Liaison Counsel to the Court dated March 9, 2006,
attached to Supplemental Declaration of Sarah S.  Normand, dated July 18, 2008, at Exh. W.

Aviation Defendants. Thus, this case is entirely unlike In re Vioxx Products Liability Litigation, 235 F.R.D. 334 (E.D. La 2006), which did not raise any issues regarding privileged or national security information, and which is cited by the Aviation Defendants to refute a position that the Government has never taken – that an agency cannot "implement a practice of denying all deposition requests." Reply Br. at 32.

B.     **DOJ Was Not Required to Make Specific Classification and Privilege Determinations in Responding to the Aviation Defendants' Sweeping Requests for Testimony**

The Aviation Defendants additionally argue that DOJ's Touhy determinations were defective because the United States Attorney did not make "individualized assessments about which facts are suitable for disclosure and which are not." Reply Br. at 32. Again, the Aviation Defendants miss the point – the requested depositions would impose extraordinary burdens in attempting to ascertain which specific information responsive to the Aviation Defendants' broad requests is classified or law enforcement privileged. Heimbach Decl. ¶¶ 22-26. It would not be possible for the Government, in responding to Touhy requests as broadly framed as the ones at issue in this litigation, to identify each potentially responsive fact and determine whether such fact is classified or privileged. Nothing in the APA or the applicable regulations requires the Government to engage in such a complex and burdensome exercise simply to respond to a Touhy request.

The Aviation Defendants' reliance upon Miller v. Mehltretter, 478 F. Supp. 2d 415 (W.D.N.Y. 2007), is entirely misplaced. As an initial matter, the Miller case did not involve classified information, or the burdens associated with segregating classified from unclassified information, and is therefore inapposite on that basis alone. In Miller, the United States Attorney

12

had authorized an FBI special agent to provide testimony regarding certain specified and limited topics in a state court contempt proceeding, but had raised objections at the proceeding to certain questions and lines of inquiry on the ground that the responses would implicate, <u>inter alia</u>, the law enforcement privilege. <u>Id.</u> at 422-23. The district court did hold that the responses to certain discrete and narrow lines of inquiry to which the Government had objected during the contempt proceeding did not call for the production of law enforcement information, particularly as the underlying investigation (unlike the PENTTBOM investigation) was closed. <u>Id.</u> at 423-28, 430-31. Yet the district court, applying an arbitrary and capricious standard, sustained the majority of the Government's <u>Touhy</u> determinations, and found that the United States Attorney had properly declined to authorize testimony as to a number of areas of inquiry that were overly broad, irrelevant, unduly burdensome, and called for the production of information protected by the deliberative process privilege or the law enforcement privilege. <u>Id.</u> at 423. Nothing in the <u>Miller</u> decision stands for the sweeping proposition that, in responding to a <u>Touhy</u> request, the Government must conduct a classification and privilege review of all information potentially responsive to an exceedingly broad request and determine, on an individualized basis, which facts properly could be revealed.

**C.    The Aviation Defendants Are Not Entitled to Live Testimony, Given That the Burdens Far Outweigh Any Benefits to Be Gained**

It was neither arbitrary nor capricious for DOJ to deny the <u>Touhy</u> requests as unduly burdensome and cumulative, given the minimal benefits, if any, to be gained from deposition testimony in this matter. First, as set forth more fully in the Government's opening brief, the Aviation Defendants have not established that the FBI agents can offer any relevant

13

testimony that is not available or more properly obtained from other sources, including from documents, stipulations and/or expert or summary witnesses. See Govt. Br. at 51-70 & Tab A. Nothing in their reply brief suggests that they need deposition testimony to establish facts that they cannot otherwise prove at trial. See Reply Br. at 41-43 (failing to identify any fact not available from another source).[9]  Nor have the Aviation Defendants demonstrated that the testimony they seek is relevant to any of their legal defenses. See Govt. Br. at 52-62.

Further, as plaintiffs have indicated in their opposition papers in this case, the parties likely could stipulate to most, if not all, of the facts that the Aviation Defendants seek to elicit in depositions of the FBI agents. See September 11 Litigation Plaintiffs' Memorandum of Law in Opposition to the Motion of the Aviation Defendants for Summary Judgment, filed in 07 Civ. 7051 (AKH), at 35 n.22 ("Even if the testimony sought were relevant and material to this litigation, the facts contained in the testimony can be admitted by a much less burdensome stipulation.  Plaintiffs already have proposed an extensive factual stipulation with respect to facts contained in the Commission Report, the Staff Monograph and Staff Statements. . . .  If there are

---

[9]    The Aviation Defendants also neglect to address the point made in the Government's opening brief that many of the alleged "facts" they seek to establish through FBI agent depositions are instead arguments they can make to the jury if these cases proceed to trial. See Govt. Br. at 56-58.  This point is further illustrated by the Aviation Defendants' reply brief, in which they identify a number of undisputed facts available from sources other than the FBI agents – e.g., certain information gathered by the FBI regarding Moussaoui and not communicated to the FAA, the weapons and other items discovered in Moussaoui's apartment and among his other belongings, and information about Moussaoui's physical training, see Reply Br. 20-21; Govt. Br. at 64-66 & Tab A (describing other sources of such information) – based on which the Aviation Defendants intend to argue that the "hijackers were fanatical about their mission and were prepared to go forward with their plan even if whatever potential weapons they may have carried with them had been confiscated at the checkpoint."  Reply Br. at 21.  The Aviation Defendants do not need to depose Special Agent Samit to argue that "the hijackers were training to be able to take over the planes with their bare hands, if necessary," id., nor could Special Agent Samit provide such testimony.

14

additional issues that the Court finds relevant and material, Plaintiffs are willing to propose factual stipulations related to those issues, as well.").

Thus, the Aviation Defendants are not claiming that they are being denied access to the information they seek; their real complaint is that they are not getting this information in their preferred packaging. See Reply Br. at 43. The Aviation Defendants' mere preference for live witness testimony over documentary exhibits, however, cannot overcome the Government's overriding interest in the protection of classified and privileged information. It was not arbitrary and capricious for DOJ to conclude that the extraordinary burdens the deposition requests would impose upon the FBI and other federal agencies, see Heimbach Decl. ¶¶ 22-26, which are not even parties to this litigation, far outweigh the minimal need for such deposition testimony given the availability of the requested information from other sources. See Govt. Br. at 40-70; Bobreski, 284 F. Supp. 2d at 80 (EPA did not act arbitrarily and capriciously in denying request to depose inspector, where EPA had provided the parties with relevant documents); Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery otherwise allowed" if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); see also Govt. Br. at 62-65 (citing cases).[10]

---

[10]    The cases cited by the Aviation Defendants, see Reply Br. at 41-42, are not to the contrary, as none of them involved classified information, and thus the courts had no occasion to evaluate an agency's weighing of a litigant's asserted need for deposition testimony against the agency's (and ultimately the public's) interest in protecting classified and privileged information and the associated burdens that such depositions would entail. Indeed, some of the cases on which the Aviation Defendants rely did not even involve Touhy requests: Founding Church of Scientology v. Webster, 802 F.2d 1448 (D.C. Cir. 1986), and Speadmark, Inc. v. Federated Department Stores, Inc., 176 F.R.D. 116 (S.D.N.Y. 1997), concerned requests to depose senior management of the parties themselves, rather than third parties, while Alexander v. FBI, 186

Where, as here, the protection of classified information is at stake, a litigant's desire for evidence in a particular form is easily outweighed by the Government's compelling interest in preventing the disclosure of intelligence sources and methods. Even in criminal proceedings, CIPA contemplates that criminal defendants may be forced to rely upon substitutes for documents and witness testimony, where required to protect against the disclosure of classified information. See 18 U.S.C. app. 3 § 4 (authorizing the United States "to substitute a statement admitting relevant facts that the classified information would tend to prove"). The Aviation Defendants can hardly claim that their desire for live witness testimony is somehow weightier than Zacarias Moussaoui's, who in his death penalty trial relied upon testimonial substitutes and stipulated facts. See Heimbach Decl. at ¶ 19 & Exhs. A-C.

Finally, although the Aviation Defendants do not address it in their reply, their concerns about being "consign[ed] . . . to the use of documentary exhibits," Reply Br. at 43, can be resolved through the use of expert or summary witnesses. That is how the Moussaoui defense team presented the jury with information contained in a voluminous DOJ Office of Inspector General Report. See Barry Decl., Exh. 20; Normand Decl., Exh. P; cf. also Reply Br. at 22 (seeking the testimony of former Special Agent Erik Rigler to "give voice to the report issued by the DOJ on the FBI's missed opportunities to apprehend Nawaf al Hazmi and Khalid al Mihdhar").[11] The Aviation Defendants give no reason why they cannot employ the same

---

F.R.D. 113 (D.D.C. 1998), similarly involved a request to depose a federal employee where the FBI was the defendant in the action.

[11]    The Aviation Defendants claim that they do not seek access to classified information obtained by former Special Agent Rigler pursuant to the district court's Protective Order in the Moussaoui case, Reply Br. at 22 n.13; see also Normand Decl., Exhs. Q-S, but they obviously hope to take advantage of his access to such information. See Aviation Defendants'

approach in this case.  While a jury may in some instances need a witness "to explain [a

document] to them and provide context," id. at 43, that witness need not be an FBI agent.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Government's moving

papers, the Court should grant the Government's cross-motion for summary judgment upholding

DOJ's final Touhy determinations, and dismiss the complaint in this action.

Dated:  New York, New York
       July 18, 2008

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for Defendants

By:       / Sarah S. Normand
SARAH S. NORMAND
BETH E. GOLDMAN
JEANNETTE A. VARGAS
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2709/2732/2678
Facsimile: (212) 637-2702
sarah.normand@usdoj.gov
beth.goldman@usdoj.gov
jeannette.vargas@usdoj.gov

---

Reply Memorandum of Law in Support of Their Motion for an Order that the Prior Moussaoui
Trial Testimony of Certain FBI Witnesses Is Not Subject to Hearsay-Related Objections Under
Federal Rule of Evidence 807, filed in 21 MC 101 (AKH), at 24 (arguing that no substitute exists
for Special Agent Rigler's testimony, because "no one outside the Government, besides Mr.
Rigler, has been provided extensive access to the FBI's and the CIA's files regarding the
Government's failed efforts to apprehend Hazmi and Mihdhar").  This is improper, for the
reasons explained in the Government's opening brief.  See Govt. Br. at 71-73.